UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOY BANNER, Ph.D. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 23-cv-7296 |
| ) | |
| MICHAEL WRIGHT, in his individual and ) | |
| official capacities, and ) | |
| ST. JOHN THE BAPTIST PARISH; ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

1. On November 28, 2023, Plaintiff Dr. Joy Banner tried to speak during the public comment portion of a St. John the Baptist Parish Council meeting.

2. She was trying to talk about an item on the Council's agenda, introduced by Parish President Jaclyn Hotard, that would authorize the use of taxpayer funds to defend President Hotard from a Board of Ethics investigation.

3. The Parish would not let her speak about this. Within seconds of Dr. Banner beginning her public comment, President Hotard interrupted her.

4. When Dr. Banner resumed speaking, President Hotard and Michael Wright, the chair of the Parish Council, took turns repeatedly interrupting Dr. Banner.

5. Finally, Chairman Wright banged his gavel and directed Dr. Banner to stop talking. He then threatened Dr. Banner with prosecution and imprisonment under a law that <u>was declared unconstitutional nearly a decade earlier</u>.

6. Wright's threat cut short what Dr. Banner's comments. There were other citizens who intended to speak, but did not due to Wright's threat.

7. The Council then voted to approve taxpayer funding for the President Hotard's ethics defense.

1

8. A government official's threat to prosecute a person for free speech during an open meeting using a long-unconstitutional law is an obvious violation of the U.S. Constitution's First Amendment and Louisiana's Open Meetings Law.

9. In sum: a white man threatened a Black woman with prosecution and imprisonment for speaking during the *public comment period* of a *public meeting*.

10. Dr. Banner brings this lawsuit to seek justice and accountability.

11. Neither Michael Wright nor the St. John the Baptist Parish government can use the threat of imprisonment to silence their critics.

## I.   PARTIES

*Plaintiff*

12. Dr. Joy Banner is a person of full age of majority who is domiciled in St. John the Baptist Parish, Louisiana. Dr. Banner is Co-Founder and Co-Director of The Descendants Project, a nonprofit foundation committed to the liberation of the Black descendant community through the dismantling of inequitable and discriminatory economic, environmental, and social systems inherent in the violent legacies of slavery.

*Defendants*

13. St. John the Baptist Parish is a governmental entity in Louisiana.

14. Michael Wright is a person of the full age of majority who is, on information and belief, domiciled in St. John the Baptist Parish, Louisiana. He is a councilmember of the St. John the Baptist Parish Council, and was the chair of that council at the relevant times. He is sued in his individual and official capacities.

## II.   VENUE AND JURISDICTION

15. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred in the Eastern District of Louisiana.

16. This Court has personal jurisdiction over Plaintiff and Defendants.

17. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, in that Dr. Banner's claims arise under the laws of the United States. Specifically, she brings this action under 42 U.S.C § 1983. This court has supplemental jurisdiction over Dr. Banner's claims arising from state law in accordance with 28 U.S.C. § 1367.

### III. FACTUAL ALLEGATIONS

18. Dr. Banner incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

19. Dr. Joy Banner is a former university professor and current community leader in St. John the Baptist Parish.

20. She is a founder and co-leader of The Descendants Project, an organization dedicated to protecting and preserving their history and that of their community, and to help build new economic opportunities.

21. She has been a witness to Parish government misconduct since she was a child.

22. When Joy and her twin sister Jo were eleven years old, they witnessed a man trying to persuade their grandmother into not opposing the industrial development of the property adjacent to the Banner's home.

23. What the Banner sisters witnessed was part of a criminal extortion and money laundering scheme being carried out by Lester Millet Jr., who was the Parish President at the time.

24. On April 25, 1996, a federal jury convicted former Parish President Lester Millet Jr. of extortion, money laundering, and violation of the Travel Act. *See U.S. v. Millet*, 123 F.3d 268 (5th Cir.1997).

25. Millet was convicted for criminal acts connected to the attempts by a foreign corporation to locate a heavy industrial facility on the property adjacent to the Banner's home.

26. Jo and Joy Banner, grew up, went away to school, returned to start a small business, and founded The Descendants Project.

27. But now, once again, an out-of-state corporation is seeking to develop an industrial facility on the property adjacent to the Banner's home.

28. Specifically, current Parish President Jaclyn Hotard signed a rezoning application submitted to the Planning Commission, which would rezone the project property from residential to industrial.

