UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOY BANNER, Ph.D.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7296** |
| **MICHAEL WRIGHT, individually and in official capacity, et al.** | **SECTION: "G"(4)** |

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

This First Amendment case is about a November 28, 2023 St. John the Baptist Parish Council meeting. On the agenda that evening was an item was sponsored by the Parish President, Jackie Hotard, about hiring outside counsel for an ethics law matter. Plaintiff Joy Banner went to the podium to make public comment. Dr. Banner wanted to express that she was opposed to the use of public funds for the defense of the ethics investigation into President Hotard. Dr. Banner was familiar with the matter because she was the one who had filed the ethics complaint.

Only moments into Dr. Banner's public comment, however, President Hotard directed the Chair of the Parish Council to "stop this comment." The Parish President gaveled Dr. Banner into silence, and then threatened Dr. Banner with prosecution and imprisonment under a law that was declared unconstitutional nearly a decade earlier by the Eastern District of Louisiana.

Dr. Banner filed this suit. Defendants responded with a motion to dismiss.[1] Defendants' primary theory is that if Dr. Banner was speaking "off topic," they were free to threaten her with prosecution under the long-held-unconstitutional statute.

Defendants' theory however, rests on both false factual premises and a false legal premises. It is factually incorrect because the allegations of the complaint and video of the meeting both show that Dr. Banner was speaking <u>on-topic</u>. Dr. Banner's comment that public funds should not be used to pay for a lawyer to defend President Hotard's ethics complaint was directly responsive to the agenda item.

---

[1] R. Doc. 9.

1

And Defendants theory is legally wrong in that the on-topic/off-topic distinction is not dispositive of a First Amendment claim. Even when a person is speaking off-topic at a public meeting, the government may not engage in viewpoint discrimination. If the specific motivating ideology or the opinion or perspective of the speaker was the rationale for the restriction, the First Amendment is violated.[2]

And finally, Defendants make no argument whatsoever regarding First Amendment retaliation or prior restraint, two independent constitutional theories implicated by the facts of the complaint. Accordingly, Defendants' Motion should be denied.

## I.   LEGAL STANDARDS

**A.   Legal Standard for Motion to Dismiss**

"The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6)."[3] If a court lacks subject matter jurisdiction, it should dismiss without prejudice.[4]

Dismissal under Rule 12(b)(6) is disfavored and rarely granted.[5] Under the 12(b)(6) standard, all well-pleaded facts must be viewed in the light most favorable to the plaintiff.[6] Courts generally confine their analysis under Rule 12(b)(6) to the complaint and its attachments, which "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[7] Even if a plaintiff's complaint is found deficient under Rule 12(b)(6), the proper remedy is usually to allow the plaintiff to amend the complaint to cure any deficiencies, rather than dismissal with prejudice.[8]

---

[2] *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L.Ed.2d 700 (1995), *as cited in Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017).
[3] *United States v. Denka Performance Elastomer, LLC*, No. 23-735, 2023 U.S. Dist. LEXIS 144989, at *4-5 (E.D. La. Aug. 17, 2023).
[4] *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010).
[5] *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).
[6] *Hale v. King*, 642 F.3d 492, 498-99 (5th Cir. 2011) (*en banc*).
[7] *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[8] *Public Health Equip. & Supply Co. v. Clarke Mosquito Control Equip., Inc.*, 410 Fed. Appx. 738, 740 (5th Cir. 2010).

B.  **Legal Standards for First Amendment Claims**

The following are the legal standards applying to Dr. Banner's four First Amendment legal theories:

