1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


JOY BANNER
                              CIVIL ACTION
                              NO. 23-CV-7296
VERSUS


MICHAEL WRIGHT, IN HIS
INDIVIDUAL AND
OFFICIAL CAPACITIES,
JACLYN HOTARD, IN HER
INDIVIDUAL AND
OFFICIAL CAPACITIES;
AND ST. JOHN THE
BAPTIST PARISH




          Deposition of MICHAEL PATRICK

WRIGHT, taken on August 6th, 2024, in the

offices of St. John the Baptist Parish

Government, 1811 West Airline Highway,

Laplace, Louisiana  70068.

2

1    APPEARANCES:

2    MOST & ASSOCIATES
     BY: WILLIAM MOST, ESQ.
3    201 St. Charles Avenue
     Suite 2500
4    New Orleans, Louisiana  70170
     Phone: (504)509-5023
5    Email: williammost@gmail.com
          REPRESENTING THE PLAINTIFF
6

7    SPEARS & SPEARS
     BY:  IKE SPEARS, ESQ.
8    AND ALLIE CONLAY, ESQ.
     909 Poydras Street
9    Suite 1825
     New Orleans, Louisiana  70112
10   Phone: (504) 593-9500
     Email:  ike@spearslaw.com
11        REPRESENTING THE DEFENDANTS

12

13   ALSO PRESENT:

14   Joy Banner
     Jackie Landeche
15   Jaclyn Hotard

16

17

18   REPORTED BY:

19   Cecilia M. Menesses
     Certified Court Reporter
20

21

22

23

24

25

3

1                  EXAMINATION INDEX

2                                          Page

3     MR. MOST ...................................5

4

5               E X H I B I T   I N D E X

6                                          Page

7     Exhibit Q ................................11
      Exhibit K ................................20
8     Exhibit P ................................23
      Exhibit U ................................29
9     Exhibit S ................................48

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1               S T I P U L A T I O N

2

3          It is stipulated and agreed by and

4     between counsel that the deposition of MICHAEL

5     PATRICK WRIGHT is hereby being taken under

6     Federal Rules of Civil Procedure for all

7     purposes in accordance with law;

8             That the formalities of filing,

9     reading, signing and certification are hereby

10    waived;

11            That all objections, except those as

12    to the form of the question and/or

13    responsiveness of the answer, are hereby

14    reserved until such time as this deposition or

15    any part thereof may be used in evidence.

16            *   *   *   *   *   *   *   *

17            CECILIA M. MENESSES, Certified Court

18    Reporter, in and for the State of Louisiana,

19    officiated in administering the oath to the

20    witness.

21

22

23

24

25

5

```
 1              MICHAEL PATRICK WRIGHT, 110

 2   IDAHO COURT, LAPLACE, LOUISIANA  70068, AFTER

 3   FIRST BEING DULY SWORN IN THE ABOVE-ENTITLED

 4   MATTER, DID TESTIFY AS FOLLOWS:

 5                    EXAMINATION

 6   BY MR. MOST:

 7      Q    Good morning.  My name is William

 8   Most.  I'm an attorney for the plaintiff in

 9   this case, Joy Banner.  How are you doing

10   today?

11      A    Good.  And yourself?

12      Q    I'm doing good.  Thank you.  So could

13   you give us your full name for the record?

14      A    Michael Patrick Wright.

15      Q    I may call you Mr. Wright, or would

16   you prefer I call you Parish President Wright?

17   Do you have a preference?

18      A    Not Parish President.

19      Q    I'm sorry Chair of the Parish

20   Council.

21      A    Mr. Wright is fine.

22      Q    Mr. Wright, have you ever given a

23   deposition before?

24      A    Yes.

25      Q    Roughly how many?
```

6

1     A    I believe two.  One or two.  I'm not

2    sure.

3     Q    Were those related to Parish

4    Government business?

5     A    Yes.

6     Q    Do you recall what those cases were

7    in?

8     A    One was regarding a clay pit, and

9    that may have been both, to my recollection.

10     Q    Sure.  So since you've given

11    depositions before and you're giving one

12    today, you understand you're under oath today?

13     A    Yes.

14     Q    And that your answers here today have

15    the same force as if we're in a courtroom with

16    a judge and jury?

17     A    Yes.

18     Q    Is there anything today that would

19    prevent you from giving me your full attention

20    and truthful and complete answers, whether

21    it's fatigue, illness, medications, substances

22    or anything else?

23     A    No.

24     Q    And, you know, unlike being in a

25    courtroom, we can take a break.  So if at any

7

```
1    time you need to take a break, use the
2    restroom, get food or water, please just let
3    me know or Mr. Spears know, and we'll
4    accommodate that.  If I ask you a question
5    that is confusing or you don't understand the
6    question, will you agree now to tell me that's
7    the case, rather than just trying to answer it
8    anyway?
9         A    Yes.
10        Q    Thank you.  You're already excellent
11   at waiting until I finish asking my questions
12   before you answer.  In exchange, I'll try and
13   do the same courtesy of not talking over you.
14   That helps us have a clean transcript.  Okay?
15        A    (Witness nods head.)
16        Q    Mr. Wright, have you brought any
17   documents with you today to this deposition?
18        A    Just the responses for the discovery
19   requests.
20        Q    Okay.  Any other documents you've
21   brought?
22        A    Did not.
23        Q    And roughly, how much time did you
24   spend preparing for this deposition?
25        A    Not much, maybe a few hours.
```

8

1    Q    And other than talking to an
2  attorney, what did you do to prepare for this
3  deposition?
4    A    We watched the meeting video for the
5  meeting in question.
6    Q    And that was the November 28th, 2023
7  Parish Council meeting?
8    A    Yes.
9    Q    So you watched the video.  What else
10  did you do, other than talking to an attorney?
11    A    Read Ms. Banner's deposition and read
12  through the discovery requests.
13    Q    Did you talk to anyone besides a
14  lawyer about today's deposition?
15    A    I did not.
16    Q    Did you take any notes to prepare for
17  today's deposition?
18    A    I did not.
19    Q    And you understand that in this
20  lawsuit, you're being sued in both your
21  official and individual capacity?
22    A    Yes.
23    Q    And is Mr. Spears your attorney for
24  both of those capacities?
25    A    Yes.

9

1     Q     Mr. Wright, would you give us the

2   very nutshell version of your background that

3   led to your role in Parish Government?

4     A     I got elected in 2011 to the Parish

5   Council.  Prior to that, I was a student

6   worker and worked for St. John Parish for

7   several years.

8     Q     And do you have a profession outside

9   of your role as Council member?

10    A     Yes.

11    Q     What is that?  I'm in healthcare

12  biopharmaceutical sales.

13    Q     So you were elected to the Council in

14  2011.  When did you become the Council Chair?

15    A     I don't recall when I first became

16  Chairman, but I was elected Chairman beginning

17  this year for this term.

18    Q     And when did that term begin?

19    A     So we elect annually, so this would

20  have been January of this year, January of

21  2024.

22    Q     But you were the Chairman in November

23  2023, correct?

24    A     Yes.  So we elect every year.  So

25  most recently --

10

1       Q    That's a yes?

2       A    Yes.  I'm sorry.  The most recent

3  election was January of this year for

4  Chairman.

5       Q    I understand.  So you were reelected

6  for 2024, but you had previous been elected

7  Chair for prior years?

8       A    Yes.

9       Q    Do you recall roughly how many years

10  you've been elected Chairman?

11      A    Several.

12      Q    And so, roughly, how many meetings do

13  you preside over as Chairman per year?

14      A    Most that I'm in an attendance for.

15  If I'm not -- I'm not going to chair, if I'm

16  not in attendance.

17      Q    Is that approximately one per month?

18      A    It varies based on schedule.

19      Q    So you presided over at least six to

20  ten meetings per year, would you say?

21      A    At least, yes.

22      Q    For several years?

23      A    Uh-huh.

24      Q    So you presided over at least dozens

25  of Parish Council meetings, would you agree?

11

1    A    Yes.

2    Q    I'm going to start with an exhibit

3  that's been labeled Exhibit Q.  And do you see

4  that these are some of the discovery requests

5  that you answered?

6    A    Yes.

7    Q    And do you see on the last page that

8  you reviewed them and signed under oath that

9  they were true?

10   A    Yes.

11   Q    So if you could go to page 4.  You

12 see Interrogatory Number 2?  Do you see it?

13   A    (Witness complies) Yes.

14   Q    And you see that it asks to "Identify

15 all individuals who instructed you to read

16 aloud or describe the statute on

17 November 28th, 2023."  Do you see is that?

18   A    Yes.

19   Q    Do you recall reading aloud a statute

20 on November 28th, 2023?

21   A    Yes.

22   Q    And your answer here to Interrogatory

23 Number 2 is that, "I was not instructed by any

24 person to read aloud the subject statute."  Is

25 that correct?

12

1      A     Yes.  I was advised by legal counsel

2   to read the statute.

3      Q     So you were advised to read it, but

4   not instructed to read it?

5      A     Yes.

6      Q     When you say, you were advised to

7   read it but not instructed read it, you mean,

8   you were advised about it, but you exercised

9   your independent decision to go through with

10   reading it aloud; would you agree?

11      A     Yes, based on legal counsel's advice,

12   I made the decision to read.

13      Q     By legal counsel, do you mean Keith

14   Green?

15      A     ADA Keith Green, yeah.

16      Q     You read the statute aloud during Joy

17   Banner's public comment, correct?

18      A     Yes.

19      Q     Did Keith Green advise you to read it

20   aloud during Joy Banner's public comment?

21      A     He did not.

22      Q     You read a section of the statute,

23   correct; not the whole thing?

24      A     I do not recall specifically, but it

25   sounds right.

13

1    Q    You read a part that had been

2    highlighted on a piece of paper?

3    A    Uh-huh, yes.

4    Q    And not the whole page was

5    highlighted, right?

6    A    From my recollection, no.

7    Q    You chose which part of the statute

8    to read aloud during Joy Banner's public

9    comment, correct?

10   A    I believe just the part that was

11   highlighted.

12   Q    Right.  Did Keith Green advise you to

13   read aloud that particular part of that

14   statute?

15   A    I believe the part that was

16   highlighted was advised by legal counsel.

17   Q    And is Keith Green your lawyer?

18   A    No, he is not.  He's the lawyer for

19   St. John the Baptist Council under the DA's

20   Office.

21   Q    So Keith Green advised you to read

22   part of the statute aloud at some point, and

23   then you chose to read it during Joy Banner's

24   public comment; is that fair?

25   A    Yes.

14

1      Q      We'll come back to that issue later

2    today.  Do you see in the same document,

3    Exhibit Q, Interrogatory Number 7?  It's on

4    page 5.  And do you see that it asks you to

5    "Identify any times other than November 28,

6    2023 that you have read a criminal statute

7    aloud during a member of the public's

8    comment."  Do you see that question?

9      A      Yes.

10     Q      And your answer was:  "I do not

11   recall any other such time, but I may have

12   done so in past meetings.  I just don't recall

13   any specific occasion."

14            Do you see your answer there?

15     A      Yes.

16     Q      Do you have any recollection at any

17   time prior to November 28, 2023 reading aloud

18   a criminal statute during public comment?

19     A      I do not.

20     Q      Reading a criminal statute aloud

21   during a Parish Council meeting, that's a

22   fairly unusual thing to happen in a Parish

23   Council meeting, would you agree?

24     A      Yes.

25     Q      Is it the kind of thing you would

15

1    remember, if you had done it?

2        A    It's possible, but I don't recall

3    doing it before.

4        Q    So you have zero reason to think

5    you've ever read a criminal statute aloud

6    during a public comment before, agreed?

7        A    I do not recall.

8        Q    And you've been, at least several

9    times, elected the Chairman of the Parish

10   Council, correct?

11       A    Yes.

12       Q    And that means, among other things,

13   that you're the decision-maker for how the

14   Parish Council meetings proceed, correct?

15       A    That is not correct.  We follow

16   Robert's Rules of Order and the -- it's the

17   Chairman's job to preside over the meeting and

18   maintain order and decorum.

19       Q    So you're the decision-maker about

20   order and decorum in Parish Council meetings;

21   would you agree?

22       A    Yes.

23       Q    As the Chairman of the Parish

24   Council, you are the one who opens and closes

25   public comment?

16

1      A      Yes.

2      Q      You decide how long to wait for

3  public comment to be open?

4      A      Yes.

5      Q      You're the one to tell people when

6  they're off topic or need to stop their public

7  comment?

8      A      Yes.

9      Q      You're the one who can ask officers

10  in the room to remove someone?

