UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOY BANNER, Ph.D.

    Plaintiff,

v.                                                                                          Case No. 23-cv-7296

MICHAEL WRIGHT, in his individual and official capacities, JACLYN HOTARD, in her individual and official capacities; and ST. JOHN THE BAPTIST PARISH.

    Defendants

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO QUASH A SUBPOENA TO TESTIFY AT A DEPOSITION
IN A CIVIL ACTION AND TO PRODUCE DOCUMENTS

MAY IT PLEASE THE COURT,

Richard J. Tomeny, Jr., attorney for Darla Gaudet (hereafter "Gaudet") hereby submits this Memorandum of Law in support of the Motion to Quash Subpoena, pursuant to Rule 26(c) and Rule 45(d)(3) of the Federal Rules of Civil Procedure, and respectfully represents:

INTRODUCTION

1. Factual Background

On December 14, 2023, Joy Banner, Ph.D. (hereafter "plaintiff"), filed her original complaint[1] against defendants, St. John the Baptist Parish and Michael Wright asserting claims arising out of a St. John the Baptist Parish Council meeting. Plaintiff alleged that "A government official's threat to prosecute a person for free speech during an open meeting using a long-unconstitutional law is an obvious violation of the U.S. Constitution's First Amendment and Louisiana's Open Meetings Law."[2]

---

[1] Rec.Doc.1
[2] Rec.Doc.1

Plaintiff asserted claims for relief under, "Count One – Violation of the First Amendment to the United States Constitution," "Count Two – Violation of the Louisiana Constitution," and "Count Two – Violation of Louisiana's Open Meetings Law.[3]

On January 4, 2024, plaintiff filed the First Amended Complaint[4] adding Parish Council President, Jaclyn Hotard as a defendant along with the original defendants. In plaintiff's First Amended complaint[5] plaintiff repeated her allegations that "A government official's threat to prosecute a person for free speech during an open meeting using a long-unconstitutional law is an obvious violation of the U.S. Constitution's First Amendment and Louisiana's Open Meetings Law."[6] Plaintiff reasserted the same claims for relief as in her original complaint.[7]

On June 25, 2024, plaintiff filed a Motion to Compel Depositions and Verified Answers to Interrogatories and for Contempt of Subpoena against the defendants.[8] In the Motion to Compel, plaintiff describes her case as:

> "This is a First Amendment case about how St. John the Baptist Parish Council Chair Michael Wright and Parish President Jaclyn Hotard threatened Dr. Banner with arrest under a long- held-unconstitutional statute during her public comment at a parish council meeting."[9]

2. The Deposition Subpoena to Darla Gaudet

On or about July 29, 2024, the plaintiff issued a Subpoena to Testify at a Deposition in A Civil Matter and to Produce Documents to Gaudet, a non-party and a private citizen, requiring Gaudet's appearance for a deposition scheduled to take place on September 24, 2024.  Gaudet was served

---

[3] Rec.Doc.1
[4] Rec.Doc. 7
[5] Rec.Doc.7
[6] Rec.Doc. 7
[7] Rec.Doc. 7
[8] Rec.Doc. 30
[9] Rec.Doc. 30

with the deposition subpoena through undersigned counsel. All counsel consented to scheduling Mrs. Gaudet's deposition for September 24, 2024.[10]

Gaudet, a nonparty, files this Motion to Quash the deposition and the subpoena duces tecum and this supporting Memorandum of Law, pursuant to Rule 26(c) and Rule 45(d)(3) of the Federal Rules of Civil Procedure. For the reasons set forth in her Motion to Quash and the supporting memorandum of law, Gaudet seeks an order from this court quashing her deposition and the subpoena duces tecum seeking records and documents from Gaudet.

## LAW AND ARGUMENT

Federal Rules of Civil Procedure 26(c) and 45(d)(3) support quashing or modifying subpoenas that impose undue burden or violate privileges. Rule 26(c) authorizes the court to issue protective orders to protect parties from "annoyance, embarrassment, oppression, or undue burden or expense," while Rule 45(d)(3)(A) specifically mandates that a court must quash or modify a subpoena if it, among other factors, requires disclosure of privileged or other protected matter and no exception or waiver applies.

