UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOY BANNER, Ph.D. | * CIVIL ACTION NO. 23-cv-7296 |
| | * |
| VERSUS | * SECTION : G |
| | * |
| MICHAEL WRIGHT, in his individual and | * JUDGE: NANNETTE JOLIVETTE BROWN |
| personal capacities, JACLYN HOTARD, in | * |
| her individual and personal capacities, and ST. | * MAGISTRATE JUDGE: DIVISION 4 |
| JOHN THE BAPTIST PARISH | * |
| | KAREN WELLS ROBY |

## DEFENDANT'S, ST. JOHN THE BAPTSIT PARISH, OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT comes Defendant, ST. JOHN THE BAPTSIT PARISH, through undersigned counsel, who respectfully answers the Interrogatories and Requests for Production of Documents propounded by Petitioner, JOY BANNER, Ph.D., as follows.

### GENERAL OBJECTIONS

1.    By responding to these Interrogatories and Requests for Production of Documents, Defendant does not waive its rights to object to the use of the discovery responses at any time or on any ground in this or any other proceeding.  In addition, discovery in this action is still proceeding and; therefore, Defendant reserves the right to amend any response in light of later discovered facts or evidence in support of his position at trial.

2.    Defendant objects to these Interrogatories and Requests for Production of Documents to the extent they seek information that is neither relevant to the subject matter of the pending action nor appear reasonably calculated to lead to the discovery of admissible evidence.

3.      By responding to these Interrogatories and Requests for Production of Documents, Defendant does not in any way adopt Plaintiff's purported definitions of words and phrases contained in Plaintiff's requests.  Defendant objects to those definitions to the extent they are inconsistent with either (a) the definitions set forth by Defendants in its answers, or (b) the ordinary and customary meaning of such words and phrases.  Similarly, Defendant objects to Plaintiff's purported definitions to the extent they attempt to impose upon Defendants any obligations broader than, or inconsistent with, applicable discovery rules or common law.

4.      Defendant objects to these Interrogatories and Requests for Production of Documents to the extent they seek information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.  Any inadvertent disclosure of material protected by any such applicable privilege or discovery immunity is not intended to, and should not be construed to constitute, a waiver of such privilege or immunity.

5.      Defendant objects to these Interrogatories and Requests for Production of Documents insofar as they seek discovery of any material that constitutes the mental impressions, conclusions, opinions or legal theories of Defendant's counsel.

6.      Defendant objects to these Interrogatories and Requests for Production of Documents insofar as they seek discovery of opinions of law which are beyond the scope of permissible discovery.

7.      Defendant does not hereby admit, adopt or acquiesce in any factual or legal contention, presumption, assertion or characterization contained in these Interrogatories and Requests for Production of Documents.

8.      Defendant objects to these Interrogatories and Requests for Production of Documents to the extent they purport to impose obligations beyond those imposed by the Louisiana Rules of Civil Procedure and the Local Rules of this Court.

9.      Defendant objects to these Interrogatories and Requests for Production of Documents to the extent they are unreasonably cumulative or duplicative, vague, ambiguous, overly broad, unduly burdensome, or do not specify the information sought with sufficient particularity.

10.     Defendant objects to these Interrogatories and Requests for Production of Documents to the extent they seek information that is publicly available, or that may be obtained from another source that is more convenient, less burdensome, or less expensive, or that is solely in the possession, custody, or control of third-parties.

11.     Defendant submits these answers without conceding the relevancy or materiality of the subject matter of any Request for Admission, and without prejudice to Defendant's right to object to further discovery or to object to the admissibility of any answer at the time of hearing or trial.

12.     Defendant reserves the right to amend or supplement these answers and objections.

13.     These general objections are incorporated by reference into each specific answer made by Defendants to Plaintiff's Interrogatories and Requests for Production of Documents.

However, notwithstanding all of the above objections, and without waiving any and/or all of the above stated objections, and; further, subject to any and all of the above stated objections, Defendant answers as follows:

## ANSWERS TO INTERROGATORIES

### INTERROGATORY No. 1:

If you dispute any portion of the attached transcript, identify the portion and what you believe is inaccurate.

### RESPONSE TO INTERROGATORY NO. 1:

SJBP objects to the term "transcript" as vague, ambiguous, and non-descriptive. SJBP further answers that any and all formal minutes taken by the Council secretary are in accordance with Roberts Rules Of Order, are proper and accurately reflected in said minutes, and are published by SJBP accordingly.

### INTERROGATORY No. 2:

Identify all rules for public comment maintained by the Parish.

