UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOY BANNER, Ph.D.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7296** |
| **MICHAEL WRIGHT, individually and in official capacity, et al.** | **SECTION: "G"(4)** |

### Memorandum in Support of Motion to Exclude Defendants' Attorney-Expert Under *Daubert*

This case is about violations of Plaintiff Joy Banner's freedom of speech during a St. John the Baptist Parish Council meeting.[1] Her rights were violated when Council Chair Wright and Parish President Hotard stopped Banner from speaking during public comment and threatened her with criminal sanctions based on the content of her speech. The law they threatened her with had been long ruled unconstitutional – both facially and as applied.

To defend themselves in this suit, Defendants hired a range of lawyers. Defendants designated one of them, Richard Stanley, to be an expert witness. Mr. Stanley is a partner at the law firm of Stanley Reuter Alford Owen Munson & Paul, LLC, a firm that has represented the Parish. Defendants asked him to issue an opinion about "whether a person could reasonably believe that a statute, which in one district court case was held to be unconstitutional 'as applied,' was still valid in other applications."[2] Mr. Stanley opined that yes, a person could.[3]

Mr. Stanley's testimony should be excluded from trial for three reasons. First, because his opinion is a *legal* opinion – and explaining the law to the jury is the province of the judge, not an expert witness. His opinions are so fundamentally legal in nature that Defendants' counsel copied them verbatim and pasted them into a legal brief in this case.[4] Because Mr. Stanley's opinions are legal conclusions, *Daubert* and the Federal Rules of Evidence forbid them from trial.

---

[1] Rec. Doc. 25 (Order Denying Motion to Dismiss) at 1.
[2] Ex. A (Stanley Expert Report) at ¶ 11.
[3] *Id.*
[4] *Compare* Exhibit B (Stanley Dep.) at ¶¶ 13-17 *with* R. Doc. 61 at pp. 4-6.

1

Second, Mr. Stanley's testimony should be excluded because it is not relevant. Defendants offer him to testify about how to interpret a statute that has been found unconstitutional "as applied." But a section of this Court determined that the statute in question here is unconstitutional <u>both</u> "as applied" <u>and</u> also on its face.[5] Mr. Stanley's opinions are further irrelevant because they are about the reasonableness of a "person who is either advised by a lawyer or who has the equivalent information as if they were advised by a lawyer."[6] But this Court has already excluded any advice-of-counsel defense.[7]

And finally, Mr. Stanley's testimony should be excluded because when confronted with the facts of this case, Mr. Stanley conceded that he could only opine as to "what a reasonable <u>lawyer</u> would do" and not a reasonable <u>non</u>-lawyer.[8] He further conceded he could not "opine about what a reasonable person would do in Michael Wright's [or] … Jaclyn Hotard's situation."[9] Thus, Mr. Stanley cannot opine about the very thing Defendants intend to offer him for – the reasonableness of two non-lawyers' actions. The motion should be granted.

## I. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[10] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may provide expert testimony when "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[11] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

---

[5] *King v. Caldwell ex rel. La.*, AG, 21 F. Supp. 3d 651, 656 (E.D. La. 2014)
[6] Ex. B at 20:11-13.
[7] R. Doc. 53.
[8] Ex. B at 45:23-25 ("A. I don't know. I don't know that I can opine what a reasonable person would have done. I know what a reasonable lawyer would do.") (emphasis added).
[9] *Id*. at 46:1-13.
[10] See *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc*., 200 F.3d 358, 371 (5th Cir. 2000).
[11] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[12]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., the Supreme Court explained that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[13] The court's gatekeeping function mostly involves a two-part inquiry.

First, the court must determine whether the expert testimony is reliable, which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[14] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[15] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[16] In analyzing reliability, *Daubert* instructs courts to consider (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[17]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[18] The second inquiry primarily analyzes whether the expert testimony is relevant.[19]

---

[12] Fed. R. Evid. 702.
[13] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).
[14] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998) (*citing In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717 (3d Cir. 1994)).
[15] *Seatrax*, 200 F.3d at 372.
[16] *See Daubert*, 509 U.S. at 590.
[17] *Id*. at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 141. The overarching goal "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.
[18] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.
[19] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[20] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[21] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[22] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[23]

## II. Discussion

**A. This Court should exclude Attorney Richard Stanley's testimony because he offers only legal analysis and conclusions, which the federal rules forbid at a jury trial.**

