UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOY BANNER, Ph.D.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7296-NJB-KWR** |
| **MICHAEL WRIGHT, individually and in official capacity, et al.** | **SECTION: "G"(4)** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**

At a 2023 St. John the Baptist Parish council meeting, Plaintiff Joy Banner tried to make public comment. Her comment was about the use of taxpayer funds to defend Parish President Jaclyn Hotard from an ethics complaint involving Hotard's mother-in-law. When Banner spoke about her mother-in-law, Hotard interrupted Banner, said she was in "violation of State law," and directed the council chair to "stop this comment." Banner sued Hotard and others for retaliation.

In discovery, Banner requested text messages between Hotard and her mother-in-law about "Banner, The Descendants Project, Greenfield Louisiana LLC, the Greenfield grain elevator project, or the property" owned by the mother-in-law. Hotard's under-oath response was:[1]

**RESPONSE TO REQUEST FOR PRODUCTION No. 5:**

No such documents exist.

Hotard's response, however, was perjured. Such text messages <u>do</u> exist. More than a hundred, which Banner obtained them from Hotard's mother-in-law. In the texts, Hotard and her mother-in-law discuss the grain elevator project, the value of the property, and Joy Banner at length. Hotard talks about how she "hates" Banner, calls her a "bitch," and fantasizes about choking her.

Because Hotard hid these documents from production, Plaintiff seeks sanctions in the form of attorneys fees and an opportunity to re-depose Defendant Hotard about the text messages.

---

[1] Ex. A (Discovery Responses) at pg. 5. The responses are verified "under penalty of perjury" on pg. 7.

1

### I.    FACTUAL BACKGROUND

Defendant Jaclyn Hotard was elected Parish President for St. John the Baptist Parish in October 2019.[2] Plaintiff Joy Banner is one of the leaders of a non-profit in the parish called The Descendants Project. In that capacity, Banner periodically advocated against positions publicly espoused by Defendant Hotard in the context of public council meetings.

One such issue involved the proposed Greenfield industrial grain elevator project, which became a hot-button issue at several council meetings. While the project was pending, Plaintiff learned that Defendant Hotard's mother-in-law, Darla Gaudet, owned property through her business, Gaumet Holdings, LLC in the area of the grain elevator project.[3] Hotard personally signed an application to rezone an area from residential to industrial, and Gaudet's LLC's property ran right through the middle of that area.[4] Seeing this conflict, Plaintiff filed a complaint against Defendant Hotard with the Louisiana Board of Ethics.[5]

On November 28, 2023, the Parish Council held a meeting which included an agenda item seeking to retain a law firm to provide legal services for ethics issues, including the complaint Plaintiff filed against Defendant Hotard. Plaintiff attended the meeting and attempted to speak about how taxpayer money should not be allocated to assist elected officials in defending against ethics complaints, but she was shut down with threats of prosecution, leading to this lawsuit.[6]

In discovery, Plaintiff asked Hotard for all "correspondence, including emails and text messages, with Darla Gaudet regarding Dr. Joy Banner, The Descendants Project, Greenfield Louisiana LLC, the Greenfield grain elevator project, or the property owned by Gaumet Holdings, LLC in the vicinity of the Greenfield grain elevator project."[7] In response, Defendant Hotard raised

---

[2] R. Doc. 39-5 (Hotard Deposition) at 9:11-25.
[3] R. Doc. 80 (Order Denying Motion to Quash) at 2.
[4] R. Doc. 80 at 7; see also R. Doc. 7 (Amended Complaint) at ¶ 34.
[5] R. Doc. 80 at 2.
[6] R. Doc. 39-5 (Stipulated Transcript of November 28, 2023 Meeting).
[7] Exhibit A at 5.

2

no objection and stated "No such documents exist."[8] Hotard verified the non-existence of the documents under penalty of perjury.[9]

Defendant Hotard was also deposed in this litigation. She testified that she not know anything about her mother-in-law's property or business:

> I don't know about their business or what land they purchase or don't purchase. So anything you would tell me about that company would be a surprised [*sic*.] to me. Because I'm just not involved at all.
>
> You know, you have to understand. I've known Ms. Darla [Gaudet] a long time, but I didn't become her daughter-in-law under a few years ago. So I'm even more so removed from the business operations over there. I'm not involved at all. I have no idea – I don't even know what it is they do over there on that side of the river. I'm just not familiar enough with what's going on over there.[10]

