UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOY BANNER, Ph.D.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7296-NJB-KWR** |
| **MICHAEL WRIGHT, individually and in official capacity, et al.** | **SECTION: "G"(4)** |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS**

In discovery, Defendant Jaclyn Hotard withheld more than a hundred responsive text messages between her and her mother-in-law. These text messages addressed Hotard's feelings about Plaintiff (thus relevant to Plaintiff's First Amendment retaliation claim) and Hotard's knowledge of key facts that she denied knowing. For these reasons, the Court determined that the text messages "are relevant to the issues in the case."[1]

Because Hotard's withholding resulted in Plaintiff not obtaining the text messages until after Hotard's deposition, Plaintiff filed for sanctions seeking the opportunity for a limited re-deposition of Hotard and attorneys fees.[2] Hotard opposed the motion, arguing that her failure to produce the text messages was an "inadvertent oversight."[3] But beyond invoking the words "inadvertent oversight," Defendant Hotard offered no explanation whatsoever for her failure to produce the correspondence.

Furthermore, information obtained from the recent deposition of Hotard's mother-in-law provides additional reasons why Defendant Hotard should be re-deposed. After initially refusing to answer and then being ordered to answer by this Court, Hotard's mother-in-law revealed that Parish President Hotard's <u>husband</u> stood to financially benefit from Hotard's official actions. The

---

[1] R. Doc. 80.
[2] R. Doc. 92.
[3] R. Doc. 106.

mother-in-law testified that this was "a secret . . . until the judge ruled I had to give it to you."[4]

This secret information directly speaks to Hotard's motive in attempting to silence the plaintiff, and is therefore directly relevant to the issues for trial. The motion for sanctions should be granted.

I. <u>The Motion should be granted because this Court already held that the withheld text messages are "relevant."</u>

Defendant Hotard argues in her opposition that the text messages with her mother-in-law Darla Gaudet were mostly "irrelevant" or "unresponsive" to the Request for Production.

But the text messages were responsive: Plaintiff's request for production specifically asked for "text messages . . . with Darla Gaudet."[5] And this Court already determined that the text messages "are relevant to the issues in the case" in denying the motion to quash.[6]

Thus, given that it is the law of the case that the text messages are relevant,[7] questions about the text messages are also likely relevant. Hotard's choice to withhold the text messages prevented Plaintiff from asking those questions of her at deposition. Accordingly, the motion for a limited re-deposition on that topic should be granted.

II. <u>The Motion should be granted because Defendant Hotard offers no explanation whatsoever for failing to disclose the text messages.</u>

Sanctions under Rule 26 require an assessment of a party's "explanation for the party's failure to disclose."[8] An explanation requires more than a party simply using the word "mistake"

---

[4] Ex. A at 121:24-25.
[5] *See* R. Doc. 106 at 7.
[6] R. Doc. 80.
[7] *See Loumar, Inc. v. Smith*, 698 F.2d 759 (5th Cir. 1983) ("The law of the case doctrine is closely related to the principle of res judicata. The latter prevents collateral attack on the result of a completed lawsuit between the same parties; the former prevents collateral attacks against the court's rulings during the pendency of a lawsuit.")
[8] *CPI Card Grp.-Nevada, Inc. v. Traffic Jam Events, LLC*, No. 11-2873, 2013 U.S. Dist. LEXIS 820, at *4 (E.D. La. Jan. 3, 2013), *citing Texas A&M Research Foundation v. Magna Transp., Inc.,* 338 F.3d 394, 402 (5th Cir. 2003).

or "inadvertent" – it requires facts *explaining* a mistake or inadvertence.[9]

Here, Defendant Hotard's only explanation for her failure to produce the text messages is the statement that it was "an inadvertent oversight."[10] But saying the words "inadvertent oversight" provides neither an explanation nor an excuse.