29. But President Hotard's mother-in-law Darla Gaudet is the officer and manager of Gaumet Holdings, LLC.

30. Gaumet Holdings, LLC owns property immediately adjacent to – and within – the land the Parish's map suggest it intends to rezone as industrial.

31. Thus, by signing the rezoning application, President Hotard appears to be participating in a transaction to upzone the property of an LLC managed by her mother-in-law.[1]

32. Lousiana's Code of Ethics forbids the knowing commission of such an act.[2]

33. Based on this information, Dr. Banner filed an ethics charge regarding Jaclyn Hotard.

---

[1] President Hotard's mother-in-law is also President and CEO, as well as manager, agent, and officer of St. John Fleeting, LLC. She is also the owner St. John Fleeting, LLC. *See M/V Edith Pearl, LLC v. St. John Fleeting, Inc.,* 12-cv-02962, R. Doc. 156 at fn. 2 (E.D. La. June 14, 2014). That company which describes itself as "a multifunctional inland marine and transportation company" and one of the "top companies for transportation, stevedoring, barge repair, and dock transfers." Given Ms. Gaudet's interests in a business that provides services to heavy industry, including grain terminals, there is also a concern that she would stand to benefit financially through St. John Fleeting if the property were rezoned from residential to heavy industrial use.

[2] Revised Statute 42:1112(B) provides that: "No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the government entity in which, to his actual knowledge, any of the following persons has a substantial economic interest: (1) Any member of his immediate family . . . ." And La. R.S. 42:1102(13) defines "immediate family" to include the parents of a public official's spouse; i.e., their mother-in-law or father-in-law.

34. The Board of Ethics is currently investigating it.

**B.** **Council Chair Wright threatened Dr. Banner with prosecution during public comment.**

35. On November 28, 2023, the St. John the Baptist Parish Council held a public council meeting.

36. Two agenda items at that meeting were of particular interest to Dr. Banner.

37. First, there was an executive session item of "The Descendants Project vs. St. John the Baptist Parish and St. John the Baptist Parish Council."

38. That was of interest to Dr. Banner because she is one of the founders and leaders of The Descendants Project.

39. Second, under "Public Hearing and Adoption on Ordinance(s) / New Business," there was Agenda Item J. That item read:

> J) Jaclyn Hotard – Authorization to retain Legal Service with the Law Firm, R. Gray Sexton, as Special Counsel, to perform services related to Ethics Laws subject to the restrictions imposed by the State of Louisiana regarding Ethics Procedures and at the rate in accordance with the Attorney General Guidelines per statute

40. Dr. Banner was familiar with Ms. Hotard's ethics charges because Dr. Banner was the one who filed them.

41. Dr. Banner intended to use her public comment time to discuss the impropriety of using taxpayer money to hire a private defense lawyer to defend Parish President Jaclyn Hotard against charges of ethical misconduct.

42. Dr. Banner had printed out pamphlets that she intended to distribute to the Council and blown up an exhibit on posterboard that she intended to show to the Council.

43. At the November 28 meeting, Council Chair Michael Wright opened with a prayer and then called for public comment.

44. He waited only <u>two seconds</u> before saying "public comment is closed."[3]

45. Joy Banner approached the lectern anyway, and Wright allowed her to make public comment, asking her to state her name, address, and the agenda item she was speaking on.

46. Dr. Banner gave her name, address, and identified the two agenda items she was speaking on: "the executive session item The Descendants Project vs. St. John the Baptist Parish and St. John the Baptist Parish Council and then also Agenda Item J which is the authorization to obtain legal service with a law firm R. Gray Sexton as special counsel."

47. After she identified the agenda items she was speaking on, Dr. Banner was only able to speak for five seconds before she was interrupted by Parish President Hotard and then by Chairman Wright, who banged his gavel.

48. He said "First off, there is no public comment on executive session."

49. Dr. Banner responded, "Okay, then on Agenda Item J. That's fine. So what I wanted to comment on is on the docket tonight is very specific, is an ethics investigation on Jaclyn Hotard for her signature on …"

50. At that point she was interrupted again by Parish President Hotard, who said "Point of order objection, that is not on the agenda, I asked for legal . . ."

51. Chairman Wright banged his gavel and said "I am taking the floor right now, Dr. Banner I'm going to ask you to hold on your public comment. Mr. Green, did you want to make a comment before…"

52. Keith Green, attorney for the Council, said "Let me just remind the chairman that public comment can only be on the agenda items."