| Plaintiff's First Amendment Theories | Legal Standards |
|---|---|
| Defendants engaged in First Amendment retaliation when they threatened her with prosecution in response to her criticism of the Parish President. | **First Amendment Retaliation:** requires that (1) plaintiff was engaged in constitutionally protected activity, (2) defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.[9] |
| Defendants engaged in viewpoint discrimination when they threatened Dr. Banner and curtailed her speech even though she was speaking on-topic. | **Strict Scrutiny Analysis**: In limited public forum with an on-topic rule, any restriction on on-topic speech is subject to strict scrutiny.[10] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[11] <br><br>[AND]<br><br>**Viewpoint Analysis**: if the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction, the First Amendment is violated.[12] |
| Even if Dr. Banner was off-topic, Defendants engaged in viewpoint discrimination because they threatened only a person who criticized President Hotard, not those who defended her. | **Viewpoint Analysis**: If the specific motivating ideology or the opinion or perspective of the speaker was the rationale for the restriction, the First Amendment was violated.[13] |
| Defendants engaged in prior restraint when President Hotard directed the Chairman to "stop this comment" and when the Chairman gaveled Dr. Banner to be quiet and threatened her with prosecution. | **Prior Restraint Analysis:** "Any system of prior restraints of expression comes to this Court bearing a Prior restraint only allowable when harm arising from the prevented speech would be "both great and certain" and cannot be mitigated through "less intrusive measures." "[H]eavy presumption against its constitutional validity."[14] |

---

[9] *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023).
[10] *Chiu v. Plano Independent Sch. Dist.*, 260 F.3d 330, 347 (5th 2001).
[11] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015).
[12] *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L.Ed.2d 700 (1995), *as cited in Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017).
[13] *Id.*
[14] *CBS v. Davis*, 510 U.S. 1315, 114 S. Ct. 912, 914, 127 L.Ed.2d 358 (1994); *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Summary of Facts Alleged in Complaint

On November 28, 2023, Plaintiff Joy Banner, Ph.D., attended a St. John the Baptist Parish Council meeting intending to speak on two agenda items: an executive session item of "The Descendants Project vs. St. John the Baptist Parish and St. John the Baptist Parish Council" and Agenda Item J under "Public Hearing and Adoption on Ordinance(s) / New Business" which read:

> J) Jaclyn Hotard –   Authorization to retain Legal Service with the Law Firm, R. Gray Sexton, as Special Counsel, to perform services related to Ethics Laws subject to the restrictions imposed by the State of Louisiana regarding Ethics Procedures and at the rate in accordance with the Attorney General Guidelines per statute.[15]

Defendant Jaclyn Hotard, the subject of that agenda item, is the St. John the Baptist Parish President. Dr. Banner intended to use her public comment time to discuss her concerns about the Parish using taxpayer money to hire a private defense lawyer to defend President Hotard from an ethical misconduct charge.[16] Dr. Banner spent her own money to print out documents to distribute to the Council and a blown-up version of the documents on a posterboard to assist with her public comment.[17]

However, after Defendant and Council Chair Michael Wright opened the meeting with a prayer and called for public comment, he waited only two seconds before stating that public comment was closed.[18] Dr. Banner approached the lectern, anyway, and was allowed to begin public comment, stating her name, address, and the two agenda items on which she intended to comment.[19] About five seconds later, Defendant Hotard interrupted Dr. Banner, followed shortly by Defendant Wright who banged his gavel and stated that there would be no public comment on

---

[15] R. Doc. 1 at ¶¶ 35-39.
[16] *Id*. at ¶ 41.
[17] *Id*. at ¶ 42.
[18] *Id*. at ¶¶ 43-44.
[19] *Id*. at ¶¶ 45-46.

4

the executive session item.[20] Dr. Banner responded, "Okay. Well, then I'll go to Agenda Item J. That's fine … So what I wanted to comment on is that what is on the docket tonight, I want to be very specific, is an ethics – ethics investigation on Jaclyn Hotard for her signature on –" but Defendant Hotard interrupted her before she could finish, stating that the item in question was not on the agenda.[21]

Defendant Wright then asked Dr. Banner to hold her public comment while the Council's attorney, Keith Green, stated "I just want to remind the chairman that public comment can only be on the agenda items."[22] Dr. Banner responded to point out that she was speaking about Agenda Item J, but was again interrupted by Defendant Hotard who claimed that her name was not on any agenda item, even though it was plainly listed on Agenda Item J.[23] Defendant Wright again interrupted Dr. Banner, repeating that comment must be on an agenda item.[24]

Dr. Banner then tried to explain once again that she was speaking on Agenda Item J, to which Defendant Hotard interrupted her comment to state "Chairman, Mr. Chairman, I'm going to ask you stop this comment. That is completely false … Ms. Banner, first of all, you're in violation of State law right now."[25] Defendant Wright obliged, banging his gavel and stating the following:

> I'm going to ask one more time, Dr. Banner. I'm going to ask one more time before. If not we're going to take a recess and clear the chambers.
>
> I'm going to read R.S. 42:1141, that I was to make sure the Council is aware of also:
>
> "It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars **or imprisonment for not more than one year**, or both, for any member of the Board of Ethics, its executive secretary, other employee, or any other person, other than the person who is subject to the investigation or complaint, to make public the testimony taken at a private investigation or private hearing of the Board of Ethics or to make any public statement or give out any information concerning a private investigation or private hearing of the Board of Ethics without the written

---

[20] *Id.* at ¶ 47.
[21] R. Doc. 1 at ¶¶ 49-50.
[22] *Id.* at ¶¶ 51-52.
[23] *Id.* at ¶¶ 57-58.
[24] *Id.* at ¶ 59.
[25] *Id.* at ¶¶ 61-62.

request of the public servant or other person investigated."

Now, I'm going to say it one more time, please have your public comment strictly to the agenda item.[26]

Hearing the threat of imprisonment, Dr. Banner spoke for another few seconds and sat down, well before the expiration of her comment time.[27] Dr. Banner cut her comments short and did not distribute the documents or display the posterboard because of the threat of prosecution.[28] After another speaker was interrupted for addressing the same topic, Defendant Wright took a recess and cleared the chamber.[29] He reminded the room of his prior threat upon returning, chilling the speech of others who had come to speak on Agenda Item J, including Dr. Banner's sister, Jo Banner.[30]

**B.      The Motion should be denied because Defendants ask this Court to view the facts in the light most favorable to them, which is the opposite of what the law requires.**

The relevant events are described in Plaintiff's complaint. They were captured on video, both by members of the public and the Council's official feed. Despite this, Defendants' motion contains several mischaracterizations of the events. In rewriting the facts, Defendants ask that the Court should view the facts in the light most favorable to them – which is the *opposite* of the 12(b)(6) standard.[31] Defendants' mischaracterizations include the following:

   a)   "It is clear on the face of the published agenda for the subject SJBP Council meeting on November 28, 2023 that the ethics complaint filed by Banner against Hotard *was not* the topic of Agenda Item J."[32]

The written agenda states Ms. Hotard's name, lists the attorney and firm who, upon information and belief, Ms. Hotard uses as her personal attorney, and describes the purpose for retaining special counsel as related to the Board of Ethics. Defendants now claim that Ms. Hotard

---

[26] *Id.* at ¶¶ 62-63.
[27] R. Doc. 1 at ¶ 64.
[28] *Id.* at ¶ 65.
[29] *Id.* at ¶ 68.
[30] *Id.* at ¶¶ 70-73.
[31] *See Hale, supra*, 642 F.3d at 498-499 (5th Cir. 2011) (in motion to dismiss context, facts must be viewed in light most favorable to the plaintiff).
[32] R. Doc. 9-1 at 3 (emphasis in original).

merely introduced the agenda item and that it was unrelated to the investigation prompted by Dr. Banner's ethics complaint, but such a claim is implausible considering the factual context and, at the very least, would violate the requirement that each agenda item be "described with reasonable specificity."[33]

The video shows that subsequent speakers also attempted to speak about Ms. Hotard's ethics violation while directly referencing Agenda Item J, so if the agenda item was not referencing Ms. Hotard it was not clear to the public.

Further, the video shows that the Parish Council's lawyer, Keith Green, states "They can only speak on retaining legal counsel" to which Dr. Banner replied "That's what I am speaking on" and Mr. Green allowed her to continue for a few seconds before Ms. Hotard again interrupted.

    b)    "SJBP Council Chair, Defendant Michael Wright, recognized and allowed Plaintiff more than her allotted 3 minute time limit at the podium for public comment on Agenda Item J."[34]

This claim is false. Dr. Banner speaks only for a few seconds before being interrupted by Ms. Hotard and Mr. Wright, who specifically asked her to hold her comment. Dr. Banner was present at the podium for more than three minutes, but all except the first few seconds was interrupted by Defendants and included Mr. Wright's recitation of the statute, discussion between councilmembers, and statements by Mr. Wright, Ms. Hotard, and Mr. Green. Regardless, there was still one minute remaining on Dr. Banner's time even if those interruptions and threat of imprisonment could be construed as her public comment.