11      A      Yes.

12      Q      And for these decisions, is there

13  anyone above you for these kind of decisions?

14      A      The Parish Council as a whole can

15  overrule the Chair for decisions.

16      Q      But there's no appellate body or

17  other body, other than the Parish Council that

18  these decisions can be appealed to, correct?

19      A      My understanding, yes.

20      Q      And for the Parish Council to

21  override one of your order and decorum

22  decisions, that would require a motion by a

23  member of the Parish Council?

24      A      Yes.

25      Q      So if no member of the Parish Council

17

1    moves to override your decision, then you are

2    the final decision-maker for order and decorum

3    decisions within a Parish Council meeting,

4    would you agree?

5        A    Yes.

6        Q    So I want to talk about public

7    comment more generally.  And maybe I should

8    back up.  When I talk about the Parish or

9    Parish Council, I've been talking about St.

10   John the Baptist Parish Council.  Do you

11   understand that's what I've been referring to?

12       A    Yes.

13       Q    And today, can you and I use Parish

14   or Parish Council as shorthand for St. John

15   the Baptist Parish Council?

16       A    Yes.

17       Q    At the Parish Council meetings,

18   there's an opportunity for the public to make

19   public comment, correct?

20       A    Yes.

21       Q    But there are some rules for how

22   those public comments can proceed, correct?

23       A    State statute regulates public

24   comment.

25       Q    Okay.  And sometimes people go way

18

1    off topic during public comment, correct?

2        A    Yes.

3        Q    It's fairly frequent for people --

4    members of the public -- to try to talk about

5    an agenda item but be completely way off the

6    actual topic, correct?

7        A    Yes.

8        Q    I know of one in Baton Rouge where

9    someone just read a Dr. Seuss book.  Can you

10   recall whacky, off-topic public comment during

11   Parish meetings?

12       A    Off the top of my head, no, but it

13   happens.

14       Q    Things comparatively whacky to that?

15       A    I haven't Dr. Seuss had read.

16       Q    Do you ever have people singing or

17   speaking in a rhyme or yelling or what do you

18   have?

19       A    We've had yelling, yes.  We've had

20   yelling.

21       Q    And people who -- have you had people

22   who try to air totally personal grievances

23   that are completely unrelated to an agenda

24   item?

25       A    I'm sure it's happened, yes.

19

1      Q     In fact, almost at very Parish

2   Council meeting, somebody is speaking or

3   trying to speak way off topic of the agenda

4   item, would you agree?

5      A     Not every meeting, but it happens.

6      Q     Maybe not every meeting, but it's

7   very common, would you agree?

8      A     Uh-huh, yes.

9      Q     For there to be rules for public

10  comment in a Parish Council meeting, those

11  rules would have to be either in state statute

12  or voted on by the Parish Council, correct?

13     A     Yes.

14     Q     And so any such rules would have to

15  be in writing, agreed?

16     A     Yes.

17     Q     If you look at Exhibit Q in front of

18  you -- if you look to Request for Publication

19  Number 2, which is on page 6.  Do you see

20  that?

21     A     Yes.

22     Q     Do you see that we ask for "All

23  public comment rules maintained by St. John

24  the Baptist Parish Council"?

25     A     Yes.

20

1    Q    You see that the only rules that were
2  identified were those found in the minutes of
3  a May 27, 1993 regular session?
4    A    Yes.
5    Q    I'm going to give you a copy of
6  what's been identified as Exhibit K, as in
7  kangaroo.  Do you see that attached to these
8  -- within this Exhibit K is the minutes of the
9  May 27th, 1993 meeting?
10   A    Yes.
11   Q    Okay.  So based on the discovery
12 response, any written rules for public comment
13 would be in here?
14   A    Yes.
15   Q    So if you see -- it's like sort of in
16 the middle.  There's some highlighting at the
17 bottom of one of the middle pages where it
18 talks about a motion by Mr. Parrilloux?
19   A    This (Indicating)?
20   Q    Yeah.  You're on the right page.
21   A    Yes.
22   Q    Do you see that there's a motion --
23 Mr. Parrilloux moved and Mr. Wolfe seconded a
24 motion to allow the public to speak when
25 motions are made by the Council with a

21

1    limitation of three minutes per person.  Do

2    you see that?

3         A    Yes.

4         Q    And that passed?

5         A    Yes.

6         Q    Do you see any other rules for public

7    comment that were passed here?

8         A    I do not.

9         Q    There's no, public commenter has to

10   be on topic rule, is there?

11        A    No, but I believe that may be in

12   state law.  I'm not certain.  I don't have it

13   in front of me.

14        Q    Do you know what state law that might

15   be?

16        A    Off the top of my head, I do not.

17        Q    So the only place it would be in the

18   Parish's rules would be here, and it's not

19   here.  So the only place you think it might be

20   would be in state statute, if not here; would

21   you agree?

22        A    Yes.

23        Q    If there's no state statute that says

24   public comment has to be on topic, then it is

25   safe to say that St. John the Baptist Parish

22

1  does not have an on-topic rule for public

2  comment, agreed?

3      A    My understanding what the state

4  statute is, public comment has to be allowed

5  prior to items being voted on by the Council.

6      Q    Right.  And so if there's no state

7  statute that says the comment has to be

8  on-topic, then the Parish doesn't have such a

9  rule, agreed?

10     A    Agreed.

11     Q    Are you familiar that the Parish

12  Charter requires the Parish --

13         MR. MOST:

14             I apologize.  Can we take a

15         five-minute break?

16         MR. SPEARS:

17             Sure.

18             (BRIEF RECESS)

19  BY MR. MOST:

20     Q    Mr. Wright, are you familiar that the

21  Parish Charter requires the Parish to publish

22  the Council's rules?

23     A    I believe so.

24     Q    And are you familiar that we asked

25  for those rules in a discovery request and the

23

1   response was that there are none so published.

2          MR. SPEARS:

3                 Are you directing to a

4          specific --

5          MR. MOST:

6                 Yeah, I can -- I'm going to

7          circulate what's been designated as

8          Exhibit P.

9          THE WITNESS:

10                Thank you.

11  BY MR. MOST:

12     Q    So do you see that Request for

13  Production Number 3 on page 5 was a request

14  for "All rules and orders of business

15  maintained by the Parish of St. John the

16  Baptist as referred to in the Parish of St.

17  John the Baptist Charter Article 3 Section A

18  5(f)."  Do you see that question?

19     A    Yes.

20     Q    And do you see that the answer that

21  St. John the Baptist Parish is not aware of

22  any such formally published documents by the

23  Council?

24     A    Yes.

25     Q    So if there are any rules for Parish

24

1    Council meetings, they're required to be

2    published but haven't been published, agreed?

3         A    Agreed.

4         Q    And so you do not know of any place

5    that there might be an on-topic rule for

6    public comment in Parish Council meetings,

7    except maybe there's one in state law, but you

8    don't know?

9         A    I would refer to Louisiana Open

10   Meetings Law.

11        Q    And if there's no on-topic rule

12   there, then Joy Banner could not have been

13   breaking any on-topic rule, because no such

14   rule exists, except, perhaps, in the Open

15   Meetings Law, would you agree?

16        A    Can you repeat the question?

17        Q    Sure.  Let me break it down.  If

18   there's no rule requiring public comment to be

19   on-topic, then Joy Banner could not have been

20   breaking an on-topic rule, agreed?

21             MR. SPEARS:

22                  I'm going to object to the form

23             of the question.  I think earlier the

24             Chairman indicated that it's his

25             responsibility to keep decorum, and

25

1          he has the authority to decide

2          whether or not this is a violation of

3          decorum.  Subject to that, you can

4          answer.

5     MR. MOST:

6               All right.  Mr. Spears, before

7          we go on, speaking objections in

8          federal court are prohibited.  In

9          Breaux V. Halliburton, the Eastern

10         District of Louisiana noted that

11         it's, quote, "Common to refer to

12         objections that argumentative or

13         which suggests an answer to the

14         witness as speaking objections.

15         These speaking objections are

16         prohibited."

17              Another court in Damaj V.

18         Farmers Insurance Company said,

19         "Counsel's statements when making

20         objections should be succinct and

21         verbally economical, stating the

22         basis of the objection and nothing

23         more."

24              What you just did there is you

25         object as to the form of the

26

1          question, which is perfectly

2          appropriate.  But then you went on to

3          refer Mr. Wright back to his prior

4          testimony and make an argument about,

5          essentially, what his testimony

6          should be.  I would ask that you stop

7          making speaking objections going

8          forward in this deposition.

9          MR. SPEARS:

10              For the record, my objection was

11          appropriate.  I referred you back to

12          his earlier statement.  I didn't

13          refer him.  I referred you back to

14          his earlier statement.

15  BY MR. MOST:

16     Q    All right.  Moving on.  Rules of the

17  Parish Council have to be written down,

18  agreed, Mr. Wright?

19     A    Yes.

20     Q    And if there's no written rule that

21  Ms. Banner had to stay on-topic, then she

22  couldn't have been breaking an on-topic rule,

23  agreed?

24     A    Again, I would refer to Louisiana

25  Open Meetings Law and, additionally, the

27

1    format of the Council agenda.  Because I

2    believe it said, "Agenda items only" next to

3    "Public comment."

4         Q    Okay.  Is that a rule that was voted

5    on by the Parish Council?

6         A    I do not recall.

7         Q    Is there any rule of the Parish

8    Council that says one person can't donate

9    their public comment time to another person?

10        A    Can you repeat the question?

11        Q    Sure.  You've heard people say

12   they're giving their public comment time to

13   someone else, right?

14        A    Yes.

15        Q    Is there any rule that says people

16   can't do that?

17        A    We follow Robert's Rules of Order,

18   which allows only members of the Council to

19   yield their time.

20        Q    Where does it say that the Parish

21   Council follows Robert's Rules?

22        A    This was prior to me taking office.

23        Q    Do you know of any place that's

24   written down that the Parish Council follows

25   Robert's Rules?

28

1    A    I do not.  Off the top of my head, I
2  do not.
3    Q    You know who Joy Banner is, correct?
4    A    Yes.
5    Q    You understand she's the plaintiff in
6  this case?
7    A    Yes.
8    Q    Joy Banner is a person that's been
9  sharply critical of the Parish Government,
10  correct?
11    A    Yes.
12    Q    She has particularly objected to the
13  Parish's efforts to rezone property near
14  Edgard from residential to industrial,
15  correct, near Wallace?
16    A    Yes.
17    Q    You're aware that she filed an ethics
18  complaint against the Parish President?
19    A    Yes.
20    Q    Were you aware of that at the time of
21  the November 2023 meeting?
22    A    I do not recall.
23    Q    Have you read the ethics complaint
24  against the Parish President?
25    A    I do not recall.

29

1    Q    You were at least aware of Joy

2   Banner's criticism of the Parish and the

3   Parish President as of the meeting in November

4   2023; would you agree?

5    A    Yes.

6    Q    On November 28, 2023 the Parish

7   Council had a council meeting, correct?

8    A    Yes.

9    Q    I'm circulating what's been

10  designated as Exhibit U.  This is the agenda

11  for that November 28, 2023 council meeting,

12  correct?

13   A    Yes.

14   Q    And Item J on that agenda was about

15  hiring special outside counsel to represent

16  Jaclyn Hotard in defending against an ethics

17  complaint, correct?

18   A    No.

19   Q    What part of that is incorrect?

20   A    This is a general agreement to

21  "Retain legal service for the law firm of R.

22  Gray Sexton as special counsel to perform

23  services related to ethic laws subject to the

24  restrictions imposed by the State of Louisiana

25  regarding ethics procedures and at the rate in

30

1    accordance with the Attorney General

2    guidelines per statute."

3        Q    So this agenda on J was about the

4    Parish paying for an attorney, the R. Gray

5    Sexton Law Firm, correct?

6        A    Yes, as special counsel.

7        Q    As special counsel.  And he was going

8    to be paid to perform services related to

9    ethics laws, correct?

10       A    Yes.

11       Q    And at the very beginning, after the

12   J, it says, "Jaclyn Hotard," correct?

13       A    Yes.

14       Q    Does that mean she was the one to

15   propose that for the agenda that night?

16       A    As Parish President, yes.

17       Q    Do you know of any ethics law issues

18   that were pending at the time, besides the

19   ethics complaint against Parish President

20   Hotard?

21       A    I do not recall.

22       Q    So to your knowledge, there was only

23   one ethics law issue involving the Parish at

24   the time, and that was the one about --

25            MR. SPEARS:

31

1          Objection; asked and answered.

2     BY MR. MOST:

3        Q    Unless your lawyer instructs you not

4     to answer -- he'll make an objection, and then

5     you can answer.