A.      Scope of Discovery

Rule 26 authorizes the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

---

[10] A copy of the Subpoena to Testify at a Deposition in a Civil Action and to Produced Documents is attached to the Motion to Quash Subpoenas and marked as "Exhibit A"

Rule 26(b) is not, however, "a license to engage in an unwieldy, burdensome, and speculative fishing expedition." Crosby v. Louisiana Health Service and Indem. Co., 647 F. 3d 258 Court of Appeals, 5th Circuit 2011. While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery. Trident Mgmt. Grp., LLC v. GLF Constr. Corp., No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); see also Crosby, F.3d at 264; Ganpat v. E. Pac. Shipping, PTE, Ltd., No. 18-13556, 611 F.Supp.3d 305, 309-11 (E.D. La. Mar. 4, 2020). Thus, while the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials, Herbert v. Lando, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), discovery does have "`ultimate and necessary boundaries.' Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). When a party issues a subpoena to a non-party, the issuing party must show that the information sought is relevant to the issues in the case, or otherwise have good cause for the subpoena or deposition. Generally, a showing of relevancy and good cause for production has been required in cases where a party seeks production of records from a nonparty. Ouachita National Bank v. Palowsky, 554 So.2d 108 (La.App. 2nd Cir. 1989). Stolzle v. Safety & Systems Assurance Consultants, Inc., 819 So. 2d 287 - La: Supreme Court 2002.

Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1). Rule 26(b)(2)(C)(i)-(iii).

B.        Motion to Quash

Discovery may be obtained from non-parties pursuant to Rule 45 of the Federal Rules of Civil Procedure. A non-party served with a subpoena duces tecum may object by sending written objections to the issuing party within 14 days of service or before the return date, whichever is earlier. Fed. R. Civ. P. 45(d)(2)(B). If the non-party timely provides written objections, it has satisfied its obligations. The serving party may then file a Motion to Compel seeking compliance. Fed. R. Civ. P. 45(d)(2)(B)(i).

Although governed in the first instance by Rule 45, non-party subpoenas are also subject to the parameters of Rule 26. In re Application of Time, Inc., No. 99-2916, 1999 WL 804090, (E.D. La. Oct. 6, 1999) aff'd, 209 F.3d 719 (5th Cir. 2000). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." Hahn v. Hunt, No. 15-2867, 2016 WL 1587405, (E.D. La. Apr. 20, 2016) (citing FED. R. CIV. P. 45(d)(3); 26(c)(1)(D)), (aff'd, No. 15-2867, 2016 WL 6518863 (E.D. La. Nov. 2, 2016). A subpoena may be quashed or modified if the subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3).

The person filing the motion to quash also bears the burden of proof to demonstrate that compliance would impose undue burden or expense. To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party

describes the requested documents; and (6) the burden imposed "Whether a burdensome subpoena is reasonable `must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." Modification of a subpoena is generally preferable to quashing it outright. Crescent City Remodeling V. CMR Construction, 643 F. Supp. 3d 613 - Dist. Court, ED Louisiana 2022.

C.   Grounds for granting the Motion to Quash

Gaudet asserts five separate legal grounds for granting this motion to quash or for protective order, pursuant to Fed.R.Civ.P. 45(d)(3) and 26(b)(l) and (2).

*1.   The Subpoenas Impose an Undue Burden*

Rule 45(d)(3)(A)(iv) requires the court to quash a subpoena that imposes an undue burden. The determination of what constitutes an undue burden is intrinsically linked to the specific circumstances of the case, including the relevance of the requested information, the need of the requesting party, and the potential hardship to the subpoenaed party. In this case, requiring Gaudet, a non-party private citizen, to give deposition testimony arising out of a public meeting and asserting claims against public officials, for violations of plaintiff's First Amendment rights is truly undue burden placed on Gaudet. Gaudet did not attend the meeting in question and did not witness the events complained of in this case. She has no relevant information about these events.  Now, because of the subpoenas, Gaudet has been required to hire counsel to represent her and respond to the subpoenas in a case. Further, if she is required to give deposition testimony, she will incur additional legal fees and expenses to have her legal counsel present with her at a deposition.