### RESPONSE TO INTERROGATORY NO. 2:

The rules of public comment which have been promulgated by the SJBP council for over 30 years have been that each person engaged in public comment is limited to a three (3) minute time period and that each person must stay on the specific agenda item as published.

### INTERROGATORY No. 3:

Identify all rules and order of business maintained by the Parish of St. John the Baptist, as referred to in the Parish of St. John the Baptist Charter Article 3, Section A, 5(f).

### RESPONSE TO INTERROGATORY NO. 3:

SJBP objects to Interrogatory No. 3 as Article 3, Section A, together with 5(f) and each and every other provision therein are codified, publicly published, and are their own best evidence of their provisions, terms, conditions, and limitations therein. SJBP further answers herein to please see response to Interrogatory No. 2 above.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

All correspondence with any member of the St. John the Baptist Parish Council regarding Joy Banner and/or the Descendants Project.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

SJBP has no independent knowledge of any such correspondence at this time.

### REQUEST FOR PRODUCTION NO. 2:

All rules for public comment maintained by the Parish of St. John the Baptist.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Please see attached minutes of the official proceedings of the May 27, 1993 SJBP Council meeting.

### REQUEST FOR PRODUCTION NO. 3:

All rules and order of business maintained by the Parish of St. John the Baptist, as referred to in the Parish of St. John the Baptist Charter Article 3, Section A, 5(f).

### RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

SJBP is not aware of any such formally published documents by the council.

### REQUEST FOR PRODUCTION NO. 4:

All other rules of order applicable to St. John the Baptist Parish Council meetings. (E.g., Robert's Rules, etc.).

### RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

SJBP is not aware of any such formally published documents by the council.

Defendant reserves the right to supplement and/or amend the above and foregoing and further, to add additional evidence should it become available, and will provide same to all parties and this Honorable Court in a timely fashion.

Respectfully submitted:

ACCARDO LAW FIRM, L.L.C.
325 Belle Terre Blvd., Suite A
LaPlace, Louisiana   70068
(985) 359-4300    Fax: (985) 359-4303

SAMUEL J. ACCARDO, JR. (#24007)
accardo@rtconline.com
Attorneys for Defendants:
 St. John The Baptist Parish, Councilman
Michael Wright, and Parish President Jaclyn
Hotard and St. John the Baptist Parish

## CERTIFICATE OF SERVICE

I, hereby certify that I have served the above and foregoing documents by facsimile transmission, hand delivery, Certified Mail Return Receipt Requested, UPS/Federal Express, Electronic Mail, and/or by U.S. Mail, First Class, postage prepaid, properly addressed to all counsel of record on this **26**th day of **MARCH, 2024**.

SAMUEL J. ACCARDO, JR

OFFICIAL PROCEEDINGS OF THE ST. JOHN THE BAPTIST PARISH COUNCIL
STATE OF LOUISIANA, TAKEN AT A FINANCE/REGULAR MEETING
HELD ON MAY 27, 1993.

The Council of the Parish of St. John the Baptist, State of Louisiana, met in REGULAR SESSION in the Council Chambers of the Percy D. Hebert Building, LaPlace, Louisiana, on Thursday, May 27, 1993 at 6:30 PM.

ROLL CALL

Present: Councilmen: Terry, Wolfe, Lewis, Duhon, Perrilloux, McTopy, Haydel, Maggiore, Lee

Absent: None

Legal Counsel, Charles Lorio was present.

CALL FOR AND OPEN BIDS - Safety Shoes

MOTION  Mr. Haydel moved and Mr Lee. seconded the motion to authorize the opening of bids received for Safety Shoes. Vote on motion was unanimously approved.

Pat McTopy, CAO proceeded to open the bids received from:

| COMPANY | AMOUNT |
|---------|--------|
| LeHigh Safety Shoe Co. | $50 per pair for exception some of 6" and 8" shoes lo-quarter oxfords 6" work shoe 8" work shoe women's shoes |
| Industrial Safety Shoe Co. | lo-quarter oxfords 6" work shoe 8" work shoe women's shoes various prices were bidded |

MOTION  Mr. Lee moved and Mr. McTopy seconded the motion to take the bids under advisement. Vote on motion was unanimously approved.

FINANCIAL UPDATE

Claudette Raphael, Financial Advisor called the Council's attention to the Parish Transportation Fund; interest rate stated in booklet are incorrect and should be $460; this will not affect any other figures.