Being "a lawyer does not disqualify one as an expert witness. Lawyers may testify as to legal matters when those matters involve questions of fact."[24] But "Rule 704 does not allow an expert witness to give legal conclusions."[25] That is because each "courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.'"[26] Because judges, not expert witnesses, charge the jury on the law, expert testimony concerning legal standards is generally inadmissible as unhelpful to the jury.[27] And so "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law."[28]

---

[20] *See Daubert*, 509 U.S. at 596.
[21] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."
[22] *Daubert*, 509 U.S. at 596 (*citing Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).
[23] *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty*., 80 F.3d 1074, 1077 (5th Cir.1996), *quoting Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).
[24] *Askanase v. Fatjo*, 130 F.3d 657, 672-673 (5th Cir. 1997)), *citing Huddleston v. Herman & MacLean*, 640 F.2d 534, 552 (5th Cir. Unit A March 1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375 (1983) (lawyer could testify that language in a boilerplate contract was standard because the effect of the language went to scienter).
[25] *Kellar v. Union Pac. R.R. Co*., 2024 U.S. Dist. LEXIS 197879, at *5-6 (E.D. La. Oct. 31, 2024), *citing Owen v. Kerr-McGee Corp*., 698 F.2d 236, 239-40 (5th Cir. 1983).
[26] *Lamar Adver. Co. v. Zurich Am. Ins. Co.,* 533 F. Supp. 3d 332, 341 (M.D. La. 2021), *quoting Burkhart v. Wash. Metro. Area Transit Auth*., 112 F.3d 1207, 1213, 324 U.S. App. D.C. 241 (D.C. Cir. 1997). *See also Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.1988) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.").
[27] *Kellar, supra,* citing Fed. R. Evid. 702(a).
[28] *Manton v. Strain*, 2010 U.S. Dist. LEXIS 164716, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010), *quoting United States v. Milton,* 555 F.2d 1198, 1203 (5th Cir. 1977). *See also Texaco Trading & Transp.,*

4

In *Estate of Sowell v. United States*, the Fifth Circuit explained why an expert witnesses may not testify to legal conclusions, holding that "if an expert were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position."[29] In *Estate of Sowell*, the Fifth Circuit held that the estate's expert could not opine on whether the estate was "acting reasonably" in failing to pay estate taxes in a timely manner; this was a question reserved to the finder of fact.[30] Similarly, in *Askanase v. Fatjo*, the Fifth Circuit upheld the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case had breached their fiduciary duties.[31] In sum, as Defendant's expert put it: "Legal conclusions are for the Court."[32]

Here, Defendants have hired an attorney, Richard Stanley, as their expert. Mr. Stanley is a partner at the firm Stanley Reuter Alford Owen Munson & Paul. He believes his firm has represented Defendant St. John the Baptist Parish, and he believes he may have personally represented the Parish.[33] He provides informal advice to Defendants' counsel, Ike Spears.[34]

Mr. Stanley identifies himself as an expert in "constitutional law, commercial litigation," and "legal ethics."[35] He concedes he is not an expert in psychology, sociology, cognition, political science, or any other scientific field.[36] Nor does he consider himself to be an "expert in how nonlawyers understand the law."[37] To the extent that there is any scientific body of research about

---

*Inc. v. T.L. James, Inc*., No. 98-1473, 2003 U.S. Dist. LEXIS 27817, at *3 (E.D. La. Mar. 12, 2003) ("the court will not allow any expert witness to give legal conclusions").
[29] 198 F.3d 169, 172 (1999) (*quoting Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997)).
[30] *Id*. at 171–72.
[31] *See Askanase,* 130 F.3d at 699.
[32] Ex. B (Stanley Dep.) at 12:10-13 ("Q. You agree that no witness, including experts, can testify as to legal conclusions, correct? A. Legal conclusions are for the Court, yes.").
[33] *Id*. at 8 ("Q. You think your firm has represented St. John the Baptist Parish in the past, and you may have, but you're not sure? A. Correct.").
[34] *Id*. at 9:4-6.
[35] *Id.* at 9:14-15, 10:22-25.
[36] *Id.* at 9:11-21.
[37] *Id.* at 11:21-23 ("Q. Do you consider yourself to be an expert in how nonlawyers understand the law? A. I don't think anyone is an expert in how others understand things.").

how nonlawyers understand the law, Mr. Stanley is not familiar with it.[38]