In July 2024, Plaintiff subpoenaed documents from Darla Gaudet. Ms. Gaudet filed a Motion to Quash the deposition and the subpoena duces tecum.[11] After oral argument on the motion to quash, this Court ordered Ms. Gaudet to produce the requested documents, including correspondence with Defendant Hotard, for in-camera review.[12] On December 3, 2024, this Court ordered Ms. Gaudet to produce, among other documents, "fifteen (15) communications ranging from October 16, 2023, through September 14, 2024, because they are relevant to the issues in the case."[13]

Ms. Gaudet, through her attorney, produced the communications and other documents on December 4, 2024.[14] These communications show that Defendant Hotard lied when she swore

---

[8] *Id*.
[9] Id. at 7.
[10] R. Doc. 39-5 (Deposition of Jaclyn Hotard) at 33:21-34:14.
[11] R. Doc. 40.
[12] R. Doc. 46.
[13] R. Doc. 80.
[14] **Note**: Gaudet's counsel stamped these each as a "CONFIDENTIAL DOCUMENT." In correspondence, he acknowledged that some of the documents marked confidential were public, and he did not identify any protective order active in this case. Nor is there any protective order in this case. Therefore, the text messages are not protected from disclosure. *See Howard v. Hartford Life & Accident Ins. Co*., 275 F.R.D. 649, 653 (M.D. Fla. 2011) ("Plaintiff is also correct that Defendant's self-imposed 'confidential' designation is inappropriate and ineffectual in the absence of a protective order."), *citing Ulyanenko v. Metropolitan Life Insurance Co*., 275 F.R.D. 179, 2011 U.S. Dist. LEXIS 59736, 2011 WL 2183172

under oath that "no such documents exist" and that she was not aware of Ms. Gaudet's business.

The documents produced by Gaudet include hundreds of text messages between Hotard and Gaudet in which the two women discuss Joy Banner, Banner's ethics complaint, the zoning and value of Gaudet's land, share Greenfield press releases, and the other topics.[15]

For example, contrary to Hotard's testimony that she didn't know "what land [Gaudet's business] purchase or don't purchase," the text messages show that Hotard texted her mother-in-law a map of Gaudet's LLC's land highlighted on a map and listed by parcel number:



The map shows parcels of land (in yellow) owned by Gaumet Holdings, LLC, stretching from the Mississippi River to Louisiana Highway 3213, which leads to the Veterans Memorial Bridge. By Justin Kray / The Descendants Project [16]

---

(S.D.N.Y. June 3, 2011) (placement of a "confidential" watermark on documents was improper as defendant's request for a protective order had been denied); *Giertz-Richardson v. Hartford Life and Accident Insurance Co.*, No. 8:06-cv-1874-T-24MAP, 2008 WL 131209 (M.D. Fla. Jan. 10, 2008) (defendant's self-stamped "confidential" watermark did not render documents confidential in the absence of a protective order).

[15] *E.g.,* Ex. C at 4, Ex. M.
[16] Ex. D at 16.

4

Hotard also talks about the impact of the rezoning on the value of Gaudet's land:

[17]

The text messages show Hotard sending Gaudet an excerpt from Joy Banner's financial disclosures:

[18]

Hotard complains about press coverage, and tells Gaudet that she instructed her Director of Communications, Baileigh Helm, to "cancel all advertising" with a newspaper that printed a letter to the editor from Joy Banner:

[19]

---

[17] Ex. B at 2
[18] Ex. F at 3.
[19] Ex. C at 5.

The text messages show that Gaudet would text Hotard about when Greenfield matters were before the parish council, and specifically who voted in favor or against:



The text messages show that Hotard sent her mother-in-law a range of images of Joy Banner's face:

  

---

[20] Ex. H at 1.
[21] Ex. I at 1.
[22] Ex. I at 4.
[23] Ex. D at 1.
[24] Ex. D at 2.
[25] Ex. L at 1.

In the context of rezoning the land around Gaudet's property, Hotard and Gaudet talk about wanting to "choke" Joy, and Hotard calls her a "bitch":

[26]

In May 2024, Hotard texted her mother a warning about a subpoena from Joy Banner and her sister, and said "I hate these people":

[27]

The text messages also show that Hotard lied when she said she did not "talk to anyone to prepare for [her] deposition."[28] In fact, she texted with her mother-in-law <u>about her preparation for the deposition</u>:

---

[26] Ex. B.
[27] Ex. J at 1.
[28] R. Doc. 39-5 at 9:8-10.