For example, Hotard does not explain in any fashion what the "oversight" was. She does not say whether she declined to search for text messages, searched for the wrong information, used the wrong search terms, or searched and found information, but neglected to produce it. Defendant Hotard's counsel had previously stated that she may have set her phone to automatically destroy text messages, which would at the very least create a spoliation issue, but this theory is not addressed in the opposition.[11]

Further, it defies common sense that Hotard would not recall more than a hundred relevant text messages with her mother-in-law. This is especially true considering that her response under oath that "No such documents exist" was certified on July 2, 2024, but she had sent relevant text messages just two weeks earlier on June 17, 2024, in which she expressed anger that her mother-in-law was involved in litigation, stating in part:

---

[9] *See, e.g., In re Ploof,* No. 06-30845 (ASD), 2007 Bankr. LEXIS 1645, at *4 (Bankr. D. Conn. May 8, 2007) ("the Debtor has offered no reason, other than 'inadvertence', to explain his failure to seek reaffirmation approval, or an extension of time to do so, prior to entry of the Discharge."); *Scott v. District of Columbia*, 246 F.R.D. 49, 52 (D.D.C. 2007) ("Nor have they explained how inadvertence explains why it took two full weeks to provide a partial cure, and six weeks to provide a full cure."); *Pierce Hardy Ltd. P'ship v. Harrison Bros. Contracting, LLC,* 13 So. 3d 175, 177 n.5 (Fla. Dist. Ct. App. 2009) ("the verified motion was based on personal knowledge and sufficed to satisfy the requirement that defendant set forth facts by affidavit or other sworn statement explaining the mistake or inadvertence.")
[10] R. Doc. 106 at 2, 6; R. Doc. 106-1 at ¶ VI.
[11] R. Doc. 92-1 at 10.

> I'm sick of them! You have NO part of this. Ike told me today that if you wanted to meet with him and your attorney he'd be happy to but you should not have to even appear to do anything. Snowdy is the judge and he BETTER throw out their subpoena.

and

> They had me so angry today about this I had to go take a drive.[12]

Thus, because Defendant Hotard provides no facts whatsoever explaining her "oversight," she has not offered any adequate explanation for her failure to produce the text messages. The motion should be granted.

III. <u>Whether Defendant Hotard discussed the Greenfield project with Darla Gaudet is immaterial to the sanctions motion.</u>

Defendant Hotard argues that she was being truthful at deposition when she stated that she had a "conversation" with her mother-in-law about Greenfield "maybe, after the lawsuit was filed."[13] Plaintiff has not claimed otherwise. Rather, Plaintiff's motion asserts that Defendant Hotard committed perjury in certifying that no correspondence or text messages with her mother-in-law existed, which we now know was untrue.

IV. <u>The Motion should be granted because Defendant Hotard does not explain her perjured testimony regarding knowledge of her mother-in-law's property.</u>

Defendant Hotard argues that the article she texted her mother-in-law which discusses the property in the context of the Greenfield project does not prove that she has any knowledge of the property or her mother-in-law's business because "This short text exchange, consisting of two text messages, does not prove that Ms. Hotard actually read the complete article" since it was several pages long.[14] This defies common sense, as the article discusses Ms. Gaudet's property at length,

---

[12] R. Doc. 92-13.
[13] R. Doc. 106 at 4.
[14] R. Doc. 106 at 5.

including photos and diagrams such as one with the caption "The map shows parcels of land (in yellow) owned by Gaumet Holdings, LLC."[15]

But the text messages are just one piece of evidence that Defendant Hotard had knowledge of her mother-in-law's business and property. More to the point, as discussed in the original motion, is Defendant Hotard's deposition testimony:

> I don't know about their business or what land they purchase or don't purchase. So anything you would tell me about that company would be a surprised [sic.] to me. Because I'm just not involved at all.
>
> You know, you have to understand. I've known Ms. Darla [Gaudet] a long time, but I didn't become her daughter-in-law under a few years ago. So I'm even more so removed from the business operations over there. I'm not involved at all. I have no idea – I don't even know what it is they do over there on that side of the river. I'm just not familiar enough with what's going on over there.[16]

This testimony is false when viewed in light of the since-produced text messages discussing the business. And to Defendant's point that the texts do not prove that she read the article that she texted her mother-in-law: that is one reason why a supplemental deposition is necessary.

V. <u>Plaintiff should be allowed to take a supplemental deposition because Ms. Gaumet's explanations of the text messages are not necessarily Defendant Hotard's and to ask Defendant Hotard about her knowledge of the trust.</u>

Finally, Defendant Hotard provides argument for why each set of text messages does not require a supplemental deposition. Each explanation is essentially the same response:

> The context and content of this text exchange is already available to Plaintiff as Plaintiff's Counsel has previously deposed Ms. Gaudet regarding this text exchange. The text exchange offers no new information that would potentially impact the outcome of the current litigation. Furthermore, its disclosure does not warrant a re-opening of Ms. Hotard's deposition.[17]

---

[15] R. Doc. 92-6.
[16] R. Doc. 39-5 at 33:21-34:14.
[17] R. Doc. 106 at 7-12; some explanations also include a statement that the correspondence occurred after the date of the discovery responses, but this is immaterial as Defendant has an ongoing duty to supplement her discovery responses.