---

[3] Recorded Video of Meeting at 1:38 to 1:40. Available online at https://www.facebook.com/descendantsproject/videos/1070918747489284, and incorporated by reference into this complaint. The Parish's video is available online https://www.youtube.com/watch?v=hj4fEpjoISk&ab_channel=St.JohntheBaptistParishGovernment, and is also incorporated into this complaint.

53. Dr. Banner pointed out that she *was* on topic – the Board of Ethics was investigating Jaclyn Hotard, and Item J on the agenda was placed on the agenda by Hotard and called for authorization for outside legal counsel for Ms. Hotard for the ethics investigation.

54. Dr. Banner asked "is she not being investigated by the Louisiana Board of Ethics?"

55. Chairman Wright banged his gavel again. Keith Green said "it must be contained within the agenda item." Green said to the chairman, "it can only be on retaining legal counsel."

56. Dr. Banner said "That's what I'm speaking on. Let me get to my point. You don't let me finish. We as a taxpayer . . ."

57. Chairman Wright banged his gavel again. Jaclyn Hotard jumped in and said "the item on the agenda is not my name or anything Dr. Banner is speaking about."

58. Ms. Hotard said her name was not on the agenda even though it plainly was:

> J) **Jaclyn Hotard** – Authorization to retain Legal Service with the

59. Dr. Banner continued and only got four more words out – "the Board of Ethics" – before Chairman Wright interrupted her again and said "It must be on an agenda item."

60. The audience began exclaiming, "It *is* the agenda item!"

61. Dr. Banner continued, "You retained an attorney for a Board of Ethics violation, our parish president is currently under investigation for a Board of Ethics charge, how is that not relevant? Because she signed off on an application for a rezoning of her mother-in-law's land . . ."

62. At that point, Ms. Hotard interrupted again and Chairman Wright banged his gavel again. He said "I have the floor." Dr. Banner said "I have a minute!"

63. Chairman Wright then viciously issued the following threat:

> I'm going to ask one more time, Dr. Banner, I'm going to ask one more time. I have the floor, and then we're going to take a recess and clear the chambers. I'm going to read R.S. 42:1141, that I want to make sure the Council is aware of also:
>
> "It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars **or imprisonment for not more than one year**, or both, for any member of the Board of Ethics, its executive secretary, other employee, or any other person, other than the person who is subject to the investigation or complaint, to make public the testimony taken at a private investigation or private hearing of the Board of Ethics or to make any public statement or give out any information concerning a private investigation or private hearing of the Board of Ethics without the written request of the public servant or other person investigated."
>
> Now, I'm going to say it one more time, please have your public comment strictly to the agenda item.[4]

64. Dr. Banner spoke for a few more seconds before sitting down.

65. Because of Mr. Wright's threat of prosecution, Dr. Banner cut her comments short. She did not distribute the pamphlets that she brought, or show the exhibit on posterboard that she had intended to discuss.

66. Chairman Wright repeatedly interrupted the next speaker as well, who was specifically asking the council to consider seeking advice from the Attorney General before authorizing Agenda Item J.

67. Wright repeatedly told her to limit her comment to the agenda item, even though she was specifically speaking about an agenda item.

68. Chairman Wright then took a recess, and cleared the chamber.

69. During the recess, Travis Perrilloux, the Parish's Deputy Director of Public Safety came up to Dr. Banner and the group she was standing with and said: "you need to calm down."

70. After recess, Chairman Wright reminded the room of his prior threat.

---

[4] Meeting Video at 5:48. Emphasis added.

71. He said "Before we go back into public comment, I just want to make sure it is clear that it is my obligation as Chairman to make sure I maintain order and any public comment items are going to be strictly related to the agenda item only."

72. After recess, only one more person made any further comment on Agenda Item J, even though several people – including Joy's twin sister Jo – had intended to.

73. They did not make public comment because of Chairman Wright's threat of criminal prosecution.

74. On information and belief, Chairman Wright has never before interrupted a public commenter to read a section of law regarding criminal penalties for speech.

75. On information and belief, Chairman Wright has never since interrupted a public commenter to read a section of law regarding criminal penalties for speech.

76. In all of the above-described interactions between Chairman Wright, President Hotard, and Dr. Banner, Wright and Hotard were acting under color of law.

C. **The statute that Chairman Wright used to threatened Joy Banner was ruled unconstitutional nearly a decade earlier.**

77. There were some immediate red flags regarding the statute that Chairman Wright read out loud and threatened Dr. Banner with.

78. First of all, the language that Chairman Wright read aloud purported to criminalize the publication of "information concerning a private investigation or private hearing of the Board of Ethics."