    c)    "Banner … chose to make personal and inflammatory allegations and comments against Hotard and the Council."[35]

Dr. Banner was not allowed to make public comment or distribute the materials she purchased. Defendants do not explain what comments they considered "personal and

---

[33] La. R.S. 42:19. It is also belied by the fact that the attorney in question, Gray Sexton, appeared in court specifically regarding the ethics complaint filed against President Hotard.
[34] R. Doc. 9-1 at 3.
[35] R. Doc. 9-1 at 4.

inflammatory" but all comments regarding Ms. Hotard were in the context of Dr. Banner trying to explain how she was on topic so she would not continue to be interrupted. None of the comments, regardless of the context, could be construed as "personal and inflammatory."

In sum, Dr. Banner attempted to speak on the topic of Agenda Item J, Defendants interrupted her, and prevented her from speaking by threatening her with imprisonment.

### III.  DISCUSSION

**A.  Applicable First Amendment Legal Standards.**

The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . ." The First Amendment is incorporated against state actors by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983.

Under the First Amendment, it "is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."[36] As a result, "[v]iewpoint-based restrictions on speech are *per se* violative of the First Amendment."[37] Viewpoint-based restrictions exist "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."[38]

In terms of First Amendment analysis, a city or parish council meeting is a limited public forum.[39] In such a forum, the government may apply reasonable time, place, and manner restrictions to speech, so long as the restriction "does not discriminate against speech on the basis

---

[36] *Chiu v. Plano Independent Sch. Dist.*, 260 F.3d 330, 350 (5th 2001), *quoting Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995).
[37] *Heaney v. Roberts*, 147 F. Supp. 3d 600, fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017).
[38] *Heaney v. Roberts,* 846 F.3d 795, 802 (5th Cir. 2017).
[39] *Heaney v. Roberts*, 147 F. Supp. 3d 600, 605 (E.D. La., Dec. 2, 2015) ("A city council meeting is generally recognized to be a 'limited public forum,' which means that the government does not have to allow persons to engage in every type of speech."), *citing Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010), *affirmed in Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (applying limited public forum analysis to Jefferson Parish Council meeting). *See Chiu v. Plano Independent Sch. Dist.*, 260 F.3d 330, 334 (5th 2001) for an in-depth discussion of the "tripartite forum-based framework to analyze First Amendment issues involving governmentally owned property."

of viewpoint."⁴⁰ For example, a government body may require speakers during public comment at a meeting to remain on-topic.⁴¹

But regardless of time, place, and manner restrictions, "is beyond debate that the law prohibits viewpoint discrimination in a limited public forum."⁴²

In a meeting with an on-topic rule, on-topic speech is treated as if it were in a traditional public forum, and <u>any</u> restriction is subject to strict scrutiny.⁴³ Off-topic speech at such a meeting receives less protection, but still cannot be subject to viewpoint discrimination. Thus, a public body may have a "stay on topic" rule for public comment – but in no case can it selectively enforce that rule in a manner that constitutes viewpoint discrimination.⁴⁴  And so although a council chair has the power to enforce neutral restrictions on speech to keep a meeting on track, "[i]t is beyond debate that the law prohibits viewpoint discrimination" in such a context.⁴⁵

This is true even in a crisis, because there "are certain constitutional red lines that a State may not cross even in a crisis. Those red lines include racial discrimination, religious discrimination, and content-based suppression of speech."⁴⁶ And when a government agent