6        A    The Council doesn't manage the

7     day-to-day operations of the Parish, so it

8     would not be uncommon for the Council not to

9     know about the day-to-day operations.

10       Q    But as far as you knew at the time,

11    you only knew of one ethics law issue, the one

12    involving the ethics complaint against Jaclyn

13    Hotard, agreed?

14       A    Yes.

15       Q    Was this agenda item about addressing

16    that ethics complaint?

17       A    I can't speak specifically to what

18    this is about, because the agenda item,

19    itself, is a general blanket agreement, which

20    is typically not unusual for the Council to

21    retain special counsel for the Parish.

22       Q    You voted in favor of this agenda

23    item, right?

24       A    Yes.

25       Q    You don't know why the Parish Council

32

1   was hiring -- why the Parish was hiring this

2   lawyer?

3       A    As the agenda item is written,

4   retaining for special counsel.  So as far

5   as -- again, when the agreement would be

6   activated, like most agreements that falls to

7   the day-to-day operations of the Parish

8   Government.

9       Q    Is it your testimony that you did not

10  know if this had anything to do with the

11  ethics complaint against Jaclyn Hotard; is

12  that your testimony?

13      A    I'm saying the agenda item

14  specifically, I knew as it reads:

15  "Authorization to retain legal services with

16  the law firm R. Gray Sexton as special counsel

17  to perform services related to ethic laws

18  subject to the restrictions imposed by the

19  State of Louisiana regarding ethic procedures

20  and at the rate in accordance with the

21  Attorney General guidelines per statute."

22      Q    Yeah.  I understand.  You're reading

23  the agenda, the text of the agenda.  My

24  question for you is, however, did you know

25  that this was prompted by the ethics complaint

33

1    against Jaclyn Hotard?

2         A    I did not.

3         Q    So you voted for this not knowing if

4    it had anything to do with the ethics

5    complaint against Jaclyn Hotard or not?

6         A    Correct.

7         Q    Would it be an appropriate use of

8    Parish funds to pay a lawyer to defend a

9    Parish official against an ethics complaint?

10        A    The Parish pays legal fees for all

11   kind of defenses, so it's not uncommon.

12        Q    Do you know of any -- you say it's

13   not uncommon.  Do you know of any other time

14   the Parish has paid for a lawyer to defend a

15   Parish official from an ethics complaint?

16        A    Off the top of my head, I do not

17   recall.

18        Q    So next I'm going to ask you about

19   what happened during the November 28th

20   meeting.  I'm going to ask you some questions.

21   I've got the video that we can watch, if we

22   need to.  I'll ask you questions, and if you

23   can't remember and need to refer to the video,

24   we can do that.

25             So at the November 28th, 2023

34

1   meeting, you open with a prayer, and then you

2   call for public comment.

3       A    We open with call to order, roll

4   call, prayer and then pledge and then public

5   comment.

6       Q    And you called for public comment

7   that day and allowed approximately two seconds

8   before saying public comment was closed,

9   correct?

10      A    I don't recall, because I know we had

11  public comment that day, I believe.

12  Typically, when a meeting opens, I'll look.

13  If nobody is standing up or at the podium,

14  then we will close public comment.  But I

15  believe in this particular instance, it was

16  closed, but people had wished to speak, so we

17  opened it back up.

18      Q    Sure.  So would you agree that you

19  said public comment was open, waited

20  approximately two seconds, closed it, but then

21  saw that some people wanted to speak and let

22  them speak; is that accurate?

23      A    Yes.

24      Q    And the first of those people to

25  speak was Joy Banner?

35

1    A    Yes.

2    Q    And during her public comment, you

3  gaveled several times for her to be quiet,

4  correct?

5    A    I believe, as Chairman, trying to

6  maintain order and decorum and to stay on

7  agenda items.

8    Q    And as part of doing that, you

9  gaveled several times for Joy Banner to be

10  quiet, correct?

11    A    I believe several, including the

12  Parish President, were speaking out of turn.

13  So, yes, I did use the gavel to maintain

14  order.

15    Q    And you gaveled several times during

16  Joy Banner's public comment for her to be

17  quiet, correct?

18    A    No.  I hit the gavel to maintain

19  order and decorum.

20    Q    To stop people from speaking?

21    A    To get people -- to get a good range.

22  In this particular instance, it was to

23  maintain order and decorum and additionally

24  stay on agenda topic.

25    Q    So the way you wanted to maintain

36

1    order and decorum was for the people who were

2    speaking, when you were gaveling, to stop

3    speaking, agreed?

4        A    Not at all.

5        Q    What do you expect to happen when you

6    gavel?

7        A    Maintaining order and decorum.  It

8    depends on the individual circumstance.

9        Q    And if what you perceive to be a

10   breach of the order and decorum is someone

11   talking when you gavel, you expect them to

12   stop talking, agreed?

13       A    Yes.  I'd say that's fair.

14       Q    And when Joy Banner was speaking, you

15   gaveled, correct?

16       A    Yes.

17       Q    And you expected her to stop talking

18   when you gaveled, correct?

19       A    Yes.

20       Q    Did anyone advised you to gavel

21   during Joy Banner's comment?

22       A    No, not to my recollection.

23       Q    So that was your decision to gavel

24   during Joy Banner's comment?

25       A    Yes.

37

1      Q     And why did you gavel during Joy

2    Banner's comment?

3      A     I believe Ms. Banner was getting off

4    topic from the agenda.

5      Q     You believe that violates some rule?

6      A     By the Louisiana Open Meetings Law

7    that we follow, and as stated on the agenda,

8    public comment on agenda items only.

9      Q     But that comment on the agenda is not

10   a rule voted on by the Parish, agreed?

11     A     Agreed.

12     Q     So the only rule that you know that

13   Joy Banner may have been violating was some

14   provision of the Open Meetings Law that

15   requires public comment to be on-topic,

16   agreed?

17     A     Yes.

18     Q     Have you ever read that rule in the

19   Open Meetings Law?

20     A     Yes.

21     Q     Do you recall what it says, roughly,

22   paraphrasing?

23     A     Off the top of my head, I do not.

24     Q     Why did you think that Joy Banner was

25   off topic?

38

1    A    Ms. Banner started speaking about an

2  ethics violation or potential ethics violation

3  that was not on the agenda.

4    Q    And she was talking about the ethics

5  violation that was contained in the ethics

6  complaint that she filed?

7    A    Yes.

8    Q    To your knowledge, that was the only

9  ethics law issue pending before the Parish at

10  the time, correct?

11    A    To my knowledge, yes.

12    Q    And so you think it's off topic for

13  Joy Banner to talk about an ethics violation

14  in the context of hiring an ethics lawyer when

15  that ethics violation is the only one that you

16  know of in front of the Parish at the time?

17    A    Yes.

18    Q    Why?

19    A    Again, sticking to the agenda item.

20  The item is about retaining counsel -- special

21  counsel.

22    Q    To respond to ethics law issues?

23    A    Uh-huh.

24    Q    And she was talking about an ethics

25  law issue, agreed?

39

```
1       A    Yes.

2       Q    During the break that we had, did you

3   confer with anyone?

4       A    President Hotard.

5       Q    What did she tell you?

6       A    She reminded me about the Louisiana

7   Open Meetings Law.

8       Q    What else did she say?

9       A    That was it.

10      Q    What did she say about the Open

11  Meetings Law?

12      A    She just referenced speaking to

13  rules, the Louisiana Open Meetings Law and a

14  white paper document the legislative auditor

15  references.

16      Q    So during the break, Ms. Hotard came

17  over and told you that there is an Open

18  Meetings Law.  What did she say about it?

19      A    She reminded me about the Louisiana

20  Open Meetings Law document.

21      Q    What document is that?

22      A    Something the Legislative Auditor has

23  published on their website.

24      Q    Did you see that?

25      A    Yes.
```

40

1     Q    What did it say?

2     A    Off the top of my head, I do not

3  recall.  It's a lengthy document that public

4  comments is a portion of the document.

5     Q    Did you -- when did you look at that

6  document?

7     A    It's been a while.

8     Q    And Jaclyn Hotard was bringing up

9  this document to you to suggest that you

10 should testify about it?

11     A    I can't speak to her intentions.

12     Q    But she was giving you a potential

13 answer to some of my questions, correct?

14     A    Again, I can't speak to what her

15 intentions were, but she was reminding me of a

16 document.

17     Q    Could you find that document, if you

18 tried?

19     A    Yes.

20     Q    And it's a white paper about the Open

21 Meetings Law by the Legislative Auditor?

22     A    Yeah, there may not be -- it's a

23 Legislative Auditor document.  I don't recall

24 the --

25     Q    Do you see this document that I've

41

1    pulled up on my laptop here?

2        A    Yes.

3        Q    And do you see the seal of the

4    Louisiana Legislative Auditor in the upper

5    left?

6        A    Yes.

7        Q    It says, "Revised August 2024" in the

8    upper left?

9        A    Yes.

10       Q    It's titled, "Open Meetings Law"?

11       A    Yes.

12       Q    Is this the document you're talking

13   about?

14       A    I don't believe so.  I haven't seen

15   the revised version.

16       Q    Sure.  So during Joy Banner's public

17   comment on November 28, 2023, you gaveled her

18   quiet and then read to her from a section of

19   Louisiana law, correct?

20       A    I read it to make a general statement

21   to the public, as well as the council, as I

22   was advised to by legal counsel.

23       Q    But you didn't read it at the

24   beginning of the meeting, did you?

25       A    I did not.

42

1    Q    You chose to read it to -- to stop

2    Ms. Banner and read it during her public

3    comment, correct?

4    A    Yes.

5    Q    Because you thought it was responsive

6    to what Ms. Banner was saying, correct?

7    A    Yes.

8    Q    Specifically, you thought she might

9    be in violation of that law, correct?

10   A    I'm not an attorney, so I can't speak

11   to if she would be in violation of a law or

12   not.  But as advised by legal counsel, I read

13   the statute in regards to the item on the

14   agenda.

15   Q    You just told me you thought it was

16   responsive to what Joy Banner was saying,

17   right?

18   A    Yes.

19   Q    Why did you think it was responsive

20   to what Joy Banner was saying?

21   A    Because, again, as Chairman, my job

22   is to make sure we stay on agenda items or

23   maintain order and decorum, and it seemed as

24   if Ms. Banner was drifting off topic.

25   Q    Does this law criminalize off-topic

43

1    speech?

2        A    I'm not an attorney.

3        Q    I don't need your legal opinion.  You

4    told me you thought it was responsive to what

5    she was saying, and I just want to know why

6    you thought that.

7        A    Again, Ms. Banner was going off

8    topic.  And as advised by legal counsel, I

9    read the statute to advise the Council and

10   everyone at the time.

11       Q    And to advise Ms. Banner, right?

12       A    Yes.

13       Q    And that was a criminal statute that

14   purports to punish certain kinds of speech

15   with criminal consequences, agreed?

16       A    Again, I'm not an attorney, so I'm

17   not going to get into the weeds with it.

18       Q    Well, you understand that there's

19   criminal statutes, right?

20       A    Yes.

21       Q    Criminal statute is one that, if

22   someone violates it, can be put in prison,

23   right?

24       A    Yes.

25       Q    And this was one of those kind of

44

1   statutes, right?

2       A    My understanding.  But, again, I'm

3   not an attorney.

4       Q    Sure.  And part of your purpose in

5   reading that statute aloud during Ms. Banner's

6   public comment was so that she would stop

7   speaking along the line that she was, correct?

8       A    Trying to get Ms. Banner on topic,

9   yes.

10      Q    So you were reading this criminal

11  statute so Ms. Banner would stop talking the

12  way she was and talk in a different way,

13  agreed?

14      A    To stay on topic and talk about the

15  agenda item, yes.

16      Q    To change her speech from what it was

17  to what you felt was more appropriate,

18  correct?

19      A    Appropriate -- again, it's not my job

20  to decide what's appropriate in term of her

21  speech, but, again, speaking to the agenda

22  item.

23      Q    Sure.  I'll take out the word,

24  "Appropriate."  You read the criminal statute

25  during Ms. Banner's public comment so that she

45

1    would stop talking about what she was talking

2    about and talk about something else, correct?

3        A    On topic, yes.

4        Q    And part of the reason you read this

5    statute was to show the consequences,

6    including potential imprisonment, that might

7    result if she didn't change the way she was

8    talking, agreed?

9        A    Again, I read the statute as advised

10   by legal counsel to advise anyone speaking on

11   that item, including the Council.