In addition, given the nature of the case here (a First Amendment Case), the plaintiff does not need Gaudet's testimony or Gaudet's documents for this litigation. Under the circumstances of this case, it is truly an undue burden to place on Gaudet.

2. *Lack of Relevance and Good Cause*

Plaintiff has failed to show relevancy and good cause for the deposition of Gaudet, a non-party, or production of the Gaudet' documents. The information sought from Gaudet's deposition testimony or from the Gaudet's documents is not relevant to the plaintiff's claims in this case, and outside the scope of permissible discovery from a non-party under Rule 26(b)(1). The information sought must be "relevant to any party's claim or defense." In this case, Plaintiff asserts multiple claims against the defendant, public officials for (1) violations of her First Amendment right of free speech under the United States Constitution," (2) "Violation of the Louisiana Constitution," and (3) "Violation of Louisiana's Open Meetings Law. These violations are alleged to have occurred at a public meeting of the St. John the Baptist Parish Council, held on November 28, 2023. Gaudet is (1) a non-party, (2) a private citizen (3) not a public official, (4) not employed by the Parish of St. John the Baptist, (5) does not now, nor ever has, held public office, (6) is not involved with the administration of the St. John the Baptist Parish government, and, (8) did not attend the meeting where the events occurred. Any testimony by Gaudet would be totally irrelevant to the claims in this case.

3. *The discovery sought from Gaudet is purely and simply a "fishing expedition."*

The deposition testimony of Gaudet and the subpoena duces tecum to Gaudet refer to matters that are unrelated to the plaintiff's claims and causes of action in this case, specifically, *Banner's Opposition to the Greenfield Property Development*, and *Banner's Ethics Complaint against Jaclyn Hotard*. As explained below, the subpoenas to Gaudet are nothing more than a fishing

expedition by the plaintiff, Dr. Banner, and therefore good grounds exist to grant the motion to quash. Gaudet's only connection here is that Gaudet is Jaclyn Hotard's mother-in-law, a fact that is no way relevant to the First Amendment claims in this case against the defendant public officials, including Jaclyn Hotard. The deposition of Gaudet would serve no purpose in this litigation except to intimidate and harass Jaclyn Hotard, and her family members, including Gaudet.

      a. *<u>Banner's Opposition to the Greenfield Property Development</u>*.

Dr. Banner has been a vocal opponent of a proposed land development project on land located in St. John the Baptist Parish and owned by Greenfield. Louisiana LLC. (hereafter "Greenfield") The land development by Greenfield is commonly referred to as the "Greenfield Grain Export Facility Project". The subpoenas issued to Gaudet are seeking evidence from Gaudet about, a private company, Gaumet Holdings LLC ("Gaumet"). Gaumet owns several parcels of land near the site of the proposed Greenfield development. In its filing with the Louisiana Secretary of State, Gaumet lists Gaudet as the "managing member. By use of the subpoenas in this case, *("all documents reflecting the ownership of Gaumet Holdings, LLC" and - All correspondence (mail, email, text messages, etc.) and documents regarding (1) Greenfield Louisiana LLC or (2) Greenfield's proposed grain terminal in St. John the Baptist Parish.")* Dr. Banner is seeking evidence from Gaudet to support her opposition to a proposed development of Greenfield property in St. John the Baptist Parish, that is adjacent to Dr. Banner's property.[11]

On August 7, 2024, Greenfield announced that it is abandoning its plans to develop the property as a grain elevator.[12] Consequently even if Dr. Banner could somehow (even remotely)

---

[11] Rec.Doc. 7. Paragraph 31. "But now, once again, an out-of-state corporation is seeking to develop an industrial facility on the property adjacent to the Banner's home."
[12] "WALLACE, La. (Associated Press) — Residents of a historic Black community in Louisiana who've spent years fighting against a massive grain export facility set to be built on the grounds where their enslaved ancestors once lived appear to have finally halted the project.
A representative from the company, Greenfield Louisiana LLC, announced during a public hearing on Monday evening that the company is "ceasing all plans" to construct a grain export facility in the middle of the town of Wallace in St. John the Baptist Parish.
After a moment, opponents of the project broke out in cheers, and began clapping and hugging each other.

connect her opposition to the proposed land development project by Greenfield to her claims in this case, now Dr. Banner's opposition to Greenfield development is a moot point. Gaudet's deposition and production of her confidential documents are clearly outside of the scope of permissible discovery in this case.