Councilman Lee inquired about the undercollaterlized fund; Ms. Raphael stated some of the bonds for the Baker Heritage Project, on the day the bonds were sold the Bank contacted to ask if funds were going to remain in the account; funds were used to pay off the loan and the money was in the bank for 2 days which showed that the funds were undercollaterlized; money is no longer there.

1

CORRESPONDENCE

Councilman Duhon stated he spoke with a representative of Kansas City Southern to inform him that work to repair the track on W. 19th will start Monday coming; tracks will be out for an indefinite period of time.

Councilman Maggiore commented on a letter from the FAA regarding an inspection for discrepancies and found that St. John Airport had none; commended on a job well done.

LETTER OF NO OBJECTION - C.H. Fenstermaker representing McGowan Working Partners - Proposed Salt Water Disposal Wells

MOTION  Mr. Haydel moved and Mr. Duhon seconded the motion to issue a Letter Of No Objection to C.H. Fenstermaker representing McGowan Working Partners for proposed salt water disposal wells - Sections 63 & 64, T11S-R7E - Bonnet Carre Oil & Gas Field - Activity consists of drilling 3 salt water disposal wells. Vote on motion was unanimously approved.

Appointment of Official Journal

MOTION  Mr. McTopy moved and Mr. Haydel seconded the motion to reappoint the L'Observateur as Official Journal for the parish. Vote on motion was unanimously approved.

COMMITTEE REPORTS

Councilman Duhon requested Administration to contact Mr. Thomas with the K-Mart Corporation to set up a meeting to arrive a decision on the project.

APPROVAL OF MINUTES

Mr. Wolfe moved and Mr. Perrilloux seconded the motion to accept the minutes of May 13, 1993 with the exclusion of the motion made to hire Acadian Ambulance Service; reason being, we put the cart before the horse by hiring a service without the means of funding; need to get the funding mechanism first before hiring the firm.

Charles Lorio stated the motion is in order; the minutes reflect what happened at the meeting. Councilman Wolfe stated the Council can make a motion to exclude any motion. Mr. Lorio stated the Council needs to vote on the motion.

The vote on Mr. Wolfe's motion failed with 2 YEAS (Wolfe, Perrilloux) and 7 NAYS.

Mr. Lee moved and Mr. Haydel seconded the motion to approve the minutes of May 13, 1993 Regular Meeting as presented. Vote on motion was approved with 7 YEAS and 2 NAYS (Wolfe, Perrilloux).

Mr. Duhon moved and Mr. Maggiore seconded the motion to approve the minutes of May 17, 1993 Special Meeting. Vote on motion was unanimously approved.

Mr. Duhon moved and Mr. McTopy seconded the motion to approve the minutes of May 19, 1993 Special Meeting. Vote on motion was unanimously approved.

COUNCIL BRIEFS

Chairman Terry stated that 2 Councilmen will be out of town for the June 10th meeting and requested the Council change the meeting to June 2nd.

MOTION  Mr. Lee moved and Mr. Duhon seconded the motion to move the June 10th Council Meeting to Wednesday, June 2nd. Vote on motion was unanimously approved.

Councilman Wolfe stated he did not appreciate some of the things said and printed about him regarding the amublance situation.

Councilman McTopy commented on the flooding problems yesterday; requested administration to get the permits to have the canals dredged to alleviate the flooding in his and other districts.

Councilman Maggiore stated some people in D-4 received notices regarding dredging projects in the parish; requested Mr. Madere look into the situation and place item on next agenda. Councilman Maggiore stated he attended the Fly-In; recommend the people attend the next Fly-In; it was a great event and should strive to make the event bigger in support of the airport.

Councilman Duhon stated he spoke with the Executive Director of Operation Mainstream; Councilman Wolfe and Councilman Duhon have been working on the Literacy Program; building was found for the program being the old Utilities Bldg. on E. 1th and River Road; volunteers will clean and bring the building up to par to hold the sessions.

Councilman Haydel briefed the Council on the Horse Show held this past weekend for the Humane Society; fun day for all who attended; Councilman McTopy was Emcee for that day; Humane Society is planning another show this fall.

PRESIDENT'S REMARKS

Councilman Wolfe stated that at one Council Meeting he requested that the Department Heads give oral as well as the written reports; at this meeting Councilman Maggiore reported on the activity at the airport and is very important to have oral and written reports; asked where was Mr. Arceneaux or the Assistant Director St. Amant. Mr. Labat stated Mr. Arceneaux is in Lafayette for a 5 day Seminar involving Economic Development; stated he don't know where Mr. St. Amant is; if the Council votes to have the Directors give an oral presentation, then he will abide by that decision.