Defendants asked him to opine about "whether a person could reasonably believe that a statute, which in one district court case was held to be unconstitutional 'as applied,' was still valid in other applications."[39] Mr. Stanley's methodology for reaching an opinion was as follows:

- He "looked at the facts";
- He researched the "law and [his] notes";
- He thought "about what a reasonable lawyer would advise given this scenario"; and
- He inferred "that that would also suggest the reasonableness of a nonlawyer."[40]

This methodology – researching the law and applying it to facts – is the methodology of legal analysis. It is therefore prohibited from trial because "testimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case."[41] Mr. Stanley's expert report is closely akin to the one excluded in *Klein v. Justin D. Heideman LLC*, 574 F. Supp. 3d 1006, 1011 (D. Utah 2021), in which an expert "quotes statutory language, cites to and discusses the analysis and holdings of case law, and then he applies this legal authority to selected facts and evidence to reach legal conclusions." Here, Mr. Stanley's report similarly cites to the statute,[42] cites to and discusses the analysis and holdings of case law,[43]

---

[38] *Id.* at 11:25-12:10 ("Q. But there is a scientific body of research about how nonlawyers understand the law, correct? A. I wouldn't know that, and I wouldn't necessarily consider that a discipline. . . . Q. Are you familiar with it? A. No.").

[39] Ex. B at 12:25-13:5.

[40] *Id.* at 18:14-20 ("Q. So if I'm understanding you correctly, you looked at the facts, you researched the law and your notes, you thought about what a reasonable lawyer would advise given this scenario, and then from that you infer that that would also suggest the reasonableness of a nonlawyer; is that correct? A. Yeah. That's pretty much correct.").

Notably, Mr. Stanley did not interview the defendants or the plaintiff in this case, (Ex. B at 25:19-25) nor did he review their deposition transcripts (*id.* at 26:22-24). He concedes that he does not "know anything about how Mr. Wright or Ms. Hotard actually thought about this situation." *Id.* at 26:25-27:3 ("Q. So you don't know anything about how Mr. Wright or Ms. Hotard actually thought about this situation that's the basis of this case, correct? A. That's fair to say.").

[41] *Klein v. Justin D. Heideman LLC*, 574 F. Supp. 3d 1006, 1011 (D. Utah 2021) (granting motion to exclude expert who offered legal analysis).

[42] Ex. A (Stanley Expert Report) at ¶¶ 12-17.

[43] *Id.* at ¶ 16.

and then applies this legal authority to selected facts and evidence to reach legal conclusions.[44]

Mr. Stanley's opinions are so fundamentally legal in nature that Defendant's counsel copied them and pasted them into a legal brief. Specifically, Paragraphs 13 to 17 of Stanley's expert report were copied and pasted verbatim into the argument section of Defendants' "Opposition to Plaintiff's Motion in Limine."[45] Defendants' counsel even copied Mr. Stanley's legal citations and italicization. The motion to exclude Mr. Stanley's testimony should be granted.

**B.       This Court should exclude Attorney Stanley's testimony because it is not relevant.**

Mr. Stanley's testimony is not relevant. Defendants offer him to testify about how to interpret a statute that has been found unconstitutional "as applied." But the statute in question was found unconstitutional <u>both</u> "as applied" <u>and</u> also on its face.[46]

Even if it were only found to be unconstitutional "as applied," Mr. Stanley's testimony would still not be relevant, because Dr. Banner's relevant facts are the same as in *King v. Caldwell*. Mr. Stanley agreed that "that in *King v. Caldwell*, the judge found the statute unconstitutional as applied to a person who is talking publicly about a board of ethics complaint that they had filed."[47] And he admitted that the "only things [he knows] that Joy Banner did that could run afoul of this statute would fall within what the Court in *King v. Alexander* said was unconstitutional for the law to punish."[48] Thus, the question Mr. Stanley was asked – whether someone could think that a statute unconstitutional in one context could still be valid in other contexts – is totally irrelevant to this case, given that the relevant factual context is the same.

---

[44] *Id.* at ¶ 17.
[45] *Compare* Exhibit B at ¶¶ 13-17 *with* R. Doc. 61 at pp. 4-6.
[46] *King v. Caldwell ex rel. La.*, AG, 21 F. Supp. 3d 651, 656 (E.D. La. 2014) ("The Court is persuaded that La. R.S. 42:1141.4(L)(1) is invalid, both as applied to these plaintiffs and on its face, at least in part.") *See also* Ex. B at 37:12-14 ("Q. Right, but that was the holding of the Court. It was facially unconstitutional? A. That was the opinion of the Court.").
[47] Ex. B at 33:20-24.
[48] *Id.* at 42:4-15 ("Q. So the only things you know that Joy Banner did that could run afoul of this statute would fall within what the Court in *King v. Alexander* said was unconstitutional for the law to punish? A. Well, it would fall within that portion of the statute which Judge Feldman said, in my view, alternatively was overbroad. Q. And, therefore, unconstitutional to punish? A. Therefore enjoining the attorney general and the governor from enforcing it.").