And finally, one day after Plaintiff filed her Opposition to Gaudet's Motion to Quash,[30] Hotard and Gaudet had this cryptic exchange:



---

[29] Ex. L at 2.
[30] R. Doc. 41.
[31] Ex. N.

8

Thus, when Hotard swore under oath that there were no text messages with Darla Gaudet about Joy Banner, the Greenfield grain elevator project, or Gaudet's land, she was lying. Defendant Hotard did not just forget a one-off reference that would be arguably responsive to the discovery request – the texts show a prolonged, frequent discussion of Plaintiff and the Greenfield project, including directly naming and sending pictures of Plaintiff. Several of the texts display an open disdain for Plaintiff and her sister, Jo Banner, including a desire to choke her and plainly stating "I hate these people," which is directly relevant to Plaintiff's retaliation claim. Defendant Hotard did not want these text messages to be brought to light and lied about their existence.

## II.   ANALYSIS

a.   <u>Legal Standard</u>

Rule 37(c) provides for sanctions where a party fails to disclose or supplement an earlier response. Fed. R. Civ. Pro. 37(c). Specifically, Rule 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure" and "may impose other appropriate sanctions" including those in Rule 37(b). A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct."[32] District courts determine whether a violation of Rule 26 is harmless by considering four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.[33]

In addition to the Rules of Civil Procedure, courts have the inherent power to grant sanctions for perjury by a party.[34]

---

[32] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)).
[33] *CPI Card Grp.-Nevada, Inc. v. Traffic Jam Events, LLC,* No. 11-2873, 2013 U.S. Dist. LEXIS 820, at *4 (E.D. La. Jan. 3, 2013), *citing Texas A&M Research Foundation v. Magna Transp., Inc*., 338 F.3d 394, 402 (5th Cir. 2003).
[34] *Brown v. Oil States Skagit Smatco,* 664 F.3d 71, 80 (5th Cir. 2011) (affirming a district court's dismissal of a suit as a sanction for perjury).

      b.      <u>The motion should be granted because the Parties have met and conferred.</u>

Plaintiff's counsel emailed Defendant Hotard's counsel on December 5, 2024 to raise concerns about this and allow an opportunity to explain why she should not be sanctioned. The parties spoke on the phone on December 9, 2024.[35] Hotard's counsel stated that Hotard *might* have her phone set to destroy text messages (although he was not sure) and therefore her response was truthful.[36] Plaintiff's counsel pointed out that, even if that is true, it would at the very least create a spoliation issue considering many of the texts are from <u>after</u> the initiation of this case.[37] And regardless, Hotard's discovery response was not that she did not *possess* the text messages – she affirmatively swore that they did not exist. In that phone call, Defendants' counsel objected to both remedies sought in this motion: attorneys fees and a limited re-deposition of Hotard.[38]

      c.      <u>The motion should be granted because Defendant Hotard swore under oath that no responsive text messages existed, but at least a **hundred** did exist. Several were exchanged just weeks before Hotard's false oath</u>.

On June 2, 2024, Plaintiff propounded a set of Requests for Admission and one Request for Production of Documents on Defendant Hotard, to which Defendant Hotard responded on July 2, 2024.[39] The sole Request for Production in that set of requests was "All correspondence, including emails and text messages, with Darla Gaudet regarding Dr. Joy Banner, The Descendants Project, Greenfield Louisiana LLC, the Greenfield grain elevator project, or the property owned by Gaumet Holdings, LLC in the vicinity of the Greenfield grain elevator project."[40] In response, Defendant Hotard did not make any objection and stated, in full: "No such documents exist."[41] She swore under oath – although she did not have to – that the answers were true.[42]

---

[35] Ex. O (Corr. of Counsel).
[36] Ex. P (Dec. of William Most) at ¶ 7.
[37] Exhibits F to N are all from after the filing of this suit. See R. Doc. 1 (filed December 14, 2023).
[38] Ex. P at ¶ 6.
[39] Exhibit A.
[40] Exhibit A.
[41] Exhibit A.
[42] Ex. A at 7.

But as a result of the subpoena to Ms. Gaudet, we now know that Defendant Hotard's response was not truthful. Ms. Gaudet produced texts from nearly a year of correspondence in which Defendant Hotard repeatedly references Plaintiff by name, sends photos of Plaintiff's face, and discusses her mother-in-law's property and the Greenfield project at length. Defendant Hotard even shared a screenshot of what appears to be Plaintiff's tax information, several news stories about Plaintiff, and a photo of Plaintiff from the November 28 meeting.