These responses have many shortcomings. First, that Plaintiff has already deposed Ms. Gaudet is immaterial. Ms. Gaudet is not a defendant in this case; Ms. Hotard is. Ms. Gaudet was able to provide explanation of *her* text messages and her interpretation of Defendant Hotard's texts, but those answers may differ from Defendant Hotard's. If Plaintiff had been in possession of these text messages prior to Defendant Hotard's deposition, she would have been able to ask about Defendant Hotard's understanding of the context and content, as well as her motivation for sending each. This information is highly relevant to this case, especially considering that Plaintiff has alleged retaliation.

But the text messages are just one basis for needing a supplemental deposition. Plaintiff's theory in this case is that Defendant Hotard attempted to silence the Plaintiff for talking about how Hotard's official actions would financially benefit her own family. Previously, it was only known that Hotard's official actions financially benefitted her mother-in-law. But now we know something new: not only was Hotard's mother-in-law a beneficiary of the value of the property, Hotard's *husband* was.

At deposition, after initially refusing to answer the question, Ms. Gaudet refused to answer who the beneficiaries were:

- "Q. Ms. Gaudet, you will not tell me who are the beneficiaries of the test who own this LLC? A. I will not."[18]

- "Q. Who are the beneficiaries of the Charles Keith Metcalf trust? A. I'm not going to divulge that either."[19]

- "Q. Okay And you refuse specifically to tell me whether the parish president's husband is a beneficiary of one of these trusts. A. Yes."[20]

Parties then sought a mid-deposition ruling from Judge Roby, who ordered Ms. Gaudet to

---

[18] Exhibit A (Deposition of Darla Gaudet) at 38:10-12.
[19] Ex. A at 38:22-24.
[20] Ex. A at 39:7-10.

provide the requested information. Ms. Gaudet then revealed that Defendant Hotard's <u>husband</u> is a beneficiary of one of the trusts owning the LLC in question.[21] Ms. Gaudet then further admitted that this information had never been disclosed to the Ethics Board and that it had "been a secret" until the judge ordered her testimony:

> Q. And then the fact that Jaclyn Hotard's husband is a beneficiary of one of the trusts that owns Gaumet Holdings, LLC, to your knowledge, has that ever been disclosed before today in any sort of public setting?
>
> A. Not to my knowledge I don't.
>
> Q. Has it ever been disclosed to any government agency, to your knowledge?
>
> A. No. How could it have been? You all are the only ones that have it, you and my attorney."
>
> Q. Okay. So that's been a secret until today?
>
> A. It's been a secret until you all – until the judge ruled I had to give it to you, yes.

This information was not available to Plaintiff when Defendant Hotard was deposed. If Defendant Hotard had not lied about her knowledge of Gaumet Holdings, Plaintiff would have asked her about the ownership of that entity. This is highly relevant to the retaliatory motive at the heart of this case. Now a jury can infer that Defendant Hotard was motivated to silence Plaintiff not only to cover up an improper financial benefit to her mother-in-law, the jury can infer that the improper benefit was much closer to home – to Ms. Hotard's <u>husband</u>.[22] A limited re-deposition is needed to determine whether Hotard knew her husband had an ownership stake in the land Hotard's actions would benefit. The motion should be granted.

---

[21] Ex. A at 64:25-65:6.
[22] *See* Ex. A at 70:6-24 (Gaudet agreed that the land in question "intersected the rail line for the Greenfield grain elevator project" and that "owning a strip of land that controls the rail approach to an $800 million industrial project could increase the value of that tract of land").

V.     Conclusion

For the reasons stated herein, Plaintiff's Motion for Sanctions should be granted, attorneys fees awarded, and Defendant Jaclyn Hotard should be ordered to sit for a supplemental deposition.

                              Respectfully submitted,

                              /s/ *William Most*
                              Dave Lanser (La. Bar No. 37764)
                              William Most (La. Bar No. 36914)
                              MOST & ASSOCIATES
                              201 St. Charles Ave., Ste. 2500, #9685
                              New Orleans, LA 70170
                              T: (504) 533-4521
                              F: (504) 414-6400
                              Email: david.lanser@gmail.com
                                                 williammost@gmail.com

                              *Attorneys for Plaintiff Joy Banner, Ph.D*