79. But that would plainly not apply to Dr. Banner, as she was discussing publicly available information that she provided *to* the Board of Ethics – not anything related to the Board's private investigation or any private hearing.

80. Indeed, Dr. Banner does not know anything about the content of any Board private investigation or private hearing.

81. Second, the statute that Chairman Wright cited (R.S. 42:1141) does not contain the text he read out loud.

82. That text is contained, however, in R.S. 42:1141.4(L)(1).[5]

83. But R.S. 42:1141.4(L)(1) was held unconstitutional as applied in *King v. Caldwell ex rel. Louisiana*, 21 F. Supp. 3d 651 (E.D. La. 2014).

84. In that case Judge Feldman wrote that:

> The Court is persuaded that La. R.S. 42:1141.4(L)(1) is invalid, both as applied to these plaintiffs and on its face, at least in part. Insofar as the statute makes it a crime for "any other person," besides the subject of an ethics investigation, "to make any public statement or give out any information concerning a private investigation or private hearing of the Board of Ethics" absent the subject of the investigation's written request, the statute is impermissibly overbroad. Even accepting the State's proffered interests as sufficiently compelling, the State fails to show that the means selected are the least restrictive appropriate to the task.
>
> Accordingly, IT IS ORDERED: that plaintiffs' motion for summary judgment is GRANTED. The Court hereby declares La. R.S. 42:1141.4(L)(1) invalid insofar as it prohibits "any other person" from "mak[ing] any public statement or giv[ing] out any information concerning a private investigation or private hearing of the Board of Ethics."

*Id.* at 656-657 (citations omitted).

85. *King* dealt with nearly identical facts – Plaintiffs who were threatened with prosecution for speaking publicly about the complaint they made to the Board of Ethics.[6]

86. The unconstitutionality of this statute is hardly obscure.

87. If you look up R.S. 42:1141.4 on the state legislature's website, it has a warning at the top that this law was "included in the Unconstitutional Statutes Biennial Report":

---

[5] The text that Wright read was originally found at La. R.S. 42:1141(E)(12)(a), but was later amended in 2012 and moved to 42:1141.4(L)(1). *See King,* 21 F. Supp. 3d at fn. 1.

[6] *Seals v. McBee*, 2017 U.S. Dist. LEXIS 119553, *6 (E.D. La. July 31, 2017) (explaining that in *King,* the "plaintiffs had been arrested for speaking with the media regarding a claim that they had made to the Louisiana State Board of Ethics")



88. On November 29, 2023, Dr. Banner's counsel sent a letter to St. John the Baptist Parish's counsel, asking them to advise the Parish to stop making First-Amendment-violating threats – especially threats to arrest citizens under a law that was ruled unconstitutional nearly a decade ago.

89. Neither the Parish nor its counsel responded. They provided no assurance whatsoever that the Parish would stop threatening to arrest citizens for making public comment, or that Dr. Banner would not receive a similar threat the next time she makes public comment.

90. On December 6, 2023, Dr. Banner's counsel sent an amicable demand letter.

91. The Parish's counsel acknowledged receipt of that letter, but did not provide any assurance that the threats would not continue.

## IV. CLAIMS FOR RELIEF

**Count One – Violation of the First Amendment to the United States Constitution (Parish and Wright)**

92. Plaintiff realleges and incorporates each and every foregoing paragraph.

A.    **Background of the First Amendment's Application to Parish Council Meetings**

93.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. Amend I. The First Amendment is applied to states and state actors by the Fourteenth Amendment and 42 U.S.C. § 1983.

94.    "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[7]

95.    Similarly, it is "beyond debate that the law prohibits viewpoint discrimination in a limited public forum."[8] Therefore, "[v]iewpoint-based restrictions on speech are *per se* violative of the First Amendment."[9] Viewpoint-based restrictions exist "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[10]

96.    In terms of First Amendment analysis, a city or parish council meeting is a limited public forum.[11] In such a forum, the government may apply reasonable time, place, and manner restrictions to speech, so long as the restriction "does not discriminate against speech on the basis of viewpoint."[12] For example, a government body may require speakers during public comment at a meeting to remain on-topic.[13] But regardless of time, place, and manner restrictions, "is beyond debate that the law prohibits viewpoint discrimination in a limited public forum."[14]