---

⁴⁰ *Heaney, supra,* 846 F.3d at 801-802.
⁴¹ *Chiu v. Plano Independent Sch. Dist.,* 260 F.3d 330, 354-355 (5th Cir. 2001).
⁴² *Heaney v. Roberts,* 846 F.3d 795, 802 (5th Cir. 2017), *citing Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S. Ct. 2093, 150 L.Ed.2d 151 (2001).
⁴³ *Chiu, supra,* at 347.
⁴⁴ Defendants quote *Heaney, supra,* for the statement that "If Heaney were to have violated a reasonable restriction, such as a topic or time constraint, there would be no constitutional violation." But that statement must be read in the context of the sentences that follow: "Because Heaney was not silenced for violating a reasonable restriction, the First Amendment claim turns on Roberts's motive or intent in silencing and ejecting Heaney from the meeting." *Id.* at 802. The Fifth Circuit's point was to focus the analysis on the motivation of the government actor, which is the "pivotal question" regarding viewpoint discrimination. *Id.* Other cases, like *Chiu* make clear that viewpoint discrimination is forbidden whether or not the speaker was on-topic. Chiu v. Plano Independent Sch. Dist., 260 F.3d 330, 354-355 (5th Cir. 2001) ("If the PISD intended to limit the event in this way, it could have constitutionally placed restrictions on expressive communication at Math Nights so long as those restrictions were reasonable in light of the purpose of the forum <u>and did not suppress a certain viewpoint</u>.") (emphasis added).
⁴⁵ *Heaney, supra,* 846 F.3d at 801.
⁴⁶ *Calvary Chapel Dayton Valley v. Sisolak*, 591 U.S. ____ (2020), *Kavanaugh, J., dissenting from denial of application for injunctive relief.*

restricts speech that is political in nature, judicial scrutiny must be even more exacting.[47] That is because "activities such as speaking, distributing literature, displaying signs, petitioning for change, and disseminating information concerning issues of public concern are central to the protections of the First Amendment."[48]

Even more exacting than that is the standard for prior restraint. "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[49] That is because prior restraint "has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time."[50] The "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment."[51]

As the Supreme Court recognized in *Davis:*

> Even where questions of allegedly urgent national security, or competing constitutional interests, are concerned, we have imposed this "most extraordinary remed[y]" only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures.[52]

Thus, prior restraint is allowable only when the harm arising from the prevented speech would be "both great and certain" and cannot be mitigated through "less intrusive measures."

---

[47] *Barr v. American Assn. of Political Consultants, Inc.*, 591 U.S. ____ (2020), *Breyer, J., concurring in judgment, citing Buckley v Am. Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186–187 (1999) (heightened protection for "core political speech"); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–830 (1995) (government discrimination on basis of "particular views taken by speakers on a subject" presumptively unconstitutional); *Boos v. Barry*, 485 U.S. 312, 321 (1988) ("content-based restriction[s] on political speech in a public forum" subject to "most exacting scrutiny" (emphasis deleted)); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45–46 (1983) (content-based exclusions in public forums subject to strict scrutiny).
[48] *Chiu v. Plano Independent Sch. Dist.*, 260 F.3d 330, 334 (5th Cir. 2001)
[49] *CBS v. Davis*, 510 U.S. 1315, 114 S. Ct. 912, 914, 127 L.Ed.2d 358 (1994); *Bantam Books v. Sullivan*, 372 U.S. 58, 70 (1963).
[50] *CBS v. Davis*, 510 U.S. 1315, 1317 (1994)
[51] *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 390 (1973).
[52] *CBS v. Davis*, 510 U.S. 1315, 114 S. Ct. 912, 914, 127 L.Ed.2d 358 (1994).

And finally, First Amendment retaliation is a distinct legal theory. To establish such a claim, a plaintiff must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[53]

**B.    The Motion should be denied because Plaintiff has plausibly alleged viewpoint discrimination.**

Viewpoint discrimination may be inferred from the differential treatment speakers who speak from different viewpoints. As the court in *Heaney v. Roberts* explained: "For instance, if Heaney had wanted to address the council about parking meters in Orleans Parish, Roberts could have validly prohibited him from doing so because such a topic would be off-subject and beyond the scope of the Jefferson Parish Council's business and control. . . . And assuming that <u>all other speakers</u> were likewise prohibited from speaking about parking meters in Orleans Parish, the restriction would not be viewpoint-based.[54]

Here, Defendants' arguments regarding viewpoint discrimination are largely duplicative of their "on topic" discussion. They argue that her comment was stopped as a result of her allegedly straying from the topic, not because of any particular viewpoint she expressed.

But members of the public going off topic during public comment is a frequent occurrence in public meetings.[55] And Plaintiff's Complaint clearly alleges that "Chairman Wright has never before interrupted a public commenter to read a section of law regarding criminal penalties for speech" and "never since."[56] Dr. Banner – the person who filed the ethics complaint against

---

[53] *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023).
[54] *Heaney v. Roberts*, 147 F. Supp. 3d 600 at fn. 4 (E.D. La., Dec. 2, 2015), *affirmed in Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) (emphasis added).
[55] *See, e.g., McClanahan v. Wilson*, 17-cv-1720 (M.D. La.) R. Doc. 195 (Proposed Findings of Fact and Conclusions of Law) at ¶ 114 (citing video of a public commenter using his two minutes to read "Oh, the Places You'll Go!" by Dr. Seuss.)
[56] R. Doc. 7 at ¶¶ 81-82.