12       Q    About the potential consequences of

13   speech, right?

14       A    Yes.

15       Q    Including imprisonment?

16       A    Yes.

17       Q    And to convey that whoever was

18   speaking at the time that you read this could

19   be subject to arrest if they kept talking the

20   way they were, right?

21       A    I cannot speak to that, because it's

22   not -- again, I'm not a law enforcement

23   officer.  I'm not an attorney.

24       Q    But as a Chairman of the Council, you

25   can ask officers in the room to ask someone to

46

1    leave, correct?

2         A    Yes.

3         Q    So you can direct the actions of law

4    enforcement officers that are in the Parish

5    Council chamber, right?

6         A    To escort out, yes.

7         Q    When you read this criminal

8    substitute out loud, you did this in your role

9    as Parish President, right?

10        A    No, Council Chairman.

11        Q    I apologize.  You're correct.

12        A    That's okay.

13        Q    When you read this criminal statute

14   out loud, you read it in your role as Chairman

15   of the Parish Council, correct?

16        A    Yes.

17        Q    Thank you.  And then after you read

18   this criminal statute aloud, Ms. Banner made a

19   few more brief statements and then sat down,

20   correct?

21        A    Yes.

22        Q    So if you will turn to Exhibit K,

23   which should be in front of you.  And if you

24   go to the second to last page.  This is the

25   statute that you read from, correct?

47

1      A      Which page?

2      Q      There's no numbers, but if you go

3   right before the verification page.  So it

4   should at the very end.

5      A      Okay.

6      Q      You see this says that the bottom

7   "R.S. 42:1141.4"?

8      A      Yes.

9      Q      This was the statute that you read an

10  excerpt from during Ms. Banner's public

11  comment?

12     A      Yes, I believe so.

13     Q      And this is what Keith Green emailed

14  to you?

15     A      From what I recall, yes.

16     Q      And you read it before the

17  November 28th, 2023 meeting?

18     A      I believe so, yes.

19     Q      You read it from top to bottom?

20     A      I do not recall.

21     Q      Do you recall what part you did read?

22     A      I do not.  It could have possibly

23  have been the highlighted portion, but I do

24  not recall.

25     Q      So there's no highlighted portion on

48

1    here, right?

2        A    There is not -- well, it looks like

3    through the black and white.  Was this a

4    copy --

5        Q    I'll represent to you this was the

6    form that was in the email.  Do you recall if

7    the email version had any highlighting?

8        A    I do not recall.

9        Q    So at some point you did read a

10   highlighted copy.  I'll circulate that.  This

11   is marked as -- well, we printed it out in

12   black and white, so the highlighting doesn't

13   appear.  There was a section that was

14   highlighted, correct?

15       A    Yes.

16       Q    Oh, no.  It is on here.  It's just

17   very faint.  This is Exhibit S.  And it's

18   faint in this printout.  But do you see that

19   the very top is highlighted, the "R.S.

20   42:1114.4"?

21       A    Yes.

22       Q    And then Subsection L(1) is

23   highlighted on the back?

24       A    Yes.

25       Q    Were you the person who did the

49

1    highlighting?

2        A    I was not.

3        Q    You don't recall who did it or you

4    are confident you were not?

5        A    I don't recall.

6        Q    So you may have been the person to

7    highlight it, but you don't recall whether you

8    did or not?

9        A    I do not recall.

10       Q    And you got a physical copy of this

11   from Jackie Landeche, correct?

12       A    Yes.

13       Q    So if the version she gave to you was

14   without highlighting, then you would have

15   been --

16       A    Let me -- let me -- I can't speak for

17   certain who -- when I show up to a meeting,

18   sometimes it's right at the meeting.  So

19   usually, my documentation is waiting on me at

20   the podium.

21       Q    Do you recall emailing Jackie

22   Landeche to print this out?

23       A    I believe so.

24       Q    If you emailed her to print it out,

25   would you expect she was the person to print

50

1    it out and put it in your papers?

2        A    Yes.

3        Q    If so she didn't highlight it and it

4    wasn't highlighted in the email, it would

5    suggest you were the person to highlight it,

6    correct?

7        A    Again, I can't speak to that.  A lot

8    of papers circulate in the Council office, so

9    she could have delegated the task.  Again, I

10   do not recall who highlighted it.

11       Q    Do you recall if you looked at the

12   top of this document?

13       A    I do not recall.

14       Q    Do you see the part at the top, it

15   says, "NOTE:  This provision of law was

16   included in the Unconstitutional Statutes

17   Biennial Report."

18       A    Yes.

19       Q    Do you recall that if you read that

20   part in November of 2023?

21       A    I do not recall.

22       Q    There's a note in this document that

23   suggests it was included in some sort of

24   unconstitutional statutes report, right?

25       A    Yes.

51

1    Q    You understand that sometimes the law

2  can be on the books, but it's been ruled

3  unconstitutional, right?

4    A    I'm not --

5         MR. SPEARS:

6             Objection to the form of

7         question.

8         THE WITNESS:

9             I'm not an attorney, so I don't

10        want to speculate.

11 BY MR. MOST:

12   Q    Sure.  But you have a layman's

13 understanding that sometimes laws are

14 unconstitutional, right?

15   A    Again, I'm not an attorney.  I don't

16 want to speculate.

17   Q    I'm not asking you to speculate.

18 You're the Chairman of the Parish Council.  Do

19 you understand that sometimes laws on the

20 books are unconstitutional, yes or no?

21   A    I would say no.  I would think if the

22 law was unconstitutional, it wouldn't be on

23 the books.  But, again, I'm not an attorney.

24   Q    This part here that talks about

25 Unconstitutional Statutes Report -- Biennial

52

1    Report -- this at least is a suggestion that

2    this statute might be unconstitutional; would

3    you agree?

4         A    Again, I'm not an attorney, so I'm

5    not going to speculate.

6         Q    What do you understand this note to

7    be saying?

8         A    "This provision" -- from what it

9    says, "This provision of law was included in

10   the Unconstitutional Statute Biennial Report

11   to the Legislature dated March 14, 2016."

12        Q    So you understand that this note is

13   suggestion that this provision of law was

14   included in a report about unconstitutional

15   statutes, right?

16        A    A report, yes.

17        Q    And so did you look up what that

18   unconstitutional statutes report might be?

19        A    I did not.

20        Q    You're looking at it now.  Does that

21   pique your curiosity?

22        A    Sure.

23        Q    You want to know what it means, that

24   this law is included in Unconstitutional

25   Statutes Report, right?

53

1    A    Yes.

2    Q    Did you do anything in November of

3   2023 to figure out whether this law was

4   constitutional or not?

5    A    I did not.  I followed advice of

6   legal counsel.

7    Q    And did he tell you that this law was

8   constitutional?

9    A    He did not.

10    Q    Did you ask him?

11    A    I did not.

12    Q    So he didn't give you any advice

13   about whether this was constitutional or not,

14   did he?

15    A    Did not.

16    Q    Did you do anything to figure out

17   whether this law was constitutional?

18    A    I did not, following advice of legal

19   counsel.

20    Q    What specifically did Mr. Green tell

21   you about the statute?

22    A    I do not recall our -- specifics of

23   our conversation.

24    Q    Was it a phonecall; was it an email?

25    A    I believe -- I know there was an

54

1  email.  But outside of that, I do not recall.

2      Q    Do you recall meeting with him in

3  person?

4      A    I do not recall.

5      Q    So as far as you can recall, you only

6  recall an email, right?

7      A    Yes.

8      Q    And Mr. Green suggested that you read

9  this part with all the statute during the

10  upcoming meeting?

11     A    Yes.

12     Q    Why did he advise you to do -- I

13  mean, what was the context of that discussion?

14     A    I recall the contents of the email

15  was to limit -- it was limiting the ability on

16  Council's discussion on that item.

17     Q    Limiting the ability of Parish

18  Council's discussion?

19     A    Yes.

20     Q    So Keith Green advised you to read

21  this to constrain what the Council members

22  would say, right?

23     A    Yes.

24     Q    And then you chose to read it during

25  Joy Banner's public comment, right?

55

1        A     Yes.

2        Q     So you weren't using this statute in

3   the way that Keith Green suggested, were you?

4        A     Again, going back to what I had

5   previously said when I read the statute, it

6   was during public comment when Ms. Banner was

7   speaking, but I believe even in the meeting,

8   it was said that I was also notifying the

9   Council members, as well.

10       Q     Sure.  So if you were going to be

11  trying to constrain the Council members'

12  speech, you would have read it before the

13  Council members started speaking, right?

14       A     Yes.

15       Q     And you didn't do that?

16       A     I did.  It was prior to the

17  meeting -- prior to the item coming up.

18       Q     Okay.  So you didn't read it at the

19  outset of the Parish Council member speaking,

20  correct?

21       A     Correct.

22       Q     Which is when Keith Green suggested

23  that you read it, correct?

24       A     Again, I don't recall the specifics

25  of the email, but it was to advise and limit

56

1    the discussion on that item.

2         Q    By the Council members?

3         A    Yes.

4         Q    And you instead used it during the

5    speech of Joy Banner, correct?

6         A    Yes.

7         Q    What suggested that this criminal

8    statute might be needed to constrain the

9    Council members' discussion?

10        A    Can you repeat the question?

11        Q    Sure.  I mean, you've never -- have

12   you had a conversation with Keith Green like

13   this before or after?

14        A    In regards to --

15        Q    Reading criminal statute during the

16   Parish Council meeting?

17        A    I do not recall.

18        Q    So what prompted this conversation

19   between you and Keith Green?  Was there

20   something you or he thought was coming up?

21        A    I do not recall.

22        Q    Did you tell Keith Green that you

23   were thinking about reading this during Joy

24   Banner's public comment?

25        A    I do not recall.

57

1    Q    So you don't have any recollection of
2  telling Keith Green, I might read this during
3  a public comment, did you?
4    A    I do not recall.
5    Q    So it's now August 2024, right?
6    A    Yes.
7    Q    Not a trick question.
8    A    I still had to think about it.
9    Q    Yeah, that's okay.  You're being
10  precise, and that's good.  You know different
11  things now than you did in November 2023,
12  right?
13    A    I know different things every day as
14  a human being.
15    Q    Right.  So if you had known on
16  November 28, 2023 what you know, would you
17  have done anything differently with the way
18  you handled Joy Banner's public comment?
19          MR. SPEARS:
20              Objection, vague.
21          THE WITNESS:
22              I would say Ms. Banner was still
23          off topic and my job as Chairman
24          would be to maintain order and
25          decorum.

58

1   BY MR. MOST:

2       Q    So you wouldn't have done anything

3   differently?

4       A    I probably would have had more

5   discussions with legal counsel on this

6   statute.

7       Q    Would you -- knowing what you know

8   today, would you have read this statute during

9   Joy Banner's public comment?

10      A    I would have chose to read it at the

11  beginning of the meeting.

12      Q    So you would have done something

13  differently?

14      A    Yes.

15      Q    You wouldn't have used it to

16  interrupt Joy Banner specifically, right?

17      A    Yes.

18      Q    And if Joy Banner in a future meeting

19  goes off topic, will you gavel her quiet

20  again?

21      A    I would treat Ms. Banner just like

22  anybody else that goes off topic and try and

23  maintain order and decorum.

24      Q    So you treat everyone the same when

25  they go off topic?

59

1      A     Yes.  I do my best.

2      Q     So every time someone goes off topic

3  you gavel them quiet?

4      A     It depends on the circumstance.

5  Usually, if it escalates to a gavel, but I

6  don't use the gavel necessarily every time.

7      Q     So if Ms. Banner is persistently off

8  topic in the future, you would gavel her quiet

9  again?

10      A     Yes, persistently off topic.  But

11  again, I don't use the gavel every time.

12      Q     And if Ms. Banner is off topic about

13  an ethics law issue in the future, will you

14  advise her or read to her from this criminal

15  statute again?

16      A     I would defer to my legal counsel.

17      Q     So this issue about Joy Banner's

18  public comment during the November 28th, 2023

19  meeting, who have you talked to about that,

20  aside from a lawyer?

21      A     I do not recall.

22      Q     I mean, we know you talked to

23  Ms. Hotard about it, right?

24      A     Yes.

25      Q     Other than Ms. Hotard, who have you

60

1    talked to?

2        A    Ms. Landeche, Council Secretary.

3        Q    Who else?

4        A    That's it, to my recollection.

5        Q    And what have you talked to Ms.

6    Hotard about, about it?

7        A    Approached the meeting in general and

8    proper decorum and with Ms. Landeche.

9        Q    Was that before or after the November

10   28th, 2023?