Dr. Banner's opposition to the "proposed development" is not an issue, claim, or cause of action asserted in this case. Additionally, none of Gaudet's business records or Gaudet's testimony concerning these records, is even remotely relevant to the plaintiff's claims in this case.

Moreover, it appears that plaintiff has already obtained information about Gaudet and her companies from the public records (an alternative source), thereby making the deposition of Gaudet and the production of documents unnecessary.[13] Accordingly, the subpoenas to Gaudet are also cumulative. Therefore, good grounds exist to quash the subpoena issued to Gaudet.

   b. _Banner's Ethics Complaint against Jaclyn Hotard_

Although unrelated to the claims in this case, the original complaint and the First Amended complaint[14] refer to the "ethics complaint" that Dr. Banner filed against Jaclyn Hotard in or around December 2023.[15] Ethics claims are prosecuted by the Commission on Ethics, not the person filing the "ethics complaint."[16]. It appears that the information and evidence that Dr. Banner is seeking

---

"I'm still obviously in disbelief — I can't believe this is happening, but I'm ecstatic and all praise to the ancestors," said Joy Banner, a Wallace resident and one of the most vocal opponents of the project. She and her sister, Jo, founded The Descendants Project to preserve the community's heritage." Biz NEW ORLEANS, August 7, 2024.

[13] Rec.Doc. 7. Paragraph 35, Footnote 1. "President Hotard's mother-in-law is also President and CEO, as well as manager, agent, and officer of St. John Fleeting, LLC. She is also the owner St. John Fleeting, LLC. See M/V Edith Pearl, LLC v. St. John Fleeting, Inc., 12-cv-02962, R. Doc. 156 at fn. 2 (E.D. La. June 14, 2014). That company which describes itself as "a multifunctional inland marine and transportation company" and one of the "top companies for transportation, stevedoring, barge repair, and dock transfers." Given Ms. Gaudet's interests in a business that provides services to heavy industry, including grain terminals, there is also a concern that she would stand to benefit financially through St. John Fleeting if the property were rezoned."

[14] Rec.Doc. 7. Paragraph's 31 to 38.

[15] Rec.Doc. 7. Paragraph 46 "Dr. Banner was familiar with Ms. Hotard's ethics charges because Dr. Banner was the one who filed them."

[16] Art. 10 § 21 of the 1974 Louisiana Constitution directed the legislature to enact a code of ethics for all officials and employees of the state and its political subdivisions and to create one or more boards to administer the code. Pursuant to this mandate, the legislature enacted the Code of Ethics for Governmental Employees. La.R.S. 42:1101 et seq. The objective of the Code of Ethics is to prevent public officers and employees from becoming involved in conflicts of interest, viz., situations which would require and official to serve two masters, presenting a _potential,_ rather than an _actuality of wrongdoing_ Additionally, the Code empowers the Commission on Ethics to determine when a conflict of interest exists and to impose certain sanctions. La.R.S. 42:1134-35, 1141, and 1151-56. Glazer v. Com. on Ethics, 431 So.2d 752 (La.1983).

from Gaudet with this subpoena is related to the ethics complaint against Mrs. Hotard, not the First Amendment claims asserted in this case. The plaintiff has failed to show how Gaudet's testimony or Gaudet records business records are relevant to the constitutional claims in this case. This court and the federal rules of discovery should not be used as a forum to gather information or evidence to support a separate complaint (the Ethics Complaint) filed in another forum (the Louisiana Ethics Board) having jurisdiction over that complaint.

4. *The Subpoenas Seek Confidential and Proprietary Information*

The subpoena seeks information that is confidential and proprietary, necessitating protection under Rule 26(c). The subpoenaed materials *include - "all documents reflecting the ownership of Gaumet Holdings, LLC" and - All correspondence (mail, email, text messages, etc.) and documents regarding (1) Greenfield Louisiana LLC or (2) Greenfield's proposed grain terminal in St. John the Baptist Parish."* The documents subpoenaed from Gaudet, seeking records of the ownership interest in Gaumet Holdings LLC are private and confidential in nature and protected from disclosure by the Fourth Amendment and the Louisiana Constitution.