Pat McTopy - Change Order #3 Baker Heritage Project

Pat McTopy requested item be placed on June 2, 1993 meeting.

C.J. Savoie, Consultant Engineer for the Parish briefed the Council on various parish projects stating quotes are being solicited for the gas line in Wallace near the new bridge site; performing a drainage study in the Riverland Estates area for renovations; research on speed bumps show no official design, parish will have to create its own design to get the speed bumps installed.

OLD BUSINESS

93-37 The parish authorized to sell for fair market value per appraisal, a servitude herein described: A certain piece or portion of ground, together with all the rights, ways, privileges, servitudes appertaining, situated in the State of LA, in the parish of St. John the Baptist situated in what is known as the Village of Garyville..a 20' X 110.03' strip of land commonly known as part of 3rd Street, Garyville.

Councilman Duhon removed 93-37 from agenda indefinitely; will re-introduce the ordinance if needed.

MOTION Mr. Duhon moved and Mr. Lewis seconded the motion to take Ordinance 93-44 off the table for Council consideration. Vote on motion was unanimously approved.

Councilman McTopy questioned that if a change order is required if a certain amount of time to present said change order will be presented to the Council for informational purposes. President Labat suggested we add into it that we give an accountability in the next presidential report.

93-44 (Public hearing held) An ordinance authorizing the Parish President to execute contract change orders not exceeding $5,000.00.

Isiah Jones stated his concern regarding authorizing the Parish President to execute change orders not exceeding $5,000.00, as he views this as a monarchy; $5,000 may appear to be a small sum but if frequently spent then this could turn into a tremendous sum; if an emergency arises that affects the welfare of the people of the parish, then the president should get the okay from the Council, but it shouldn't be an open-faced type thing.

Councilman Maggiore stated his concerns are somewhat like Mr. Jones that why the Council requested a report on change orders to keep an eye on this.

Councilman McTopy moved to amend to include in the ordinance to include the verbage "as soon as possible thereafter administration will give an accounting and explanation to the governing authority". Mr. Lee seconded the motion.

Councilman Wolfe requested to explain to the Council to explain to the Council and public why we need to support this ordinance and amendment.

President Labat stated this was asked for him to present this ordinance not to be bogged down with some of the smaller obligation we have; really doesn't make any difference to him which way you vote; trying to expedite some of the meetings to make the flow of business go a little smoother; at one meeting we spent half-hour to 45 minutes discussing a change order in the amount of $1,400 and another couple of them about $1,500 to $1,600.

Councilman Wolfe stated that comes with the territory; it is part of our responsibility; would not like to see from $1,000 to $5,000; if we think we are having problems now, just let it get to $5,000 and we will see how much problems we will have; need to keep it as is; not justifiable to speed up the meetings and not be able to ask questions.

Councilman Perrilloux stated he agreed with Mr. Wolfe; we were elected to take care of business; $5,000 could be broken down up to $50,000 and we will not have say-so; a report given to us will not give us the power if we disagree with the change order after the fact.

Legal Counsel Charles Lorio stated to remedy that an ordinance will have to be introduced to remove the President's authority.

Councilman Haydel stated if it doesn't make any difference to the Parish President, don't see any reason why we should act on it; requested to pass on the ordinance and proceed with the meeting.

Councilman McTopy removed his motion; Mr. Lee removed his second.

MOTION Mr. Perrilloux moved and Mr. Wolfe seconded the motion to REJECT Ordinance 93-44.  Vote on motion passed unanimously.

93-46 An ordinance authorizing the Parish President to execute a lease agreement between St. John the Baptist Parish and the River Road Historical                                                                              Society.


93-46 was removed from the agenda.

Haston Lewis - Willowbend Sewerage Project

Above item was removed from the agenda.

Dale Wolfe - Bobby & Dave Baker - discussion regarding Baker Heritage

Above item was removed from agenda.

Dale Wolfe/Whitney Joseph - Discussion on Ambulance Service

Whitney Joseph questioned that since the people of the parish have to pay for 911 and the ambulance carrier that picks us up, do we have an option to call an ambulance carrier of our choice?

Bertram Madere, Director of Public Safety stated when the call comes into 911 the call automatically goes to Acadian in Lafayette as the carrier and Lafayette will send a unit to the scene and keep the caller on the phone giving them medical advice until the unit arrives; if the person does not use the 911 System, they may call any ambulance system of their choosing; 911 releases the liability of the parish and put it on the carrier.