Furthermore, Mr. Stanley's opinions are about the reasonableness of a "person who is either advised by a lawyer or who has the equivalent information as if they were advised by a lawyer."[49] He testified that his opinion covers the "advice that a lawyer might give" and "what a reasonable person would generally do based on that advice."[50] But this Court has already excluded any advice-of-counsel defense.[51] Accordingly, the testimony that Mr. Stanley would offer is exactly what this Court has already forbidden from trial.

**C.      This Court should exclude Attorney Stanley's testimony because he concedes he cannot opine as a reasonable person – only as a reasonable lawyer.**

At deposition, Mr. Stanley was provided a fact he did not know: that the piece of paper Defendant Wright read from "had a notation at the top that the statute was included in the unconstitutional statutes bi-annual report."[52] That is an admitted fact.[53]

That fact, however, prompted Mr. Stanley to concede that he cannot "opine what a reasonable person would have done" but only "what a reasonable lawyer would do":

---

[49] Ex. B at 20:11-13.
[50] *Id*. at 21:17-24 ("in drafting this expert report, you looked at the facts, you researched the law and your notes, and then you applied the law and the facts to reach an opinion and advice that a lawyer might give, correct? A. A lawyer might give and what a reasonable person would generally do based on that advice.").
[51] R. Doc. 53.
[52] Ex. B at 43:1-5 ("Q. Are you aware that the piece of paper he read from had a notation at the top that the statute was included in the unconstitutional statutes bi-annual report? A. No.").
[53] Rec. Doc. 26-4 at RFA No. 2.

8

> Q. The fact that the word "unconstitutional" is at the top of a piece of paper, if the piece of paper is law, it is something that someone should look into reasonably, right?
> A. I would think it's a word that the public understands.
> Q. And would prompt a reasonable person to look into that before taking further action, agreed?
> A. I don't know. I don't know that I can opine what a reasonable person would have done. I know what a reasonable lawyer would do.[54]

Mr. Stanley then admitted he could not opine about what a reasonable person would do in Michael Wright or Ms. Hotard's situation:

> Q. You don't think you can opine about what a reasonable person would do in Michael Wright's situation?
> A. No, because I don't know if he would have understood what any of that meant.
> Q. You think you can opine about what a reasonable person in Jaclyn Hotard's situation would have done if she also had this document that said unconstitutional at the top?
> A. It would be the same answer.[55]

Mr. Stanley would be a perfectly good expert witness in an attorney malpractice trial. Indeed, in the past he has been hired as an expert witness about the "Standards of care for lawyers."[56] He has never, however, been hired as an expert about the reasonableness of a non-lawyer – until this case.[57]

---

[54] Ex. B at 45:14-25.
[55] Id. at 46:1-10.
[56] Ex. B at 55:7-12.
[57] Id. at 55:13-15 ("Q. Have you ever been hired as an expert witness for any other expert area? A. No.").

9

This case, however, is not an attorney malpractice case. No defendant is a lawyer, and this Court has excluded any advice-of-counsel defense from trial.[58] Yet Mr. Stanley conceded he could testify only about the reasonableness of a lawyer, not a non-lawyer. He admitted that any opinions he has about a non-lawyer were "intertwined with how a reasonable lawyer should act."[59] Given that this trial will not be in any way about "how a reasonable lawyer should act," Mr. Stanley's testimony should be excluded.

### III. Conclusion

For the reasons above, Plaintiff's motion to exclude the testimony of Mr. Stanley should be granted.

Respectfully submitted,

/s/ *William Most*
William Most, 36914
David Lanser, 37764
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
Telephone: (504) 509-5023
Fax: (504) 414-6400
williammost@gmail.com
david.lanser@gmail.com

---

[58] R. Doc. 53 (Order on Motion in Limine).
[59] R. Doc. 55:23-56:1("Q. So your opinions about a nonlawyer here are intertwined with how a reasonable lawyer should act, agreed? A. Correct.").