Most disturbing, Defendant Hotard texted Ms. Gaudet "I hate these people" and that she "wanted to choke" Plaintiff, referring to Plaintiff as a "bitch." These are especially relevant to this litigation as Plaintiff has asserted a cause of action for First Amendment retaliation. That Defendant Hotard has expressed in private her desire to inflict physical harm on Plaintiff and a general hatred for her bolsters Plaintiff's claim. And Hotard's statement that she canceled all advertising with a newspaper that published Banner's letter corroborates her effort to silence Banner. The text messages also show significant back-and-forth about Ms. Gaudet's property and Gaumet Holdings, LLC, despite claiming at deposition that she had absolutely no knowledge of either.

These are not one-off, forgettable comments that may have slipped Defendant Hotard's mind. Plaintiff and Defendant Hotard have a long history and the Greenfield project was the subject of extensive ongoing news coverage; it would be unbelievable if she had *not* communicated with Ms. Gaudet about any of the requested topics. And indeed, we now know through Ms. Gaudet's production that Defendant Hotard engaged in ongoing communications with Ms. Gaudet regarding the requested topics for at least the year covered by the subpoena (although the discovery request was not limited to that same timeframe and may include additional correspondence yet to be produced). She did not claim to not have access to the correspondence or that there was no such correspondence. Instead, Defendant Hotard affirmatively stated under oath that no documents existed.

And those communications were almost contemporaneous with her false oath. For example, Hotard swore on July 2, 2024 that no text messages existed between her and Gaudet about "Greenfield," Joy Banner, or Gaudet's property.[43] But <u>only two weeks</u> earlier, on June 17, 2024, Hotard and her mother-in-law had an extended text conversation about how Hotard was "sick" of the Banner sisters,[44] how she felt that Gaudet should not have to answer any "questions on this greenfield shit,"[45] the timing of Gaudet's purchase of her land,[46] and how Gaudet was mad that her "f-ing property" was not rezoned to Industrial-3 along with the adjacent Greenfield land.[47]

      d.    <u>The Court should grant Plaintiff the remedies of a limited re-deposition of Defendant Hotard and reasonable attorneys fees.</u>

Courts have broad authority to sanction parties for discovery violations in whatever manner is appropriate in light of the particular circumstances.[48] Plaintiff respectfully suggests that this Court sanction Defendant Hotard by 1) awarding attorneys fees for the additional time spent acquiring the relevant information and documents (including any subsequent depositions) and for drafting this motion; 2) allowing Plaintiff to re-depose Defendant Hotard regarding the newly produced correspondence and reasonable areas of inquiry stemming from that questioning; and 3) other remedies that this Court deems appropriate.

Regarding the need to re-depose Defendant Hotard, this remedy is especially important as some of the texts use language such as "they" and "the sisters" which, in context, appear to be regarding Plaintiff and her twin sister, but will need to be confirmed by Defendant Hotard. Plaintiff will also have to re-inquire about Defendant Hotard's knowledge of Ms. Gaudet's business in light of the new information that she knows more than she claimed at deposition. And finally, a

---

[43] Ex. A at 7.
[44] Ex. K at 1.
[45] *Id*. at 2.
[46] *Id*. at 3.
[47] *Id*. at 4.
[48] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012); Fed. R. Civ. Proc. 37.

deposition is required to determine what information Gaudet gave to Hotard that Hotard promised not to share.[49] This Court has already determined that that text is "relevant to the issues in the case"[50] – but the secret information is unknown.

Parties are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"[51] and Plaintiff should be allowed the opportunity to question Defendant Hotard about her newly revealed knowledge.

### III.    CONCLUSION

For the reasons stated herein, Plaintiff asks this Court to sanction Defendant Hotard by awarding attorneys fees and allowing the opportunity to re-depose Defendant Hotard with a limited scope.

Respectfully submitted,

/s/ *Dave Lanser*
Dave Lanser (La. Bar No. 37764)
William Most (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 533-4521
F: (504) 414-6400
Email:
david.lanser@gmail.com
williammost@gmail.com
*Attorneys for Plaintiff Joy Banner*

---

[50] R. Doc. 80.
[51] Fed. R. Civ. Proc. 26(b)(1).

13