---

[7] *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).
[8] *Heaney v. Roberts*, 846 F. 3d 795, 801 (5th Cir. 2017), *citing Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001).
[9] *Id*. at fn. 4.
[10] *Heaney v. Roberts,* 846 F.3d 795, 802 (5th Cir. 2017).
[11] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015) ("A city council meeting is generally recognized to be a 'limited public forum,' which means that the government does not have to allow persons to engage in every type of speech."), *citing Fairchild v. Liberty Indep. Sch. Dist*., 597 F.3d 747, 759 (5th Cir. 2010), *affirmed in Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (applying limited public forum analysis to Jefferson Parish Council meeting). *See Chiu v. Plano Independent Sch. Dist*., 260 F.3d 330, 334 (5th 2001) for an in-depth discussion of the "tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property."
[12] *Heaney, supra,* 846 F.3d at 801-802.
[13] *Chiu v. Plano Independent Sch. Dist.,* 260 F.3d 330, 354-355 (5th Cir. 2001).
[14] *Heaney v. Roberts,* 846 F.3d 795, 802 (5th Cir. 2017), *citing Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S. Ct. 2093, 150 L.Ed.2d 151 (2001).

97. In a meeting with an on-topic rule, on-topic speech is treated as if it were in a traditional public forum, and <u>any</u> restriction is subject to strict scrutiny.[15] Off-topic speech at such a meeting receives less protection, but still cannot be subject to viewpoint discrimination.

98. Thus, a public body may have a "stay on topic" rule for public comment – but in no case can it selectively enforce that rule in a manner that constitutes viewpoint discrimination.

99. And so although a council chair has the power to enforce neutral restrictions on speech to keep a meeting on track, "[i]t is beyond debate that the law prohibits viewpoint discrimination" in such a context.[16] It is "well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."[17]

100. This is true even in a crisis, because there "are certain constitutional red lines that a State may not cross even in a crisis. Those red lines include racial discrimination, religious discrimination, and content-based suppression of speech."[18]

101. And when a government agent restricts speech that is political in nature, judicial scrutiny must be even more exacting.[19] That is because "activities such as speaking, distributing literature, displaying signs, petitioning for change, and disseminating information concerning issues of public concern are central to the protections of the First Amendment."[20]

---

[15] *Chiu, supra,* at 347.
[16] *Heaney, supra,* 846 F.3d at 801.
[17] *Chiu, supra,* 260 F.3d at 350. *See also Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir.1992) ("[V]iewpoint discrimination violates the First Amendment regardless of the forum's classification.").
[18] *Calvary Chapel Dayton Valley v. Sisolak*, 591 U.S. ____ (2020), *Kavanaugh, J., dissenting from denial of application for injunctive relief*.
[19] *Barr v. American Assn. of Political Consultants, Inc*., 591 U.S. ____ (2020), *Breyer, J., concurring in judgment, citing Buckley v Am. Constitutional Law Foundation, Inc*., 525 U.S. 182, 186–187 (1999) (heightened protection for "core political speech"); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995) (government discrimination on basis of "particular views taken by speakers on a subject" presumptively unconstitutional); *Boos v. Barry*, 485 U.S. 312, 321 (1988) ("content-based restriction[s] on political speech in a public forum" subject to "most exacting scrutiny" (emphasis deleted)); *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 U.S. 37, 45–46 (1983) (content-based exclusions in public forums subject to strict scrutiny).
[20] *Chiu v. Plano Independent Sch. Dist*., 260 F.3d 330, 334 (5th Cir. 2001).

B. **Threats of Prosecution Can Violate the First Amendment**

102. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."[21]

103. As the Fifth Circuit explained, "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."[22]

104. Indeed, the "Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights."[23]

C. **Defendants' Actions Violated Dr. Banner's First Amendment Rights**

105. Dr. Banner was engaged in a constitutionally protected activity – expressing political speech during public comment in a public forum, and petitioning the government.

106. She was also speaking on a topic on the Council's agenda that night: Item J.

107. That topic was about whether to authorize the retention of private counsel for Ms. Hotard's Board of Ethics investigation, paid for by the Parish.

108. Dr. Banner was speaking on topic because she contended that the Parish Council should not spend taxpayer money on private counsel for Ms. Hotard.

109. Despite speaking on topic, within her three minutes of allotted public comment, Chairman Wright directly interfered with her speech by gaveling her to be quiet and saying "I have the floor." This was one violation of the First Amendment.