11

President Hotard – was the only commentor directly threatened with imprisonment. The video shows that other commenters who, by Defendants' theory of the case, were similarly off topic but did not mention Ms. Hotard by name were not threatened with imprisonment. Dr. Banner, therefore, was plausibly threatened with imprisonment *because* she specifically named her ethics complaint against Ms. Hotard.

Furthermore, the Complaint alleges that "was speaking on topic because she contended that the Parish Council should not spend taxpayer money on private counsel for Ms. Hotard."[57] This is supported by specific facts: Dr. Banner initially requests to speak on both an executive session item as well as Agenda Item J, but when Mr. Wright informed her that there was no public comment on the executive session item, Dr. Banner agreed to comment on Agenda Item J. That item read as follows:

> J) Jaclyn Hotard –    Authorization to retain Legal Service with the Law Firm, R. Gray Sexton, as Special Counsel, to perform services related to Ethics Laws subject to the restrictions imposed by the State of Louisiana regarding Ethics Procedures and at the rate in accordance with the Attorney General Guidelines per statute.[58]

Dr. Banner then began to speak about her opinion that it was unfair that taxpayers would have to foot the bill for an attorney to handle an ethics matter before being cut-off.

Defendants argue that this was off-topic because Agenda Item J was not referencing the ethics violation into Ms. Hotard which was initiated by Dr. Banner's complaint. Defendants claim that Agenda Item J referred only to "whether the Council should approve of outside legal counsel to be engaged by SJBP <u>related to ethics laws</u> in general," not specifically the investigation into Ms. Hotard.[59] This argument has at least two fundamental problems: (1) a plain reading of Agenda Item J suggests that it *does* refer to Ms. Hotard, who introduced it, and (2) even if it does not specifically refer to the investigation into Ms. Hotard, Dr. Banner's comments would still be on

---

[57] R. Doc. 7 at ¶ 115.
[58] *Id.* at ¶ 45.
[59] R. Doc. 9-1 at 11-12.

12

topic.

Even if, as Defendants argue, Agenda Item J was strictly limited to "ethics laws in general," the question of whether Ms. Hotard should retain counsel at the taxpayers' expense to defend against an ethics violation would be on topic. That Dr. Banner desired to use the example of a specific ethics issue does not negate the fact that she was speaking about retaining counsel "to perform services related to Ethics Laws" as described in the agenda item. Defendants have not articulated a reason why Dr. Banner was off topic, except to say that she was talking about a specific ethics issue instead of a "general" ethics issue, which is a distinction without a difference in this context. By Defendants' logic, if the topic was about the ethics violation into Ms. Hotard, but Dr. Banner wanted to comment that the taxpayers should not be footing the bill for ethics counsel *at all*, then that would be grounds to prevent her from speaking as she would be discussing ethics in general instead of a specific investigation.

**C.     The Motion should be denied because Plaintiff alleges facts supporting both First Amendment retaliation and prior restraint.**

Defendant's make no argument that the facts alleged fail to support a First Amendment retaliation or prior restraint argument. Nor could they: Dr. Banner meets all the elements of First Amendment retaliation in that (1) she was engaged in the core First Amendment activity of political speech[60]; (2) Defendants' actions of threatening her with arrest and prosecution would chill a person of ordinary firmness from continuing to engage in that activity[61]; and (3) Defendants' actions were substantially motivated against Dr. Banner's exercise of constitutionally protected

---

[60] *Buckley v Am. Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186–187 (1999) (heightened protection for "core political speech")

[61] *Izen v. Catalina*, 398 F.3d 363, 367 n.5 (5th Cir. 2005) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, <u>threatened prosecution</u>, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.") (emphasis added); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (the "Supreme Court has often noted that a realistic threat of arrest is enough to chill First Amendment rights.")