11       A    After.

12       Q    And when you say you talked to

13   Ms. Hotard about order and decorum, what

14   specifically did you discuss with her?

15       A    For me, as Chairman, I'm always

16   looking for feedback on how to run a better

17   and efficient meeting.  I think over the

18   years, we've improved.  We're nowhere near

19   perfect.  But for me, looking for ways to

20   improve the way we're running our meetings

21   efficiently.

22       Q    And so you asked Ms. Hotard for

23   feedback on the way you handled that meeting?

24       A    Maybe not that meeting specifically.

25       Q    But what you talked to her about --

61

1      A     Yes, we've spoken in the past about

2   meetings and the way I've run them.

3      Q     Right.  But my question is, what did

4   you talk to her about that November 28 --

5      A     I do not recall specifics.

6      Q     But you recall it was about order and

7   decorum?

8      A     Yes.

9      Q     But you don't recall anything about

10  what you discussed with her beyond the phrase,

11  "Order and decorum"?

12     A     I do not.

13     Q     And what about Ms. Landeche, what did

14  you talk to her about, about that meeting?

15     A     Again, I don't recall specifics that

16  we discussed on that meeting.

17     Q     Have you texted or emailed with

18  anybody about that meeting?

19     A     I do not recall.

20     Q     Well, have you looked through your

21  text messages to see if there's text messages

22  about that meeting?

23     A     Yes.

24     Q     Have you looked through your emails?

25     A     Yes.

62

1      Q    You talked about how -- your

2  conversation with Keith Green was about using

3  this statute to potentially constrain what the

4  Council members would say.  Is that right?

5      A    From my recollection, yes.  I don't

6  have the email in front of me.

7      Q    Was part of the discussion -- did you

8  anticipate that the Banner sisters would show

9  up and say things that they shouldn't?

10     A    I'll be honest, Mr. Most, chairing

11  Council meetings, you never know what's -- I

12  think, as you alluded to earlier, apparently,

13  someone referenced and read a Dr. Suess book

14  in public comment.  I have no way to know what

15  people are going to come up and speak about.

16  I only hope that it's usually about -- or all

17  the time -- it's about the agenda items.

18     Q    So your discussion with Keith Green,

19  it didn't have to do with the Banner sisters;

20  that wasn't what he was advising you about,

21  agreed?

22     A    I do not recall.

23     Q    And you don't recall him advising you

24  about using the statute during public comment,

25  right?

63

1    A    I do not recall.

2    Q    At one point, Ms. Hotard asked you to

3  stop Dr. Banner's comment.  Do you recall

4  that?

5    A    Yes.

6    Q    And then subsequently, you did stop

7  Dr. Banner's comment, correct?

8    A    I believe I stopped both of them, as

9  they were speaking out of turn.

10   Q    Did you stop Dr. Banner's comment in

11  part because Ms. Hotard asked you to?

12   A    I did not.

13   Q    This is a question I asked of

14  everybody.  It's not specific to you.  Have

15  you ever been arrested?

16   A    I have not.

17   Q    Have you ever been the subject or

18  target of a criminal investigation?

19   A    Not to my knowledge.

20       MR. MOST:

21            Let's take a five-minute break.

22       This may be the end of today's

23       session.  We're going to hold it open

24       in case we have to deal with

25       something about a video.  Let's take

64

1          five, and then we'll keep going.

2          We're making good time.

3               (BRIEF RECESS)

4     BY MR. MOST:

5        Q     Mr. Wright, did you talk to anybody

6     about this case or your testimony here today

7     during that break?

8        A     No.

9        Q     So during Ms. Banner's public

10    comment, you both gaveled her quiet and also

11    verbally told her to stop, right?

12       A     I believe so.

13       Q     And with Ms. Hotard, you gaveled in

14    the context of her speaking, but you did not

15    at any point tell Ms. Hotard to stop?

16       A     I believe I said I was retaining the

17    floor, so that would speak to anybody that was

18    speaking out of turn.

19       Q     But you did not specifically direct

20    any verbal directive to stop, specifically to

21    Ms. Hotard, agreed?

22       A     I do not recall.  But, again, from

23    what I recall, my statement was, I was

24    retaining the floor.

25       Q     Sure.  And Keith Green's advice to

65

1   you, did you seek Keith Green's advice or did

2   he reach out to you about this statute?

3        A    I do not recall.

4        Q    So you don't have any recollection

5   that you sought his advice?

6        A    I do not.

7        Q    Would you have any record of whether

8   you sought his advice?

9        A    I do not have any recollection.

10       Q    And he might have just reached out to

11  you?  He might have initiated that

12  conversation, correct?

13       A    It's possible, yeah.

14            MR. MOST:

15                 Okay.  So that's it for you

16            today.  What we're going to do is

17            we're going to hold your deposition

18            open.

19            THE WITNESS:

20                 Okay.

21            MR. MOST:

22                 The only reason we're doing that

23            is if we have to come back and go

24            through the video and compare it to a

25            transcript.  I think that's unlikely,

66

1          but we're going to hold it open for

2          that limited purpose.

3          MR. SPEARS:

4               For the limited purposes of

5          reconciling the transcript with the

6          actual video.  And if we can agree on

7          the authenticity or the accuracy of

8          the transcript, there's no need to do

9          any to followup.  Is that correct?

10         MR. MOST:

11              Right.  Do you have any

12         questions for Mr. Wright?

13         MR. SPEARS:

14              I don't have any questions.  I

15         think you covered everything very

16         thoroughly.

17         MR. MOST:

18              Thank you.  Mr. Wright, thank

19         you for your time today.

20         THE WITNESS:

21              Thank you.

22      (AT THIS TIME, 2:26 P.M., TESTIMONY WAS

23   CONCLUDED AND THE RECORD WAS CLOSED.)

24                    *   *   *

25

1                C E R T I F I C A T E

2

3          I, CECILIA M. MENESSES, Certified
   Court Reporter, in and for the State of
4  Louisiana, as the officer before whom this
   testimony was taken, do hereby certify that
5  MICHAEL PATRICK WRIGHT  after having been duly
   sworn by me upon authority of R.S. 37:2554,
6  did testify as hereinbefore set forth in the
   foregoing 66 pages; that this testimony was
7  reported by me in the stenotype reporting
   method, was prepared and transcribed by me or
8  under my personal direction and supervision,
   and is a true and correct transcript to the
9  best of my ability and understanding; that the
   transcript has been prepared in compliance
10 with transcript format guidelines required by
   statute or by rules of the board, that I have
11 acted in compliance with the prohibition on
   contractual relationships, as defined by
12 Louisiana Code of Civil Procedure Article 1434
   and in rules and advisory opinions of the
13 board; that I am not related to counsel or to
   the parties herein, nor am I otherwise
14 interested in the outcome of this matter.

15

16      Dated this 16th day of August, 2024

17

18

19

20

21      CECILIA M. MENESSES, CCR
        CCR #84099
        STATE OF LOUISIANA

22

23

24

25

**A**

ability 54:15,17
  67:9
ABOVE-ENTI...
  5:3
accommodate
  7:4
accuracy 66:7
accurate 34:22
acted 67:11
ACTION 1:4
actions 46:3
activated 32:6
actual 18:6 66:6
ADA 12:15
additionally
  26:25 35:23
addressing 31:15
administering
  4:19
advice 12:11 53:5
  53:12,18 64:25
  65:1,5,8
advise 12:19
  13:12 43:9,11
  45:10 54:12
  55:25 59:14
advised 12:1,3,6
  12:8 13:16,21
  36:20 41:22
  42:12 43:8 45:9
  54:20
advising 62:20,23
advisory 67:12
agenda 18:5,23
  19:3 27:1,2
  29:10,14 30:3
  30:15 31:15,18
  31:22 32:3,13
  32:23,23 35:7
  35:24 37:4,7,8
  37:9 38:3,19
  42:14,22 44:15
  44:21 62:17
agree 7:6 10:25
  12:10 14:23
  15:21 17:4 19:4
  19:7 21:21
  24:15 29:4

34:18 52:3 66:6
agreed 4:3 15:6
  19:15 22:2,9,10
  24:2,3,20 26:18
  26:23 31:13
  36:3,12 37:10
  37:11,16 38:25
  43:15 44:13
  45:8 62:21
  64:21
agreement 29:20
  31:19 32:5
agreements 32:6
air 18:22
Airline 1:18
ALLIE 2:8
allow 20:24
allowed 22:4 34:7
allows 27:18
alluded 62:12
aloud 11:16,19
  11:24 12:10,16
  12:20 13:8,13
  13:22 14:7,17
  14:20 15:5 44:5
  46:18
and/or 4:12
annually 9:19
answer 4:13 7:7
  7:12 11:22
  14:10,14 23:20
  25:4,13 31:4,5
  40:13
answered 11:5
  31:1
answers 6:14,20
anticipate 62:8
anybody 58:22
  61:18 64:5,17
anyway 7:8
apologize 22:14
  46:11
apparently 62:12
appealed 16:18
appear 48:13
APPEARANC...
  2:1
appellate 16:16
Approached 60:7

appropriate 26:2
  26:11 33:7
  44:17,19,20,24
approximately
  10:17 34:7,20
argument 26:4
argumentative
  25:12
arrest 45:19
arrested 63:15
Article 23:17
  67:12
aside 59:20
asked 22:24 31:1
  60:22 63:2,11
  63:13
asking 7:11 51:17
asks 11:14 14:4
ASSOCIATES
  2:2
attached 20:7
attendance 10:14
  10:16
attention 6:19
attorney 5:8 8:2
  8:10,23 30:1,4
  32:21 42:10
  43:2,16 44:3
  45:23 51:9,15
  51:23 52:4
auditor 39:14,22
  40:21,23 41:4
August 1:16 41:7
  57:5 67:16
authenticity 66:7
authority 25:1
  67:5
Authorization
  32:15
Avenue 2:3
aware 23:21
  28:17,20 29:1

**B**

B 3:5
back 14:1 17:8
  26:3,11,13
  34:17 48:23
  55:4 65:23
background 9:2

Banner 1:4 2:14
  5:9 24:12,19
  26:21 28:3,8
  34:25 35:9
  36:14 37:3,13
  37:24 38:1,13
  42:2,6,16,20,24
  43:7,11 44:8,11
  46:18 55:6 56:5
  57:22 58:16,18
  58:21 59:7,12
  62:8,19
Banner's 8:11
  12:17,20 13:8
  13:23 29:2
  35:16 36:21,24
  37:2 41:16 44:5
  44:25 47:10
  54:25 56:24
  57:18 58:9
  59:17 63:3,7,10
  64:9
Baptist 1:10,17
  13:19 17:10,15
  19:24 21:25
  23:16,17,21
based 10:18
  12:11 20:11
basis 25:22
Baton 18:8
beginning 9:16
  30:11 41:24
  58:11
believe 6:1 13:10
  13:15 21:11
  22:23 27:2
  34:11,15 35:5
  35:11 37:3,5
  41:14 47:12,18
  49:23 53:25
  55:7 63:8 64:12
  64:16
best 59:1 67:9
better 60:16
beyond 61:10
Biennial 50:17
  51:25 52:10
biopharmaceut...
  9:12

black 48:3,12
blanket 31:19
board 67:10,13
body 16:16,17
book 18:9 62:13
books 51:2,20,23
bottom 20:17
  47:6,19
breach 36:10
break 6:25 7:1
  22:15 24:17
  39:2,16 63:21
  64:7
breaking 24:13
  24:20 26:22
Breaux 25:9
brief 22:18 46:19
  64:3
bringing 40:8
brought 7:16,21
business 6:4
  23:14

**C**

C 67:1,1
call 5:15,16 34:2
  34:3,4
called 34:6
capacities 1:8,9
  8:24
capacity 8:21
case 5:9 7:7 28:6
  63:24 64:6
cases 6:6
CCR 67:20,21
Cecilia 2:19 4:17
  67:3,20
certain 21:12
  43:14 49:17
certification 4:9
Certified 2:19
  4:17 67:3
certify 67:4
chair 5:19 9:14
  10:7,15 16:15
chairing 62:10
Chairman 9:16
  9:16,22 10:4,10
  10:13 15:9,23
  24:24 35:5