Courts recognize the need to guard sensitive business information, including financial records from being disclosed to competitors or to the public.

In, US v. Amodeo, 71 F. 3d 1044 - Court of Appeals, 2nd Circuit 1995, the Court addressed the right of privacy during litigation and discovery. The Court stated:

> "As the Supreme Court noted in Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to serve as reservoirs of libelous statements for press consumption." Id. at 598, 98 S.Ct. at 1312 (internal quotation marks and citation omitted) (collecting cases); see also Stevenson v. News Syndicate Co., 276 A.D. 614, 96 N.Y.S.2d 751, aff'd, 302 N.Y. 81, 96 N.E.2d 187 (2d Dep't 1950).[1]
>
> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally

considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public. In Joy v. North, for example, the involvement of a publicly owned company and management's relationship to the public shareholders weighed in favor of unsealing a special litigation committee's report. See 692 F.2d at 894.

The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information. Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts, and personal vendettas similarly need not be aided. The court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified. Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." Amodeo, 71 F. 3d 1044; United States v. AVENATTI, Dist. Court, SD New York 2020.

In Parish Nat. Bank v. Lane, 397 So. 2d 1282 - La: Supreme Court 1981, the Louisiana Supreme Court described the right of privacy under the Louisiana Constitution:

"The right to privacy, first defined by Samuel Warren and Louis Brandeis as the "right to be let alone,"[7] has been recognized by our courts since 1905. In that year, this court declared that: "Everyone who does not violate the law can insist upon being let 1286*1286 alone (the right of privacy) ...." Itzkovitch v. Whitaker, 115 La. 479, 482, 39 So. 499, 500 (1905). Later decisions held that violation of the right was a tort under C.C. 2315. Pack v. Wise, 155 So.2d 909 (La. App.3d Cir. 1963); Quina v. Robert's, 16 So.2d 558 (La. App.Orl.1944). The Louisiana Constitution adopted in 1974 specifically states that: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy...." La.Const. of 1974, Art. 1, § 5. The right of privacy protects varied interests from invasion. Among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs." Parish Nat. Bank v. Lane, 397 So. 2d 1282 - La: Supreme Court 1981.

In Stolzle v. Safety & Systems Assurance Consultants, Inc., 819 So. 2d 287 - La: Supreme Court 2002, the Louisiana Supreme Court recognized the right to privacy in litigated matters. The court required a showing of relevancy and good cause in cases where a party seeks production of

records (credit card receipts, telephone bills, cellular telephone bills, fax charges, travel ledgers, gas receipts, car rental receipts, airline receipts, lodging receipts, etc.) from a non-party.

> "Likewise, we have concerns about Mr. Stolzle's requests for other personal information, such as credit card receipts, telephone bills, cellular telephone bills, fax charges, travel ledgers, gas receipts, car rental receipts, airline receipts, lodging receipts, etc., from Patricia Jacob and Ronald Jacob, neither of whom are parties to this litigation. Generally, a showing of relevancy and good cause for production has been required in cases where a party seeks production of records from a nonparty. See Ouachita National Bank v. Palowsky,554 So.2d 108 (La.App. 2nd Cir. 1989). Stolzle v. Safety & Systems Assurance Consultants, Inc., 819 So. 2d 287 - La: Supreme Court 2002"

Similarly, the right to privacy applies to bank and financial records of a non-party. Ouachita National Bank v. Palowsky,554 So.2d 108 (La.App. 2nd Cir. 1989). In the Ouachita case the non-party, whose bank records were subpoenaed, objected and argued:

> "Waguespack also argues that the subpoena violates his constitutional right to privacy, and that his constitutional right should prevail over the defendant's right to "fish around in banking records of unrelated third parties."