Whitney Joseph stated that as citizen paying for 911 I have no option to call an ambulance service of my choice when I call 911?  President Labat stated you can any service you wish but when you dial 911 that will be the carrier; we are having to guarantee that an ambulance will be at your house within 15 minutes but you have the opportunity to call any service you want; 911 is strictly for emergencies.

Dale Wolfe/Whitney Joseph - Street addresses

Mr. Joseph stated there are 3 streets in Reserve, Ethel Robinson, Edward Hall and Chad Baker Streets and requested South Central Planning to remove the numbers and replace with the dedicated names listed as approved by the Council; the changes came with the numbers instead of

5

the names and was very upset with the gentleman who stated it was easier to find the numbers; requested the Council to make sure the street names appears on the address log.

<u>MOTION</u>  Mr. Perrilloux moved and Mr. Wolfe seconded the motion to direct administration to contact Leesa Foreman of South Central Planning to have the 3 streets in Reserve changed to the dedicated street names as stated by Mr. Whitney Joseph (Ethel Robinson, Edward Hall and Chad Baker). Vote on motion was unanimously approved.

<u>Dale Wolfe/Whitney Joseph – audience participation at meetings following a motion</u>

Mr. Joseph requested the Council give the audience an opportunity to participate in discussion when motions are offered at Council Meetings such as the School Board is doing; at the last Council meeting one individual wanted to speak but was not allowed to; it is very important for the audience to express themselves; requested the Council make an motion allowing the public to speak after motions are offered; if the public is not allowed to speak then something is wrong. Councilman McTopy stated we have asked for comments from the audience, when a hand is raised we recognized them; you have keyed-in on one item and trying to indicate that the Council denies public input. Councilman Wolfe stated we used to.

Mr. Perrilloux requested Legal Counsel to research the Home Rule Charter to determine if the Council is in violation of allowing the public to speak when motions are offered.

Legal Counsel Charles Lorio stated the Council determines it own rules as to how meetings are run; if you pass a motion to that affect, the Council has to abide by it.

Chairman Terry stated he has been requested by some of the Council to streamline the meetings as we have been have long agendas, but whatever the majority rules he will abide by it. Councilman Maggiore stated he likes the idea of a spokesperson to address the Council representing a group. Councilman Perrilloux stated the 3 minute limit is a formality but anyone in the audience can give up his time to a speaker. Councilman Haydel stated we have done that in the past, if you allow any one in the audience to keep passing on their 3 minutes don't see why we are adding a limit at all. Mr. Joseph stated we just had a public hearing on a couple of ordinances and asked for public input, very few people had anything to say, but on certain issues that is controversial you will have some people to come here for input. Councilman McTopie stated there is no way we want to stymie public input if it is there and needs to happen; this vote will show that we will encourage the input; Mr. Terry as Chairman, if things get out of hand five votes can always get it back in hand and secondly we will not be able to allow anyone to filibuster us pass midnight as it will make our meeting cease and end.

<u>MOTION</u>  Mr. Perrilloux moved and Mr. Wolfe seconded the motion to allow the public to speak when motions are made by the Council, with a limitation of 3 minutes per person.

Mr. McTopy called a Question on the motion. Mr. Lee seconded the Question. Vote on motion passed with 7 YEAS and 2 NAYS (Wolfe, Perrilloux).

The vote on Mr. Perrilloux's motion passed and passed with 8 YEAS and 1 NAY (Maggiore).

Councilman Maggiore stated he likes the idea of the discretion of the Chair.

Councilman Wolfe stated he would like to clear the air regarding some of the things in the papers and to the public of how he reacted; thinks he is being fair but think he is doing the right thing; we used to allow public input until the meeting in Edgard as there was a hidden agenda; it was purposely placed on the westbank thinking people will have trouble crossing the river; it was purposely done in a hurry because of 911; 911 isn't going to make people get in accidents or take ill; 911 the way it is now is going to put money in people's pocket and take it to Lafayette; asked at one of the Ambulance Committee meetings to take some money to subsidize Baloney to put an ambulance on the westbank but no one make an offer; we subsidized one of our department in order not to increase fees for sewerage; EDC money is always used for whatever purpose we deem necessary; this man has been in this parish for 35 years; administration stated he called Baloney first for a proposal for $150,000 then called Acadian second; 2 years from now you will not being paying $1.00 on your bill, it will probably double-up, plus the cost to ride; it will be hard for me to sit here especially when we talk about shopping locally, hiring locally, etc., 35 years we will wash it down the tube; if we start giving Baloney $200,000 a year he is going to be right where Acadian is; advocating that as people black and white alike need to stick together and make some changes; if you have to remove me, come and get me, I will sacrifice myself to remove all that is up here tonight; had a meeting with Sheriff Johnson regarding the dog at the past meeting to find out who recommended it; was told it was only a drug sniffing dog and not an attack dog; in 1993 these folks are going to bring a dog here to control the public and the dog is here now; all who know me white or black know I am fair; we can't compare BFI with Trosclair nor Acadian with Baloney but was turned down because of some little thing; but there were other contractors that did not have all their things together and we held up until they did.