---

[21] *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).
[22] *Izen v. Catalina*, 398 F.3d 363, 367 n.5 (5th Cir. 2005) (emphasis added) (*citing Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001)); *see also Andrews v. Scott*, 729 F. App'x 804, 812 (11th Cir. 2018) (affirming motion to dismiss noting that "even the threat of arrest would likely deter a person of ordinary firmness from the exercise of First Amendment rights....").
[23] *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (*citing City of Hous., Tex. v. Hill*, 482 U.S. 451, 459 n.7, 107 S. Ct. 2502, 96 L. Ed.2d 398 (1987)).

110. Defendants also engaged in threats that would chill a person of ordinary firmness from continuing to engage in that activity. Specifically, Chairman Wright threatened Dr. Banner with prosecution under a statute that had been declared unconstitutional. This was another violation of the First Amendment.

111. This threat was made serious and realistic by the facts that (1) Chairman Wright interrupted Dr. Banner's speech to make the threat; (2) followed the threat with a demand that Dr. Banner change the topic of her speech; and (3) a parish law enforcement officer approached Dr. Banner after the threat to tell her to "calm down."

112. Chairman Wright also engaged in viewpoint discrimination when he directed his threat only to a person criticizing the Parish government.

113. Chairman Wright also engaged in viewpoint discrimination when he interrupted speakers to tell them to remain on-topic only when they were criticizing the Parish government.

114. Viewpoint discrimination was another violation of the First Amendment.

115. Defendants' actions were substantially motivated against Plaintiffs' exercise of constitutionally protected conduct.

116. Defendants' actions actually chilled Dr. Banner's speech and the speech of other intended public commenters. Dr. Banner did not distribute the pamphlets she intended to or use the exhibit she had paid to blow up onto posterboard. Other people who intended to comment did not speak at all.

### Count Two – Violation of the Louisiana Constitution
### (Parish and Wright)

117. Plaintiff realleges and incorporates each and every foregoing paragraph.

118. For the reasons above, Defendants' conduct violated Dr. Banner's rights of freedom of speech and petition guaranteed by the Louisiana Constitution.

**Count Two – Violation of Louisiana's Open Meetings Law**
**(Parish and Wright)**

119. Plaintiff realleges and incorporates each and every foregoing paragraph.

120. "The intent of the open meetings law is to open all meetings of public bodies to the public, unless allowed by this law to be closed."[24]

121. Louisiana's Revised Statutes explicitly lays out the policy reason for the open meetings law, stating that "[i]t is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy."[25]

122. To that end, Louisiana law requires that the "the provisions of [the Open Meetings Law] shall be construed liberally."[26]

123. "Any person who has been denied any right conferred by the provisions of this Chapter or who has reason to believe that the provisions of this Chapter have been violated may institute enforcement proceedings."[27]

124. The St. John the Baptist Parish Council is a public body subject to Louisiana's open meetings law.[28]

125. The Open Meetings Law requires that public bodies "allow a public comment period at any point in the meeting prior to action on an agenda item upon which a vote is to be taken."[29]

---

[24] *Brown v. East Baton Rouge Parish School Bd.*, 405 So.2d 1148, 1154 (La. App. 1981).
[25] La. R.S. 42:12(A).
[26] La. R.S. 42:12(A).
[27] La. R.S. 42:25(C).
[28] La. R.S. 42:13(A)(3).
[29] La. R.S. 42:14(D).

126. Any action in violation of the Open Meetings Law "shall be voidable by a court of competent jurisdiction. A suit to void any action must be commenced within sixty days of the action."[30]

127. Also, any "member of a public body who knowingly and willfully participates in a meeting conducted in violation of this Chapter shall be subject to a civil penalty not to exceed five hundred dollars per violation."[31]

## RELIEF REQUESTED

128. Plaintiff reserves the right to amend this Complaint to add Defendants or make other changes.

129. Wherefore Plaintiff respectfully requests judgment be entered against Defendants jointly and severally and that the Court grant the following:

   i. Declaratory relief;

   ii. Judgment against Defendants for Plaintiff's asserted causes of action;

   iii. An award of damages not to exceed twenty dollars;

   iv. An award of case costs and attorney's fees;

   v. Civil penalties as provided in R.S. 42:28 not to exceed twenty dollars;

   vi. Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled, except that no damages shall exceed twenty dollars.

   vii. A declaratory judgment per R.S. 42:24 voiding the vote on Agenda Item J at the November 28, 2023 St. John the Baptist Parish Council meeting.

---

[30] La. R.S. 42:24.
[31] La. R.S. 42:28.

Respectfully submitted,

<u>/s/ *William Most*</u>
**William Most (La. Bar No. 36914)**
**David Lanser (La. Bar No. 37764)**
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 509-5023
williammost@gmail.com