13

conduct.⁶²

Likewise, prior restraint occurs when the government restricts or censors a communication in advance.⁶³ And here, the Parish President literally directed the government to "stop this comment", and the government responded – by gaveling Dr. Banner quiet and then threatening her with prosecution if she continued.⁶⁴ The motion should be denied.

Defendants also argue that Dr. Banner was not threatened or prevented from speaking, but rather that she "<u>chose to leave the podium</u>" (emphasis in original) and "chose not to" approach the podium a second time after public comment was re-opened.⁶⁵ Defendants' argue that because they did not say "'sit down', 'shut up', 'you are in violation of law', [or] 'I will have you arrested, prosecuted, and imprisoned'", then there was no threat.⁶⁶

But in fact, President Hotard said exactly that: she told Dr. Banner "you're in violation of State law right now."⁶⁷ And then Chairman Wright gaveled Dr. Banner quiet and read to her a statute purporting to criminalize speech "by a fine of not more than two thousand dollars or imprisonment for not more than one year."⁶⁸ This had the effect of stopping her comment and preventing her from speaking on any other items.⁶⁹ The only reason why Dr. Banner did not continue to speak is because of the fear of arrest. Read in the light most favorable to Plaintiff, these facts more than meet the test that "a realistic threat of arrest is enough to chill First Amendment

---

⁶² R. Doc. 7 at ¶ 124 ("Defendants' actions were substantially motivated against Plaintiffs' exercise of constitutionally protected conduct.")
⁶³ *Marland v. Trump*, 2020 U.S. Dist. LEXIS 177129, *21 (E.D. Pa., Sept. 26, 2020) ("A prior restraint occurs when the government restricts or censors a communication prior to its publication, *Near v. Minnesota*, 283 U.S. 697, 701-02, 716, 51 S. Ct. 625, 75 L. Ed. 1357 (1931), generally by either 'preventing the printed publication of disfavored information' or 'set[ting] up an administrative apparatus with the power and discretion to weed out disfavored expression before it occurs,' *Citizens United v. Schneiderman*, 882 F.3d 374, 386-87 (2d Cir. 2018).")
⁶⁴ R. Doc. 7 at ¶ 5-7
⁶⁵ R. Doc. 9-1 at 10.
⁶⁶ R. Doc. 9-1 at 5.
⁶⁷ R. Doc. 7 at ¶ 5.
⁶⁸ *Id*. at ¶ 70.
⁶⁹ There is no requirement that Mr. Wright specifically state "this is a threat" for it be a direct threat, just as there is no requirement for someone pointing a gun to state "I am going to shoot you" for that to be perceived as a threat.

rights."[70]

### D. The Motion should be denied because Defendants make no argument for dismissing Plaintiff's supplemental state law claims.

Defendants do not make any argument that Plaintiff's supplemental state constitutional or Open Meetings Law claims are legally or factually deficient. Instead, they attack Plaintiff's motivation, arguing that Dr. Banner is not seeking "justice and accountability," but rather that "the actual objective of Plaintiff is solely to have this Court void and nullify" the Parish Council's actions.[71] They contend that the First Amendment allegations are solely "a means to invoke this Court's supplemental jurisdiction to void the proper and legal vote."[72] They do not, however, provide any citation to authority for the relevance of these contentions. The motion should be denied.[73]

### IV. CONCLUSION

Defendants' motion to dismiss should be denied.

Respectfully submitted,

/s/ *David Lanser*
William Most, 36914
David Lanser, 37764
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Telephone: (504) 533-4521
Fax: (504) 414-6400
williammost@gmail.com
david.lanser@gmail.com

---

[70] *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (*citing City of Hous., Tex. v. Hill*, 482 U.S. 451, 459 n.7, 107 S. Ct. 2502, 96 L. Ed.2d 398 (1987)); *Izen v. Catalina*, 398 F.3d 363, 367 n.5 (5th Cir. 2005) ("threatened prosecution" can be retaliation that infringes on freedom of speech).
[71] R. Doc. 9-1 at 6.
[72] R. Doc. 9-1 at pp. 6-7 ("Summary of Defendant's Position and Defenses").
[73] Defendants infer ill motives from Plaintiff's choice to cap her damages. R. Doc. 9-1 at pg. 7. Plaintiff has already told Defendants, however, that based on newly discovered evidence she intends to seek leave to amend her complaint and remove the cap on damages.