42:21 45:24
46:10,14 51:18
57:23 60:15
**Chairman's**
15:17
**chamber** 46:5
**change** 44:16
45:7
**Charles** 2:3
**Charter** 22:12,21
23:17
**chose** 13:7,23
42:1 54:24
58:10
**circulate** 23:7
48:10 50:8
**circulating** 29:9
**circumstance**
36:8 59:4
**Civil** 1:4 4:6
67:12
**clay** 6:8
**clean** 7:14
**close** 34:14
**closed** 34:8,16,20
66:23
**closes** 15:24
**Code** 67:12
**come** 14:1 62:15
65:23
**coming** 55:17
56:20
**comment** 12:17
12:20 13:9,24
14:8,18 15:6,25
16:3,7 17:7,19
17:24 18:1,10
19:10,23 20:12
21:7,24 22:2,4
22:7 24:6,18
27:3,9,12 34:2
34:5,6,8,11,14
34:19 35:2,16
36:21,24 37:2,8
37:9,15 41:17
42:3 44:6,25
47:11 54:25
55:6 56:24 57:3
57:18 58:9

59:18 62:14,24
63:3,7,10 64:10
**commenter** 21:9
**comments** 17:22
40:4
**common** 19:7
25:11
**Company** 25:18
**comparatively**
18:14
**compare** 65:24
**complaint** 28:18
28:23 29:17
30:19 31:12,16
32:11,25 33:5,9
33:15 38:6
**complete** 6:20
**completely** 18:5
18:23
**compliance** 67:9
67:11
**complies** 11:13
**CONCLUDED**
66:23
**confer** 39:3
**confident** 49:4
**confusing** 7:5
**CONLAY** 2:8
**consequences**
43:15 45:5,12
**constitutional**
53:4,8,13,17
**constrain** 54:21
55:11 56:8 62:3
**contained** 38:5
**contents** 54:14
**context** 38:14
54:13 64:14
**contractual**
67:11
**conversation**
53:23 56:12,18
62:2 65:12
**convey** 45:17
**copy** 20:5 48:4,10
49:10
**correct** 9:23
11:25 12:17,23
13:9 15:10,14

15:15 16:18
17:19,22 18:1,6
19:12 28:3,10
28:15 29:7,12
29:17 30:5,9,12
33:6 34:9 35:4
35:10,17 36:15
36:18 38:10
40:13 41:19
42:3,6,9 44:7
44:18 45:2 46:1
46:11,15,20,25
48:14 49:11
50:6 55:20,21
55:23 56:5 63:7
65:12 66:9 67:8
**council** 5:20 8:7
9:5,9,13,14
10:25 13:19
14:21,23 15:10
15:14,20,24
16:14,17,20,23
16:25 17:3,9,10
17:14,15,17
19:2,10,12,24
20:25 22:5
23:23 24:1,6
26:17 27:1,5,8
27:18,21,24
29:7,7,11 31:6
31:8,20,25
41:21 43:9
45:11,24 46:5
46:10,15 50:8
51:18 54:21
55:9,11,13,19
56:2,9,16 60:2
62:4,11
**Council's** 22:22
54:16,18
**counsel** 4:4 12:1
12:13 13:16
29:15,22 30:6,7
31:21 32:4,16
38:20,21 41:22
42:12 43:8
45:10 53:6,19
58:5 59:16
67:13

**counsel's** 12:11
25:19
**court** 1:1 2:19
4:17 5:2 25:8
25:17 67:3
**courtesy** 7:13
**courtroom** 6:15
6:25
**covered** 66:15
**criminal** 14:6,18
14:20 15:5
43:13,15,19,21
44:10,24 46:7
46:13,18 56:7
56:15 59:14
63:18
**criminalize** 42:25
**critical** 28:9
**criticism** 29:2
**curiosity** 52:21

**D**

**D** 3:5
**DA's** 13:19
**Damaj** 25:17
**dated** 52:11
67:16
**day** 34:7,11
57:13 67:16
**day-to-day** 31:7
31:9 32:7
**deal** 63:24
**decide** 16:2 25:1
44:20
**decision** 12:9,12
17:1 36:23
**decision-maker**
15:13,19 17:2
**decisions** 16:12
16:13,15,18,22
17:3
**decorum** 15:18
15:20 16:21
17:2 24:25 25:3
35:6,19,23 36:1
36:7,10 42:23
57:25 58:23
60:8,13 61:7,11
**defend** 33:8,14
**DEFENDANTS**

2:11
**defending** 29:16
**defenses** 33:11
**defer** 59:16
**defined** 67:11
**delegated** 50:9
**depends** 36:8
59:4
**deposition** 1:15
4:4,14 5:23
7:17,24 8:3,11
8:14,17 26:8
65:17
**depositions** 6:11
**describe** 11:16
**designated** 23:7
29:10
**different** 44:12
57:10,13
**differently** 57:17
58:3,13
**direct** 46:3 64:19
**directing** 23:3
**direction** 67:8
**directive** 64:20
**discovery** 7:18
8:12 11:4 20:11
22:25
**discuss** 60:14
**discussed** 61:10
61:16
**discussion** 54:13
54:16,18 56:1,9
62:7,18
**discussions** 58:5
**District** 1:1,2
25:10
**document** 14:2
39:14,20,21
40:3,4,6,9,16
40:17,23,25
41:12 50:12,22
**documentation**
49:19
**documents** 7:17
7:20 23:22
**doing** 5:9,12 15:3
35:8 65:22
**donate** 27:8

dozens 10:24
Dr 18:9,15 62:13
  63:3,7,10
drifting 42:24
duly 5:3 67:5

**E**
E 3:5,5 67:1,1
earlier 24:23
  26:12,14 62:12
Eastern 1:2 25:9
economical 25:21
Edgard 28:14
efficient 60:17
efficiently 60:21
efforts 28:13
either 19:11
elect 9:19,24
elected 9:4,13,16
  10:6,10 15:9
election 10:3
email 2:5,10 48:6
  48:7 50:4 53:24
  54:1,6,14 55:25
  62:6
emailed 47:13
  49:24 61:17
emailing 49:21
emails 61:24
enforcement
  45:22 46:4
escalates 59:5
escort 46:6
ESQ 2:2,7,8
essentially 26:5
ethic 29:23 32:17
  32:19
ethics 28:17,23
  29:16,25 30:9
  30:17,19,23
  31:11,12,16
  32:11,25 33:4,9
  33:15 38:2,2,4
  38:5,9,13,14,15
  38:22,24 59:13
everybody 63:14
evidence 4:15
EXAMINATI...
  3:1 5:5
excellent 7:10

excerpt 47:10
exchange 7:12
exercised 12:8
exhibit 3:7,7,8,8
  3:9 11:2,3 14:3
  19:17 20:6,8
  23:8 29:10
  46:22 48:17
exists 24:14
expect 36:5,11
  49:25
expected 36:17

**F**
F 67:1
fact 19:1
faint 48:17,18
fair 13:24 36:13
fairly 14:22 18:3
falls 32:6
familiar 22:11,20
  22:24
far 31:10 32:4
  54:5
Farmers 25:18
fatigue 6:21
favor 31:22
federal 4:6 25:8
feedback 60:16
  60:23
fees 33:10
felt 44:17
figure 53:3,16
filed 28:17 38:6
filing 4:8
final 17:2
find 40:17
fine 5:21
finish 7:11
firm 29:21 30:5
  32:16
first 5:3 9:15
  34:24
five 64:1
five-minute
  22:15 63:21
floor 64:17,24
follow 15:15
  27:17 37:7
followed 53:5

following 53:18
follows 5:4 27:21
  27:24
followup 66:9
food 7:2
force 6:15
foregoing 67:6
form 4:12 24:22
  25:25 48:6 51:6
formalities 4:8
formally 23:22
format 27:1
  67:10
forth 67:6
forward 26:8
found 20:2
frequent 18:3
front 19:17 21:13
  38:16 46:23
  62:6
full 5:13 6:19
funds 33:8
future 58:18 59:8
  59:13

**G**
gavel 35:13,18
  36:6,11,20,23
  37:1 58:19 59:3
  59:5,6,8,11
gaveled 35:3,9,15
  36:15,18 41:17
  64:10,13
gaveling 36:2
general 29:20
  30:1 31:19
  32:21 41:20
  60:7
generally 17:7
getting 37:3
give 5:13 9:1 20:5
  53:12
given 5:22 6:10
giving 6:11,19
  27:12 40:12
go 11:11 12:9
  17:25 25:7
  46:24 47:2
  58:25 65:23
goes 58:19,22

59:2
going 10:15 11:2
  20:5 23:6 24:22
  26:7 30:7 33:18
  33:20 43:7,17
  52:5 55:4,10
  62:15 63:23
  64:1 65:16,17
  66:1
good 5:7,11,12
  35:21 57:10
  64:2
Government
  1:18 6:4 9:3
  28:9 32:8
Gray 29:22 30:4
  32:16
Green 12:14,15
  12:19 13:12,17
  13:21 47:13
  53:20 54:8,20
  55:3,22 56:12
  56:19,22 57:2
  62:2,18
Green's 64:25
  65:1
grievances 18:22
guidelines 30:2
  32:21 67:10

**H**
H 3:5
Halliburton 25:9
handled 57:18
  60:23
happen 14:22
  36:5
happened 18:25
  33:19
happens 18:13
  19:5
he'll 31:4
head 7:15 18:12
  21:16 28:1
  33:16 37:23
  40:2
healthcare 9:11
heard 27:11
helps 7:14
hereinbefore

67:6
highlight 49:7
  50:3,5
highlighted 13:2
  13:5,11,16
  47:23,25 48:10
  48:14,19,23
  50:4,10
highlighting
  20:16 48:7,12
  49:1,14
Highway 1:18
hiring 29:15 32:1
  32:1 38:14
hit 35:18
hold 63:23 65:17
  66:1
honest 62:10
hope 62:16
Hotard 1:8 2:15
  29:16 30:12,20
  31:13 32:11
  33:1,5 39:4,16
  40:8 59:23,25
  60:6,13,22 63:2
  63:11 64:13,15
  64:21
hours 7:25
human 57:14

**I**
IDAHO 5:2
identified 20:2,6
Identify 11:14
  14:5
IKE 2:7
ike@spearslaw...
  2:10
illness 6:21
imposed 29:24
  32:18
imprisonment
  45:6,15
improve 60:20
improved 60:18
included 50:16
  50:23 52:9,14
  52:24
including 35:11
  45:6,11,15

incorrect 29:19
independent 12:9
INDEX 3:1
indicated 24:24
Indicating 20:19
individual 1:7,9
  8:21 36:8
individuals 11:15
industrial 28:14
initiated 65:11
instance 34:15
  35:22
instructed 11:15
  11:23 12:4,7
instructs 31:3
Insurance 25:18
intentions 40:11
  40:15
interested 67:14
Interrogatory
  11:12,22 14:3
interrupt 58:16
investigation
  63:18
involving 30:23
  31:12
issue 14:1 30:23
  31:11 38:9,25
  59:13,17
issues 30:17
  38:22
item 18:5,24 19:4
  29:14 31:15,18
  31:23 32:3,13
  38:19,20 42:13
  44:15,22 45:11
  54:16 55:17
  56:1
items 22:5 27:2
  35:7 37:8 42:22
  62:17

                J
J 29:14 30:3,12
Jackie 2:14 49:11
  49:21
Jaclyn 1:8 2:15
  29:16 30:12
  31:12 32:11
  33:1,5 40:8

January 9:20,20
  10:3
job 15:17 42:21
  44:19 57:23
John 1:10,17 9:6
  13:19 17:10,14
  19:23 21:25
  23:15,17,21
Joy 1:4 2:14 5:9
  12:16,20 13:8
  13:23 24:12,19
  28:3,8 29:1
  34:25 35:9,16
  36:14,21,24
  37:1,13,24
  38:13 41:16
  42:16,20 54:25
  56:5,23 57:18
  58:9,16,18
  59:17
judge 6:16
jury 6:16

                K
K 3:7 20:6,8
  46:22
kangaroo 20:7
keep 24:25 64:1
Keith 12:13,15
  12:19 13:12,17
  13:21 47:13
  54:20 55:3,22
  56:12,19,22
  57:2 62:2,18
  64:25 65:1
kept 45:19
kind 14:25 16:13
  33:11 43:25
kinds 43:14
knew 31:10,11
  32:14
know 6:24 7:3,3
  18:8 21:14 24:4
  24:8 27:23 28:3
  30:17 31:9,25
  32:10,24 33:12
  33:13 34:10
  37:12 38:16
  43:5 52:23
  53:25 57:10,13

57:16 58:7
  59:22 62:11,14
knowing 33:3
  58:7
knowledge 30:12
  38:8,11 63:19
known 57:15