The Court in Ouachita agreed with the non-party, quashed the subpoena duces tecum and stated:

> "The writ applicants argue persuasively that this statute presumes that the requested documents must be "relevant to the subject matter involved in the pending action." LSA-C.C.P. Art. 1422. Although the scope of discovery is to be liberally construed, it is not limitless. We cannot give credence to the notion that the legislature, through its passage of R.S. 6:333, intended to allow any person to indiscriminately foray through another individual's banking records upon a whim.
>
> Additionally, we observe that LSA-C.C. P. Art. 1354, which deals with the issuance of a subpoena duces tecum, has been interpreted as being limited to information that is relevant or necessary to the case before the court. Bank of New Orleans and Trust Company v. Reed Printing and Custom Graphics, Ltd., 399 So.2d 1260 (La.App. 4th Cir.1981).
>
> While liberal pretrial discovery should be encouraged, it must not be conducted without regard to the rights of the party against whom it is invoked to be protected against undue hardship, loss, damage, annoyance, or embarrassment. LSA-C.C.P.

Art. 1426; Albright v. Prentice, 425 So.2d 336 (La.App. 3rd Cir.1982), writ denied 430 So.2d 84 (La.1983).

In several cases, the courts have acknowledged the importance of the confidentiality of personal financial information. Such personal financial information is not to be made public except to satisfy important rights of others or an overriding public interest in the disclosure. See Plaquemines Parish Commission Council v. Delta Development Company, Inc., 472 So.2d 560 (La.1985)."

Likewise, in this case, the subpoenas issued by the plaintiff to Gaudet violate her constitutional right to privacy. The information sought from Gaudet about her financial affairs and private businesses are not relevant to the plaintiff's claims. The subpoenas are nothing more than a "fishing expedition" designed to gather information to support the plaintiff's opposition to the Greenfield project in St. John the Baptist Parish.

5.  *Gaudet's Cell Phone Records are Private and Protected from disclosure.*

The Courts also protect emails, texts and phone conversations from disclosure, finding that the persons using these methods of communication has a reasonable expectation of privacy which is protected by the Fourth Amendment to the US Constitution and the Louisiana Constitution. Numerous cases have held that cell phone records are private and protected from disclosure. See, e.g., Savoie v. Inland Dredging Co., LLC, No. 20-2294, 2022 WL 1238678,  (E.D. La. Apr. 27, 2022); Scott v. Complete Logistical Servs., LLC, No. 19-11672, 2021 WL 2402161,  (E.D. La. June 11, 2021) (citations omitted), aff'd, No. 19-11672, 2021 WL 3013111 (E.D. La. July 16, 2021); Howard v. Seadrill Americas, Inc., No. 15-2441, 2016 WL 7012275,  (E.D. La. Dec. 1, 2016) (citation omitted); Winter v. Bisso Marine Co., No. 13-5191, 2014 WL 3778833,  (E.D. La. July 29, 2014) (collecting cases); see also Blackmon v. Bracken Constr. Co., No. 18-142, 2019 WL 5866070,  (M.D. La. Nov. 8, 2019) (citations omitted).

## CONCLUSION

The information sought from Gaudet about her financial affairs and private businesses are not relevant to the plaintiff's claims. The subpoena is nothing more than a "fishing expedition" designed to gather information to support the plaintiff's opposition to the Greenfield project in St. John the Baptist Parish, and her ethics complaint against Jaclyn Hotard. The information sought for Gaudet is private and confidential and therefore the subpoena violates her constitutional right to privacy.

For the reasons outlined above Darla Gaudet respectfully requests that this Court grant the motion to quash the Subpoena to Testify at a Deposition in A Civil Matter and to Produce Documents, protecting her rights against undue burden, privileged disclosure, and protecting her constitutional right to privacy and unnecessary exposure of her personal, private and confidential information.

Respectfully Submitted,

*Richard J Tomeny Jr.*

Richard J. Tomeny, Jr., La. Bar No. 12852
Two United Plaza
8550 United Plaza Boulevard, Suite 702
Baton Rouge, Louisiana, 70809
Telephone: (225) 334-8080
Fax: (225) 758-9050
Email:  rtomeny@tomenylaw.com.

**Attorney for Darla Gaudet**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Support of the Motion to Quash Subpoenas filed herein has been served upon all known counsel of record via email, facsimile or United States Mail, properly addressed and postage prepaid, this 5th day September 2024.

*Richard J Tomeny Jr.*

Richard J. Tomeny, Jr., La. Bar No. 12852