Councilman Haydel stated the Baloney family had a private meeting with some of us and requested 30 days to get their contract in order and agreed to that so that is why the meeting date fell on the westbank. Councilman Wolfe stated the Chairman of the Ambulance Committee was not notified of the agenda item prior to placing on the agenda. Chairman Terry stated for the record the Ambulance Committee was disbaned.

Mr. Baloney asked to address the Council; Mr. Wolfe stated a motion was passed to allow public input.

MOTION   Mr. Perrilloux moved and Mr. Wolfe seconded the motion to allow the public to speak on ambulance service.

Councilman Maggiore stated as a new councilman he felt like he is in a position here; did a lot of work; made himself available to the people; the people of District 4 expressed their concerns to him; passed out all information and proposals submitted; spent a lot of time and effort; serve two publics; message was clear by the people; see no reason to change anything he has done; feel the council should have handled this when 911 was proposed.

Vote on motion passed with 6 YEAS and 3 NAYS (Maggiore, Haydel, Lee).

7

Addressing the Council on ambulance service were Joe Clement, Katherine Ceasar, Isiah Jones, Mary Alexis, Steven Perrilloux, Willie Smith, Paul Millet, Whitney Joseph, Ed Morris, Chris Icon, Earl Baloney, Alexander White and Craig Gros.

Councilman Haydel stated he tried his hardest to help Mr. Baloney; met with him and his family with Mr. Terry, Mr. Wolfe and Legal Counsel to put a package together; Acadian was suppose to be present at that meeting; at 3PM he received a call from Earl Baloney's brother stating they did not want Acadian there; told Mr. Baloney how can we work something out if all parties were not there; when we left the meeting, told the Baloney family he (Haydel) could not find 6 votes on the Council for you, that he (Baloney) would have to find those votes. Councilman McTopy stated there is miscommunication and misinformation; message is not getting out to the public the way it is suppose to get out; all needs to understand this is not a spur of the moment decision, has been going on for years; we heard tonight that we took care of another local business regarding garbage; that was as a result of a public bid and we have a vested interest to get the most out of the taxpayers money; Trosclair's bid came in lowest of all bids received so much so that the fees for garbage collection was reduced to the customers; it is a lawful requirement that bids be presented in a timely manner; we are guilty of leaning over backwards to help a local company; it was a business decision, we matched up the proposals; we have a liability issue as of next month 911 will be on service and calls that will come into 911 with no ambulances we are at risk regarding liability; don't believe in government subsidizing private industry.

Councilman Wolfe stated there is a distinct difference between quotes and public bids; there are certain areas we can take quotes on and areas we must take bids; Trosclair was not lowest bid on the whole package; we say this has been going on for 4 years, we say we don't believe in taking public monies and subsidizing anything but yet we are responsible for the health and welfare of our public; EDC according to the tax that was passed states if monies aren't used for industry, we can use it for anything we deem necessary; if 9 of us really care about the westbank, 4 years ago or 8 years ago we could have taken some money, because of our responsibility for the health and welfare of our people, for the westbank; we have not heard a negative thing about Baloney until $200,000 came into the picture; we could have said Baloney can do the job and give him that $200,000 to help him, give him a chance.

8

MAY 27, 1993.
PART TWO

Joel McTopy/Steve Lee - EDC/Socials

Councilman McTopy stated the EDC committee members are concerned that administration is downplaying their part with the EDC Socials; requested administration to allow the EDC committee to continue in their role with the EDC Socials; President Labat stated he will put someone working with administration on the EDC Socials. Councilman Haydel stated he spoke with Mr. Labat and assured him he will have Mr. St. Amant work a lot closer with the EDC Committee.

Paul Millet stated he has held many EDC Functions and critizied the Council for not attending the socials. Councilman McTopy stated some of the Council work shiftwork and other reasoning for not attending socials; Chairman Terry stated the attendance of the Council is optional and not required and many socials conflict with other appointments;

Joel McTopy...reaffirm declaration of emergency of gas line at the Wallace bridge site 5/17/93

MOTION  Mr. McTopy moved and Mr. Lewis seconded the motion to reaffirm the motion passed at the 5/17/93 meeting, to declare that an emergency exists with the relocation of the gas line at the Wallace Bridge site. Vote on motion was unanimously approved.