                L
L 4:1
L(1) 48:22
labeled 11:3
Landeche 2:14
  49:11,22 60:2,8
  61:13
Laplace 1:19 5:2
laptop 41:1
law 4:7 21:12,14
  24:7,10,15
  26:25 29:21
  30:5,17,23
  31:11 32:16
  37:6,14,19 38:9
  38:22,25 39:7
  39:11,13,18,20
  40:21 41:10,19
  42:9,11,25
  45:22 46:3
  50:15 51:1,22
  52:9,13,24 53:3
  53:7,17 59:13
laws 29:23 30:9
  32:17 51:13,19
lawsuit 8:20
lawyer 8:14
  13:17,18 31:3
  32:2 33:8,14
  38:14 59:20
layman's 51:12
leave 46:1
led 9:3
left 41:5,8
legal 12:1,11,13
  13:16 29:21
  32:15 33:10
  41:22 42:12
  43:3,8 45:10
  53:6,18 58:5
  59:16
legislative 39:14

39:22 40:21,23
  41:4
Legislature 52:11
lengthy 40:3
Let's 63:21,25
limit 54:15 55:25
limitation 21:1
limited 66:2,4
limiting 54:15,17
line 44:7
long 16:2
look 19:17,18
  34:12 40:5
  52:17
looked 50:11
  61:20,24
looking 52:20
  60:16,19
looks 48:2
lot 50:7
loud 46:8,14
Louisiana 1:2,19
  2:4,9 4:18 5:2
  24:9 25:10
  26:24 29:24
  32:19 37:6 39:6
  39:13,19 41:4
  41:19 67:4,12
  67:21

                M
M 2:19 4:17 67:3
  67:20
maintain 15:18
  35:6,13,18,23
  35:25 42:23
  57:24 58:23
maintained
  19:23 23:15
Maintaining 36:7
making 25:19
  26:7 64:2
manage 31:6
March 52:11
marked 48:11
matter 5:4 67:14
mean 12:7,13
  30:14 54:13
  56:11 59:22
means 15:12

52:23
medications 6:21
meeting 8:4,5,7
  14:21,23 15:17
  17:3 19:2,5,6
  19:10 20:9
  28:21 29:3,7,11
  33:20 34:1,12
  41:24 47:17
  49:17,18 54:2
  54:10 55:7,17
  56:16 58:11,18
  59:19 60:7,17
  60:23,24 61:14
  61:16,18,22
meetings 10:12
  10:20,25 14:12
  15:14,20 17:17
  18:11 24:1,6,10
  24:15 26:25
  37:6,14,19 39:7
  39:11,13,18,20
  40:21 41:10
  60:20 61:2
  62:11
member 9:9 14:7
  16:23,25 55:19
members 18:4
  27:18 54:21
  55:9,13 56:2
  62:4
members' 55:11
  56:9
Menesses 2:19
  4:17 67:3,20
messages 61:21
  61:21
method 67:7
Michael 1:7,15
  4:4 5:1,14 67:5
middle 20:16,17
minutes 20:2,8
  21:1
month 10:17
morning 5:7
motion 16:22
  20:18,22,24
motions 20:25
moved 20:23

moves 17:1
Moving 26:16

**N**

N 3:5 4:1
name 5:7,13
near 28:13,15
  60:18
necessarily 59:6
need 7:1 16:6
  33:22,23 43:3
  66:8
needed 56:8
never 56:11
  62:11
New 2:4,9
night 30:15
nods 7:15
note 50:15,22
  52:6,12
noted 25:10
notes 8:16
notifying 55:8
November 8:6
  9:22 11:17,20
  14:5,17 28:21
  29:3,6,11 33:19
  33:25 41:17
  47:17 50:20
  53:2 57:11,16
  59:18 60:9 61:4
Number 11:12,23
  14:3 19:19
  23:13
numbers 47:2
nutshell 9:2

**O**

O 4:1
oath 4:19 6:12
  11:8
object 24:22
  25:25
objected 28:12
objection 25:22
  26:10 31:1,4
  51:6 57:20
objections 4:11
  25:7,12,14,15
  25:20 26:7

occasion 14:13
off-topic 18:10
  42:25
office 13:20
  27:22 50:8
officer 45:23 67:4
officers 16:9
  45:25 46:4
offices 1:17
official 1:8,9 8:21
  33:9,15
officiated 4:19
Oh 48:16
okay 7:14,20
  17:25 20:11
  27:4 46:12 47:5
  55:18 57:9
  65:15,20
on-topic 22:1,8
  24:5,11,13,19
  24:20 26:21,22
  37:15
open 16:3 24:9
  24:14 26:25
  34:1,3,19 37:6
  37:14,19 39:7
  39:10,13,17,20
  40:20 41:10
  63:23 65:18
  66:1
opened 34:17
opens 15:24
  34:12
operations 31:7,9
  32:7
opinion 43:3
opinions 67:12
opportunity
  17:18
order 15:16,18
  15:20 16:21
  17:2 27:17 34:3
  35:6,14,19,23
  36:1,7,10 42:23
  57:24 58:23
  60:13 61:6,11
orders 23:14
Orleans 2:4,9
outcome 67:14

outset 55:19
outside 9:8 29:15
  54:1
override 16:21
  17:1
overrule 16:15

**P**

P 3:8 4:1 23:8
P.M 66:22
page 3:2,6 11:7
  11:11 13:4 14:4
  19:19 20:20
  23:13 46:24
  47:1,3
pages 20:17 67:6
paid 30:8 33:14
paper 13:2 39:14
  40:20
papers 50:1,8
paraphrasing
  37:22
Parish 1:10,17
  5:16,18,19 6:3
  8:7 9:3,4,6
  10:25 14:21,22
  15:9,14,20,23
  16:14,17,20,23
  16:25 17:3,8,9
  17:10,13,14,15
  17:17 18:11
  19:1,10,12,24
  21:25 22:8,11
  22:12,21,21
  23:15,16,21,25
  24:6 26:17 27:5
  27:7,20,24 28:9
  28:18,24 29:2,3
  29:6 30:4,16,19
  30:23 31:7,21
  31:25 32:1,7
  33:8,9,10,14,15
  35:12 37:10
  38:9,16 46:4,9
  46:15 51:18
  54:17 55:19
  56:16
Parish's 21:18
  28:13
Parrilloux 20:18

20:23
part 4:15 13:1,7
  13:10,13,15,22
  29:19 35:8 44:4
  45:4 47:21
  50:14,20 51:24
  54:9 62:7 63:11
particular 13:13
  34:15 35:22
particularly
  28:12
parties 67:13
passed 21:4,7
Patrick 1:15 4:5
  5:1,14 67:5
pay 33:8
paying 30:4
pays 33:10
pending 30:18
  38:9
people 16:5 17:25
  18:3,16,21,21
  27:11,15 34:16
  34:21,24 35:20
  35:21 36:1
  62:15
perceive 36:9
perfect 60:19
perfectly 26:1
perform 29:22
  30:8 32:17
persistently 59:7
  59:10
person 11:24
  21:1 27:8,9
  28:8 48:25 49:6
  49:25 50:5 54:3
personal 18:22
  67:8
Phone 2:4,10
phonecall 53:24
phrase 61:10
physical 49:10
piece 13:2
pique 52:21
pit 6:8
place 21:17,19
  24:4 27:23
plaintiff 2:5 5:8

28:5
please 7:2
pledge 34:4
podium 34:13
  49:20
point 13:22 48:9
  63:2 64:15
portion 40:4
  47:23,25
possible 15:2
  65:13
possibly 47:22
potential 38:2
  40:12 45:6,12
potentially 62:3
Poydras 2:8
prayer 34:1,4
precise 57:10
prefer 5:16
preference 5:17
prepare 8:2,16
prepared 67:7,9
preparing 7:24
PRESENT 2:13
preside 10:13
  15:17
presided 10:19
  10:24
President 5:16,18
  28:18,24 29:3
  30:16,19 35:12
  39:4 46:9
prevent 6:19
previous 10:6
previously 55:5
print 49:22,24,25
printed 48:11
printout 48:18
prior 9:5 10:7
  14:17 22:5 26:3
  27:22 55:16,17
prison 43:22
probably 58:4
Procedure 4:6
  67:12
procedures 29:25
  32:19
proceed 15:14
  17:22

**Production** 23:13
**profession** 9:8
**prohibited** 25:8
  25:16
**prohibition**
  67:11
**prompted** 32:25
  56:18
**proper** 60:8
**property** 28:13
**propose** 30:15
**provision** 37:14
  50:15 52:8,9,13
**public** 12:17,20
  13:8,24 14:18
  15:6,25 16:3,6
  17:6,18,19,22
  17:23 18:1,4,10
  19:9,23 20:12
  20:24 21:6,9,24
  22:1,4 24:6,18
  27:3,9,12 34:2
  34:4,6,8,11,14
  34:19 35:2,16
  37:8,15 40:3
  41:16,21 42:2
  44:6,25 47:10
  54:25 55:6
  56:24 57:3,18
  58:9 59:18
  62:14,24 64:9
**public's** 14:7
**Publication**
  19:18
**publish** 22:21
**published** 23:1
  23:22 24:2,2
  39:23
**pulled** 41:1
**punish** 43:14
**purports** 43:14
**purpose** 44:4
  66:2
**purposes** 4:7
  66:4
**put** 43:22 50:1

**Q**

**question** 4:12 7:4
  7:6 8:5 14:8

23:18 24:16,23
26:1 27:10
32:24 51:7
56:10 57:7 61:3
63:13
**questions** 7:11
  33:20,22 40:13
  66:12,14
**quiet** 35:3,10,17
  41:18 58:19
  59:3,8 64:10
**quote** 25:11

**R**

**R** 29:21 30:4
  32:16 67:1
**R.S** 47:7 48:19
  67:5
**range** 35:21
**rate** 29:25 32:20
**reach** 65:2
**reached** 65:10
**read** 8:11,11
  11:15,24 12:2,3
  12:4,7,7,12,16
  12:19,22 13:1,8
  13:13,21,23
  14:6 15:5 18:9
  18:15 28:23
  37:18 41:18,20
  41:23 42:1,2,12
  43:9 44:24 45:4
  45:9,18 46:7,13
  46:14,17,25
  47:9,16,19,21
  48:9 50:19 54:8
  54:20,24 55:5
  55:12,18,23
  57:2 58:8,10
  59:14 62:13
**reading** 4:9 11:19
  12:10 14:17,20
  32:22 44:5,10
  56:15,23
**reads** 32:14
**reason** 15:4 45:4
  65:22
**recall** 6:6 9:15
  10:9 11:19
  12:24 14:11,12

15:2,7 18:10
27:6 28:22,25
30:21 33:17
34:10 37:21
40:3,23 47:15
47:20,21,24
48:6,8 49:3,5,7
49:9,21 50:10
50:11,13,19,21
53:22 54:1,2,4
54:5,6,14 55:24
56:17,21,25
57:4 59:21 61:5
61:6,9,15,19
62:22,23 63:1,3
64:22,23 65:3
**RECESS** 22:18
  64:3
**recollection** 6:9
  13:6 14:16
  36:22 57:1 60:4
  62:5 65:4,9
**reconciling** 66:5
**record** 5:13 26:10
  65:7 66:23
**reelected** 10:5
**refer** 24:9 25:11
  26:3,13,24
  33:23
**referenced** 39:12
  62:13
**references** 39:15
**referred** 23:16
  26:11,13
**referring** 17:11
**regarding** 6:8
  29:25 32:19
**regards** 42:13
  56:14
**regular** 20:3
**regulates** 17:23
**related** 6:3 29:23
  30:8 32:17
  67:13
**relationships**
  67:11
**remember** 15:1
  33:23
**reminded** 39:6

39:19
**reminding** 40:15
**remove** 16:10
**repeat** 24:16
  27:10 56:10
**report** 50:17,24
  51:25 52:1,10
  52:14,16,18,25
**reported** 2:18
  67:7
**Reporter** 2:19
  4:18 67:3
**reporting** 67:7
**represent** 29:15
  48:5
**REPRESENTI...**
  2:5,11
**request** 19:18
  22:25 23:12,13
**requests** 7:19
  8:12 11:4
**require** 16:22
**required** 24:1
  67:10
**requires** 22:12,21
  37:15
**requiring** 24:18
**reserved** 4:14
**residential** 28:14
**respond** 38:22
**response** 20:12
  23:1
**responses** 7:18
**responsibility**
  24:25
**responsive** 42:5
  42:16,19 43:4
**responsiveness**
  4:13
**restrictions** 29:24
  32:18
**restroom** 7:2
**result** 45:7
**retain** 29:21
  31:21 32:15
**retaining** 32:4
  38:20 64:16,24
**reviewed** 11:8
**revised** 41:7,15