MOTION  Mr. McTopy moved and Mr. Lewis seconded the motion to reaffirm and authorize the work to relocate the gas line. Vote on motion was unanimously approved.

NEW BUSINESS

Kevin Duhon - Overtime and Stand-by duties

Councilman Duhon stated he spoke with Mr. Labat about this matter; think we are having a problem with overttime and standby; figures seem to be too high for the amount of work; over 80% of the calls are for one department; if we are going to spend this kind of money for a standby program, and with the budget cut proposed by the State, we are going to have serious problems.

Item will be placed on next meeting agenda.

Dale Wolfe - parish vehicles

Above item was removed from agenda.

INTRODUCTION OF ORDINANCES

93-52 An ordinance providing for the incurring of debt and issuance of $350,000 of Certificates of Indebtedness Series 1993, was introduced by Mr. Pat McTopy.

93-53 An ordinance amending Ordinance 92-106 relative to the operating budget of the Reserve Volunteer Fire Department, was introduced by Mr. Pat McTopy.

93-54 An ordinance for the plan of survey and resubdivision of all of Parcel W of Belle Point Sub. No. 2 and an undesignated portion of Belle Point Subdivision into Parcels W-1 and W-2, was introduced by Mr. Pat McTopy.

EXECUTIVE SESSION

Med-X of Florida vs St. John the Baptist Parish et al, 40th JDC #26927, Division "C-A", State of LA, US District Court, Eastern Division of LA, #91-2398, Section L, Magistrate i

St. John Citizens for Environmental Justice vs the Parish of St. John the Baptist and the St. John the Baptist Parish Council, 40th JDC, #29271, Division "A"

St. John the Baptist Parish vs NY & Associates Inc. and C&S Consultants Inc. a joint venture #29707, Division "B", 40th JDC, petition for declaratory judgement

Legal Counsel Charles Lorio stated there is no new information to warrant an Executive Session.

ADJOURNMENT

At 9:25 PM, Mr. McTopy moved and Mr. Perrilloux seconded the motion to adjourn. The vote in favor of the motion was unanimously approved with no absences.

CHAIRMAN

SECRETARY

## RS 42:1141.4

NOTE: This provision of law was included in the Unconstitutional Statutes Biennial Report to the Legislature, dated March 14, 2016.

§1141.4. Notice and procedure

A.(1) Any public servant or other person who is to be the subject of a public or private hearing and the complainant shall be given written notification of the pending charges and of the time and place such hearing is to be held. Such notification shall not be less than sixty days prior to the date set for the hearing. Upon the request of a public servant or other person charged, the hearing may be held sooner.

(2) The Ethics Adjudicatory Board shall give public notice of its hearings that are conducted pursuant to R.S. 42:1141.5. The Ethics Adjudicatory Board shall mail a copy of the notice to the address where the subject of the hearing was served with the charges pending before the board or an address provided by the respondent or the respondent's attorney of record after service was made.

B.(1) For purposes of an investigation or a hearing, the Board of Ethics, any panel thereof, or its staff, or the Ethics Adjudicatory Board, or any panel thereof, may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any records which a board or panel deems relevant or material to the investigation or hearing. Such attendance of witnesses and the production of any such records may be required at any place designated by a board or panel at no cost to the public servant or other person charged as permitted by the rules of the board requiring such attendance or production or the board of the panel requiring such attendance or production.

(2) The Board of Ethics and the Ethics Adjudicatory Board shall adopt rules providing for discovery consistent with Chapter 3 of Title III of Book II of the Code of Civil Procedure, to the extent and in the manner appropriate to its proceedings.

C. In case of contumacy or refusal to obey a subpoena issued to any public servant or other person, any district court of this state within the jurisdiction of which the inquiry is carried on, or within which said public servant or other person is found, resides, or transacts business, upon application by the Board of Ethics or the Ethics Adjudicatory Board shall have jurisdiction to issue to such public servant or other person an order requiring him to appear before the board or its staff and to produce evidence, if so ordered, or to give testimony concerning the matter under consideration. Any failure to obey such order of the court may be deemed by the court as to be contempt of the court.