**rezone** 28:13
**rhyme** 18:17
**right** 12:25 13:5
  13:12 20:20
  22:6 25:6 26:16
  27:13 31:23
  42:17 43:11,19
  43:23 44:1
  45:13,20 46:5,9
  47:3 48:1 49:18
  50:24 51:3,14
  52:15,25 54:6
  54:22,25 55:13
  57:5,12,15
  58:16 59:23
  61:3 62:4,25
  64:11 66:11
**Robert's** 15:16
  27:17,21,25
**role** 9:3,9 46:8,14
**roll** 34:3
**room** 16:10 45:25
**Rouge** 18:8
**roughly** 5:25
  7:23 10:9,12
  37:21
**rule** 21:10 22:1,9
  24:5,11,13,14
  24:18,20 26:20
  26:22 27:4,7,15
  37:5,10,12,18
**ruled** 51:2
**rules** 4:6 15:16
  17:21 19:9,11
  19:14,23 20:1
  20:12 21:6,18
  22:22,25 23:14
  23:25 26:16
  27:17,21,25
  39:13 67:10,12
**run** 60:16 61:2
**running** 60:20

**S**

**S** 3:9 4:1 48:17
**safe** 21:25
**sales** 9:12
**sat** 46:19
**saw** 34:21
**saying** 32:13 34:8

42:6,16,20 43:5
52:7
**says** 21:23 22:7
27:8,15 30:12
37:21 41:7 47:6
50:15 52:9
**schedule** 10:18
**seal** 41:3
**second** 46:24
**seconded** 20:23
**seconds** 34:7,20
**Secretary** 60:2
**section** 12:22
23:17 41:18
48:13
**see** 11:3,7,12,12
11:14,17 14:2,4
14:8,14 19:19
19:22 20:1,7,15
20:22 21:2,6
23:12,18,20
39:24 40:25
41:3 47:6 48:18
50:14 61:21
**seek** 65:1
**seen** 41:14
**service** 29:21
**services** 29:23
30:8 32:15,17
**session** 20:3
63:23
**set** 67:6
**Seuss** 18:9,15
**Sexton** 29:22
30:5 32:16
**sharply** 28:9
**shorthand** 17:14
**show** 45:5 49:17
62:8
**signed** 11:8
**signing** 4:9
**singing** 18:16
**sisters** 62:8,19
**six** 10:19
**somebody** 19:2
**sorry** 5:19 10:2
**sort** 20:15 50:23
**sought** 65:5,8
**sounds** 12:25

**speak** 19:3 20:24
31:17 34:16,21
34:22,25 40:11
40:14 42:10
45:21 49:16
50:7 62:15
64:17
**speaking** 18:17
19:2 25:7,14,15
26:7 35:15,20
36:2,3,14 38:1
39:12 44:7,21
45:10,18 55:7
55:13,19 63:9
64:14,18
**Spears** 2:7,7,7
7:3 8:23 22:16
23:2 24:21 25:6
26:9 30:25 51:5
57:19 66:3,13
**special** 29:15,22
30:6,7 31:21
32:4,16 38:20
**specific** 14:13
23:4 63:14
**specifically** 12:24
31:17 32:14
42:8 53:20
58:16 60:14,24
64:19,20
**specifics** 53:22
55:24 61:5,15
**speculate** 51:10
51:16,17 52:5
**speech** 43:1,14
44:16,21 45:13
55:12 56:5
**spend** 7:24
**spoken** 61:1
**St** 1:10,17 2:3 9:6
13:19 17:9,14
19:23 21:25
23:15,16,21
**standing** 34:13
**start** 11:2
**started** 38:1
55:13
**state** 4:18 17:23
19:11 21:12,14

21:20,23 22:3,6
24:7 29:24
32:19 67:3,21
**stated** 37:7
**statement** 26:12
26:14 41:20
64:23
**statements** 25:19
46:19
**STATES** 1:1
**stating** 25:21
**statute** 11:16,19
11:24 12:2,16
12:22 13:7,14
13:22 14:6,18
14:20 15:5
17:23 19:11
21:20,23 22:4,7
30:2 32:21
42:13 43:9,13
43:21 44:5,11
44:24 45:5,9
46:13,18,25
47:9 52:2,10
53:21 54:9 55:2
55:5 56:8,15
58:6,8 59:15
62:3,24 65:2
67:10
**statutes** 43:19
44:1 50:16,24
51:25 52:15,18
52:25
**stay** 26:21 35:6
35:24 42:22
44:14
**stenotype** 67:7
**sticking** 38:19
**stipulated** 4:3
**stop** 16:6 26:6
35:20 36:2,12
36:17 42:1 44:6
44:11 45:1 63:3
63:6,10 64:11
64:15,20
**stopped** 63:8
**Street** 2:8
**student** 9:5
**subject** 11:24

25:3 29:23
32:18 45:19
63:17
**Subsection** 48:22
**subsequently**
63:6
**substances** 6:21
**substitute** 46:8
**succinct** 25:20
**sued** 8:20
**Suess** 62:13
**suggest** 40:9 50:5
**suggested** 54:8
55:3,22 56:7
**suggestion** 52:1
52:13
**suggests** 25:13
50:23
**Suite** 2:3,9
**supervision** 67:8
**sure** 6:2,10 18:25
22:17 24:17
27:11 34:18
41:16 42:22
44:4,23 51:12
52:22 55:10
56:11 64:25
**sworn** 5:3 67:5

## T

**T** 3:5 4:1,1 67:1,1
**take** 6:25 7:1
8:16 22:14
44:23 63:21,25
**taken** 1:16 4:5
67:4
**talk** 8:13 17:6,8
18:4 38:13
44:12,14 45:2
61:4,14 64:5
**talked** 59:19,22
60:1,5,12,25
62:1
**talking** 7:13 8:1
8:10 17:9 36:11
36:12,17 38:4
38:24 41:12
44:11 45:1,1,8
45:19
**talks** 20:18 51:24

**target** 63:18
**task** 50:9
**tell** 7:6 16:5 39:5
53:7,20 56:22
64:15
**telling** 57:2
**ten** 10:20
**term** 9:17,18
44:20
**testify** 5:4 40:10
67:6
**testimony** 26:4,5
32:9,12 64:6
66:22 67:4,6
**text** 32:23 61:21
61:21
**texted** 61:17
**thank** 5:12 7:10
23:10 46:17
66:18,18,21
**thereof** 4:15
**thing** 12:23 14:22
14:25
**things** 15:12
18:14 57:11,13
62:9
**think** 15:4 21:19
24:23 37:24
38:12 42:19
51:21 57:8
60:17 62:12
65:25 66:15
**thinking** 56:23
**thoroughly** 66:16
**thought** 42:5,8
42:15 43:4,6
56:20
**three** 21:1
**time** 4:14 7:1,23
14:11,17 27:9
27:12,19 28:20
30:18,24 31:10
33:13 38:10,16
43:10 45:18
59:2,6,11 62:17
64:2 66:19,22
**times** 14:5 15:9
35:3,9,15
**titled** 41:10

**today** 5:10 6:12
  6:12,14,18 7:17
  14:2 17:13 58:8
  64:6 65:16
  66:19
**today's** 8:14,17
  63:22
**told** 39:17 42:15
  43:4 64:11
**top** 18:12 21:16
  28:1 33:16
  37:23 40:2
  47:19 48:19
  50:12,14
**topic** 16:6 18:1,6
  19:3 21:10,24
  35:24 37:4,25
  38:12 42:24
  43:8 44:8,14
  45:3 57:23
  58:19,22,25
  59:2,8,10,12
**totally** 18:22
**transcribed** 67:7
**transcript** 7:14
  65:25 66:5,8
  67:8,9,10
**treat** 58:21,24
**trick** 57:7
**tried** 40:18
**true** 11:9 67:8
**truthful** 6:20
**try** 7:12 18:4,22
  58:22
**trying** 7:7 19:3
  35:5 44:8 55:11
**turn** 35:12 46:22
  63:9 64:18
**two** 6:1,1 34:7,20
**typically** 31:20
  34:12

**U**

**U** 3:8 4:1 29:10
**Uh-huh** 10:23
  13:3 19:8 38:23
**uncommon** 31:8
  33:11,13
**unconstitutional**
  50:16,24 51:3

51:14,20,22,25
  52:2,10,14,18
  52:24
**understand** 6:12
  7:5 8:19 10:5
  17:11 28:5
  32:22 43:18
  51:1,19 52:6,12
**understanding**
  16:19 22:3 44:2
  51:13 67:9
**UNITED** 1:1
**unrelated** 18:23
**unusual** 14:22
  31:20
**upcoming** 54:10
**upper** 41:4,8
**use** 7:1 17:13
  33:7 35:13 59:6
  59:11
**usually** 49:19
  59:5 62:16

**V**

**V** 25:9,17
**vague** 57:20
**varies** 10:18
**verbal** 64:20
**verbally** 25:21
  64:11
**verification** 47:3
**version** 9:2 41:15
  48:7 49:13
**VERSUS** 1:5
**video** 8:4,9 33:21
  33:23 63:25
  65:24 66:6
**violates** 37:5
  43:22
**violating** 37:13
**violation** 25:2
  38:2,2,5,13,15
  42:9,11
**voted** 19:12 22:5
  27:4 31:22 33:3
  37:10

**W**

**wait** 16:2
**waited** 34:19

**waiting** 7:11
  49:19
**waived** 4:10
**Wallace** 28:15
**want** 17:6 43:5
  51:10,16 52:23
**wanted** 34:21
  35:25
**wasn't** 50:4 62:20
**watch** 33:21
**watched** 8:4,9
**water** 7:2
**way** 17:25 18:5
  19:3 35:25
  44:12,12 45:7
  45:20 55:3
  57:17 60:20,23
  61:2 62:14
**ways** 60:19
**we'll** 7:3 14:1
  64:1
**we're** 6:15 60:18
  60:20 63:23
  64:2 65:16,17
  65:22 66:1
**we've** 18:19,19
  60:18 61:1
**website** 39:23
**weeds** 43:17
**went** 26:2
**weren't** 55:2
**West** 1:18
**whacky** 18:10,14
**white** 39:14
  40:20 48:3,12
**William** 2:2 5:7
**williammost@...**
  2:5
**wished** 34:16
**witness** 4:20 7:15
  11:13 23:9
  25:14 51:8
  57:21 65:19
  66:20
**Wolfe** 20:23
**word** 44:23
**worked** 9:6
**worker** 9:6
**wouldn't** 51:22

58:2,15
**Wright** 1:7,16
  4:5 5:1,14,15
  5:16,21,22 7:16
  9:1 22:20 26:3
  26:18 64:5
  66:12,18 67:5
**writing** 19:15
**written** 20:12
  26:17,20 27:24
  32:3

**X**

**X** 3:5,5

**Y**

**yeah** 12:15 20:20
  23:6 32:22
  40:22 57:9
  65:13
**year** 9:17,20,24
  10:3,13,20
**years** 9:7 10:7,9
  10:22 60:18
**yelling** 18:17,19
  18:20
**yield** 27:19

**Z**

**zero** 15:4

**0**

**1**

**11** 3:7
**110** 5:1
**14** 52:11
**1434** 67:12
**16th** 67:16
**1811** 1:18
**1825** 2:9
**1993** 20:3,9

**2**

**2** 11:12,23 19:19
**2:26** 66:22
**20** 3:7
**201** 2:3
**2011** 9:4,14
**2016** 52:11
**2023** 8:6 9:23

11:17,20 14:6
  14:17 28:21
  29:4,6,11 33:25
  41:17 47:17
  50:20 53:3
  57:11,16 59:18
  60:10
**2024** 1:16 9:21
  10:6 41:7 57:5
  67:16
**23** 3:8
**23-CV-7296** 1:5
**2500** 2:3
**27** 20:3
**27th** 20:9
**28** 14:5,17 29:6
  29:11 41:17
  57:16 61:4
**28th** 8:6 11:17,20
  33:19,25 47:17
  59:18 60:10
**29** 3:8

**3**

**3** 23:13,17
**37:2554** 67:5

**4**

**4** 11:11
**42:1114.4** 48:20
**42:1141.4** 47:7
**48** 3:9

**5**

**5** 3:3 14:4 23:13
**5(f)** 23:18
**504** 2:10
**504)509-5023** 2:4
**593-9500** 2:10

**6**

**6** 19:19
**66** 67:6
**6th** 1:16

**7**

**7** 14:3
**70068** 1:19 5:2
**70112** 2:9
**70170** 2:4

| 8 | | | | |
|---|---|---|---|---|
| **84099** 67:21 | | | | |
| **9** | | | | |
| **909** 2:8 | | | | |