D.(1) If any public employee willfully refuses or fails to appear before the Board of Ethics or the Ethics Adjudicatory Board or any court authorized to conduct any hearing or inquiry pertaining to the provisions of this Chapter, or having appeared refuses to testify or answer any question specifically, directly, and narrowly relating to the performance of his official duties on the ground that his testimony or answers would tend to incriminate him, or refuses to accept immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, such action shall be grounds for dismissal or forfeiture of his office or position, and if dismissed, he shall not be eligible thereafter for employment by the governmental entity for a period of five years, unless such reemployment is authorized by a majority vote of the membership of the Board of Ethics.

(2) If any elected official willfully refuses or fails to appear before the Board of Ethics or the Ethics Adjudicatory Board or any court authorized to conduct any hearing or inquiry pertaining to the provisions of this Chapter or having appeared refuses to testify or answer any question specifically, directly, and narrowly relating to the performance of his official duties on the ground that his testimony or answers would tend to incriminate him, or refuses to accept immunity from prosecution on account of any matter about which he may be asked to testify at such hearing or inquiry, such action shall be grounds for the imposition of penalties as provided in R.S. 42:1153.

E. Any public servant or other person who is the subject of any hearing may have legal counsel, cross-examine witnesses, call witnesses, and present evidence in his own behalf. If a person receives an advisory opinion from the Board of Ethics and he acts based upon such advisory opinion, the advisory opinion shall be admissible as evidence at the hearing.

F. Any public servant or other person who is the subject of any investigation shall be advised of his right to have an attorney present.

G. Any witness may be accompanied by counsel at investigations or hearings, which counsel may advise the witness of his rights, subject to reasonable limitations to prevent obstruction of or interference with the orderly conduct of the investigation or hearing. His counsel may also submit proposed questions to be asked for his client.

H. Any witness at any investigation or hearing, subject to rules and regulations promulgated by the Board of Ethics or Ethics Adjudicatory Board, shall be entitled to a copy of his testimony when it becomes important and relevant in a criminal proceeding or subsequent investigation or hearing, provided that the furnishing of such copy will not prejudice the public safety or security.

I. In making any official determination of whether any provision of law within the jurisdiction of the Board of Ethics has been violated, the Ethics Adjudicatory Board may consider testimony pursuant to the Louisiana Code of Evidence.

J. Any public servant or other person who is aggrieved by any action taken by a panel of the Board of Ethics may request a review of the panel's decision by the full Board of Ethics within thirty days of the panel's decision. The Board of Ethics shall determine whether or not to review the panel's action within thirty days of the request for review.

K. The records of the Board of Ethics prepared or obtained in connection with investigations and private hearings conducted by the Board of Ethics, including all extracts of minutes and votes to take any matter under consideration in connection therewith, shall be deemed confidential and privileged, except that such records shall be available to each member of the Board of Ethics upon request. Except as provided in this Section and in R.S. 42:1111(E)(2)(c), all records, including the results and conclusions reached in connection with any investigation or hearing, shall be public.

L.(1) It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars or imprisonment for not more than one year, or both, for any member of the Board of Ethics, its executive secretary, other employee, or any other person, other than the person who is subject to the investigation or complaint, to make public the testimony taken at a private investigation or private hearing of the Board of Ethics or to make any public statement or give out any information concerning a private investigation or private hearing of the Board of Ethics without the written request of the public servant or other person investigated.

(2) Upon receipt of a written request by the public servant or person charged, the Board of Ethics shall furnish the requestor with a certified copy of the entire proceedings of a private hearing, including a verbatim transcript of all testimony considered at such hearing, and make public the findings of any private investigation or hearing in connection with the charges.

M. The provisions of the Open Meetings Law shall not apply to investigations and private hearings conducted by the Board of Ethics.

Acts 2012, No. 608, §1, eff. June 7, 2012; Acts 2023, No. 146, §1.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOY BANNER, Ph.D.<br>    Plaintiff | * | |
| | * | |
| | * | Case No. 23-cv-7296 |
| VERSUS | * | |
| | * | Judge Nannette J. Brown |
| | * | |
| MICHAEL WRIGHT, in his individual and | * | Magistrate Judge Karen W. |
| official capacities, JACLYN HOTARD, in her | * | Roby |
| individual and official capacities; and | * | |
| ST. JOHN THE BAPTIST PARISH; | * | |
|     Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFICATION

I am the elected Parish President for St. John the Baptist Parish and authorized to verify these discovery responses on behalf of St. John the Baptist Parish in my official capacity.

I do hereby certify, under penalty of perjury, that the foregoing Objections and Responses to Plaintiff's Interrogatories and Requests for Production of Documents are true and correct to the best of my knowledge and belief.

_____  7/23/2024
Jaclyn Hotard            Date