## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOY BANNER, Ph.D.**                                            **CIVIL ACTION**

**VERSUS**                                                          **NO. 23-7296-NJB-KWR**

**MICHAEL WRIGHT, individually and in official**         **SECTION: "G"(4)**
**capacity, et al.**

### Plaintiff's Trial Memorandum

In Rec. Doc. 13-1, this Court requested trial memoranda briefing the contested issues of

law described in the PTO,[1] issues related to objected-to exhibits,[2] and jury instructions and special

jury interrogatories.[3] This is Plaintiff's trial memorandum.

**A.        Item for Discussion at Pre-Trial Conference**

Plaintiff has learned that Defendants have been using the U.S. Marshals to attempt service

of a trial subpoena on Justin Kray.

Mr. Kray, however, is no longer on any party's witness list. See Rec. Doc. 107 (Updated

Joint Pretrial Order). Plaintiff alerted Defendant to this fact. Despite this, Defendants decline to

cease their efforts to serve him.

**B.        Briefing on Contested Issues of Law**

The following is a listing of each contested issue of law from the joint proposed pre-trial

order,[4] and short briefing on each issue.

1.    <u>Whether and to what extent La. R.S. 42:1141.4 (L)(1) was held to be unconstitutional.</u>

During the public meeting at issue, Defendant Wright stopped Plaintiff from speaking and

read to her R.S. 42:1141.4 (L)(1), a state statute that purported to criminalize certain speech. Nine

---

[1] Rec. Doc. 13-1 at 4.
[2] *Id*. at 5. ("Unless otherwise ordered by the Court, only exhibits included on the exhibit list and/or for which memoranda have been submitted shall be included for use at trial.")
[3] *Id*. at 7.
[4] Rec. Doc. 107.

years earlier, a section of this Court found that section to be invalid both facially and as applied, at least in part. *King v. Caldwell ex rel. La.*, AG, 21 F. Supp. 3d 651, 656 (E.D. La. 2014) ("The Court is persuaded that La. R.S. 42:1141.4(L)(1) is invalid, both as applied to these plaintiffs and on its face, at least in part.") The court explained what it meant by "at least in part," making clear that:

> The Court hereby declares La. R.S. 42:1141.4(L)(1) invalid insofar as it prohibits "any other person" from "mak[ing] any public statement or giv[ing] out any information concerning a private investigation or private hearing of the Board of Ethics.[5]

Defendants argue that the court's holding that the statute was also facially invalid was dictum.[6] Indeed, one of the stipulated facts in the pre-trial order is that "In 2014, a federal judge determined that "R.S. 42:1141.4(L)(1) is invalid, both as applied to these plaintiffs and on its face, at least in part."[7]

Defendants' attorney-expert also agrees that the Eastern District found R.S. 42:1141.4(L)(1) facially unconstitutional.[8] And because the statute had been declared unconstitutional, the piece of paper Defendant Wright was holding had the word "Unconstitutional" at the top.[9]

2. Whether and to what extent La. R.S. 42:1141.4 (L)(1) is unconstitutional under the facts of this case.

Defendants' contention was that Plaintiff was violating R.S. 42:1141.4 (L)(1) by talking about a complaint she had made to the Ethics Board. But that is exactly what the court in *King* found invalid. Indeed, *King* dealt with nearly identical facts – plaintiffs who were threatened with

---

[5] *King v. Caldwell ex rel. Louisiana*, No. 13-4913, 21 F.Supp.3d 651, 656 (E.D. La. May 14, 2014).
[6] Rec. Doc. 61 at 5.
[7] Rec. Doc. 107 at 4.
[8] Rec. Doc. 74-5 (Stanley Dep.) at 37:12-14 ("Q. Right, but that was the holding of the Court. It was facially unconstitutional? A. That was the opinion of the Court.")
[9] Rec. Doc. 26-4 at RFA No. 2 (Wright admitting that the paper "included a note that it was included in an Unconstitutional Statutes Biennial Report.")

prosecution for speaking publicly about the complaint they made to the Board of Ethics.[10]

Given that the *King* court found the section unconstitutional "on its face," it is certainly unconstitutional under the facts of this case. And even if it had only found the section unconstitutional as applied, it would apply here given the nearly identical fact pattern.

3. Whether it was illegal for Dr. Banner to discuss the ethics complaint she filed against Defendant Hotard.

It was not. Although there is a statute that purports to criminalize such speech, a section of this court declared "R.S. 42:1141.4(L)(1) invalid insofar as it prohibits 'any other person' [than the subject of the complaint] from 'mak[ing] any public statement or giv[ing] out any information concerning a private investigation or private hearing of the Board of Ethics.'"[11] Defendants have never articulated a plausible theory for why Dr. Banner's speech might have been illegal.

4. Whether Defendants violated Louisiana's Open Meetings Law in how they conducted the Parish Council meeting on November 23, 2023.

This issue was briefed in the cross-motions on partial summary judgment on Plaintiff's Open Meetings Law Claim.[12] In short, however, the Open Meetings Law requires public bodies to "allow a public comment period" prior to voting on an agenda item.[13] Louisiana law requires that the "provisions of [the Open Meetings Law] shall be construed liberally."[14]

On November 28, 2023, Plaintiff attended a public meeting of the St. John the Baptist Parish Council. She intended to provide public comment on at least one agenda item and, when the floor was open to the public, began to do so. But Defendant Hotard interrupted her and asked

---

[10] *Seals v. McBee*, 2017 U.S. Dist. LEXIS 119553, *6 (E.D. La. July 31, 2017) (explaining that in *King*, the "plaintiffs had been arrested for speaking with the media regarding a claim that they had made to the Louisiana State Board of Ethics").

[11] *King v. Caldwell ex rel. Louisiana*, No. 13-4913, 21 F.Supp.3d 651, 656 (E.D. La. May 14, 2014).

[12] Rec. Doc. 77-1 (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment on Open Meetings Law Claim); Rec. Doc. 103 (Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment on Open Meetings Law Claim).

[13] La. R.S. 42:14(D).

[14] *Id.*

Defendant Wright to "stop this comment." [15] Defendant Michael Wright gaveled Plaintiff quiet and read to her from a long-unconstitutional criminal statute, stating that she could face fines and prosecution if she continued her comment. [16]

Plaintiff contends that a public entity has not met its obligation to "allow a public comment period" when it interrupts commenters, gavels them quiet, and threatens them with imprisonment under an unconstitutional statute.

5. Whether Defendants violated Dr. Banner's First Amendment rights in restricting her speech during public comment.

This issue was briefed at the Motion to Dismiss stage.[17] In limited public forum with an on-topic rule, any restriction on on-topic speech is subject to strict scrutiny.[18] Under the strict scrutiny standard, "the Government [must] prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."[19] (Here, the Parish never passed an on-topic rule,[20] so any restriction would be even more difficult to justify.)

In denying Defendants' Motion to Dismiss, this Court explained that the "Supreme Court has held that where, as here, the complaint plausibly alleges coercive threats aimed at punishing or suppressing disfavored speech, the plaintiff states a First Amendment claim."[21]

6. Whether Defendants engaged in viewpoint discrimination.

This issue was briefed at the Motion to Dismiss stage.[22] Viewpoint discrimination exists "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale

---

[15] Rec. Doc. 43-1 (Stipulated Transcript) at 4:24-5:3.
[16] *Id.* at 10:19-11:9.
[17] *See* Rec. Doc. 11 (Plaintiff's Opposition to Defendants' Motion to Dismiss).
[18] *Chiu v. Plano Independent Sch. Dist.*, 260 F.3d 330, 347 (5th 2001).
[19] *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin* (5th Cir. 2020), *citing Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015).
[20] *See* Rec. Doc. 48-1.
[21] Rec. Doc. 25 at 25, citing Vullo, 2024 WL 2751216, at *18.
[22] *See* Rec. Doc. 11 (Plaintiff's Opposition to Defendants' Motion to Dismiss).

for the restriction."[23]

In denying Defendants' Motion to Dismiss, this Court explained that "a reasonable factfinder could find that Defendants acted with improper motive in stopping Plaintiff's comment, or that the communication is 'reasonably understood' to be a coercive threat, which would be a violation of Plaintiff's First Amendment right to be free from viewpoint discrimination in a limited public forum."[24]

7.  Whether Defendants retaliated against Dr. Banner.

This issue was briefed at the Motion to Dismiss stage.[25] First Amendment retaliation requires that (1) plaintiff was engaged in constitutionally protected activity, (2) defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.[26] In denying Defendants' motion to dismiss, this Court held that viewing "the allegations in the Amended Complaint and the video recording of the meeting in the light most favorable to Plaintiff, a reasonable factfinder could find that Defendants acted with improper motive in stopping Plaintiff's comment."[27]

---

[23] Rec. Doc. 25 (Order Denying Motion to Dismiss), citing Heaney v. Roberts, 846 F.3d 795, 802 (5th Cir. 2017).
[24] Rec. Doc. 25 at 15, *citing Heaney*, 846 F.3d at 802
[25] *See* Rec. Doc. 11 (Plaintiff's Opposition to Defendants' Motion to Dismiss).
[26] *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023).
[27] Rec. Doc. 25 at 15.

C.    **Briefing on Exhibits**

Plaintiff's Exhibits:

| Ex. | Description | Defendants' Objection | Plaintiff's Response to Defendants' Objections |
|---|---|---|---|
| P1 | Highlighted copy of Revised Statute 42:1141.4 | Object to relevancy | This is the document that Defendant Wright was holding when he read the statute aloud. It notes at the top that the statute was included in the "Unconstitutional Statutes Biennial Report."[28]<br><br>Wright concedes he had never done this before.[29] The fact that Wright threatened Banner with a statute even though it said unconstitutional at the top is relevant to Plaintiff's theory of viewpoint discrimination and First Amendment retaliation. |
| P2 | Public Records Response and Highlighted copy of Revised Statute 42:1141.4 | Object to relevancy | This is the public records request and response by which Plaintiff obtained the document that Defendant Wright was holding when he read the statute aloud. It is included as an exhibit to be used in the event that Wright denies or cannot recall that it was the document he was holding. |
| P3 | Apple Watch photos and data | Object to relevancy | After Defendants threatened Plaintiff at a public meeting, Plaintiff felt anxiety about future meetings. This is corroborated by biometrics from her Apple Watch, which issued a "High Heart Rate" warning because her heart rate rose above 120 bpm at a subsequent public meeting. |
| P4 | Excerpts from Defendants' Discovery Responses | | Defendants do not object. |
| P5 | Text messages between Darla Gaudet and Jaclyn Hotard | Object to relevancy | The Court already determined that "discovery into Gaudet's business interests and communications with Jaclyn Hotard is relevant."[30]<br><br>The Court further found that these text messages are "relevant to the issues in the case," given that "Jaclyn Hotard's knowledge of Gaudet's business interests in the land subject to the re-zoning application is relevant to Plaintiff's retaliation claim under the First |

---

[28] Rec. Doc. 26-4 at RFA No. 2 (Wright admitting that the paper "included a note that it was included in an Unconstitutional Statutes Biennial Report.")

[29] Rec. Doc. 39-4 (Wright Dep.) at 14:20-15:3.

[30] Rec. Doc. 80 at 10.

| | | | Amendment."[31] |
|---|---|---|---|
| P6 | Gaumet Holdings LLC operating agreement | Object to relevancy | The Court already determined that "discovery into Gaudet's business interests and communications with Jaclyn Hotard is relevant."[32]<br><br>The Court further determined that information about the ownership of Gaumet Holdings LLC (reflected in this operating agreement) is "relevant to the issues in the case," because it can help "establish whether Gaudet's business interests in the project affected Hotard's motivation to prevent Plaintiff's public comment at the Council meeting."[33] |
| P7 | Assessor Parcel Maps | Object to relevancy | The Court already determined that information about "Gaudet's business interests . . . is relevant."[34]<br><br>The assessor parcel maps reflect that, by showing the property that Gaudet's LLC owns in the vicinity (and running directly through) the grain elevator project area. |
| P8 | Joy Banner Demonstrative from November 28, 2023 | Object to relevancy | This exhibit shows a demonstrative that Joy Banner brought to the November 28, 2023 council meeting and intended to use, but did not use because of Defendants' threats.<br><br>The exhibit contradicts Defendants' theory that Plaintiff was not silenced because she said everything she intended to say. |
| P9 | Official proceedings of May 27, 1993 council meeting | | Defendants do not object. |
| P10 | *King v. Caldwell ex rel. Louisiana* (if *Daubert* motion denied) | Object to relevancy | This exhibit is a copy of the court opinion declaring R.S. 42:1141.4(L)(1) unconstitutional on its face and as applied.<br><br>Plaintiffs only intend to use it at trial in the questioning of Defendants' attorney-expert if the *Daubert* motion is denied. |
| P11 | List of Darla Gaudet Businesses from SoS | Object to relevancy | The Court already determined that information about |

---

[31] Rec. Doc. 80 at 9-10.
[32] Rec. Doc. 80 at 10.
[33] Rec. Doc. 80 at 9-10.
[34] Rec. Doc. 80 at 10.

| | | | |
|---|---|---|---|
| | | | "Gaudet's business interests . . . is relevant."[35]<br><br>This exhibit lists the many businesses Darla Gaudet is associated with, providing further context to "establish whether Gaudet's business interests in the project affected Hotard's motivation to prevent Plaintiff's public comment at the Council meeting."[36] |
| P12 | Nov. 9, 2021 Letter from Greenfield to Gaumet Holding | Object to relevancy | The Court already determined that information about "Gaudet's business interests . . . is relevant."[37]<br><br>This letter indicates the connection between Hotard's mother-in-law and husband's business interests and the Greenfield grain elevator project that Hotard was pushing.<br><br>It also has a series of diagrams (pg. 18 et seq) which show the location of the rail line, which is intersected by the land owned by Hotard's mother-in-law and husband.<br><br>Relevant to the First Amendment claims, this provides a motive for Hotard to silence Banner: she was attempting to prevent Banner from speaking about the improper connections between Hotard's official actions and her family's direct financial self-interest. |
| P13 | Gaumet Holdings Assessor Listings | Object to relevancy | The Court already determined that information about "Gaudet's business interests . . . is relevant."[38]<br><br>These assessor listings reflect that, by showing the property that Gaudet's LLC bought, when it bought it, etc. |
| P14 | Map of 0300038900 | Object to relevancy | The Court already determined that information about "Gaudet's business interests . . . is relevant."[39]<br><br>The assessor parcel map reflects that, by showing the property that Gaudet's LLC owns running directly through the grain elevator project area. |

---

[35] Rec. Doc. 80 at 10.
[36] Rec. Doc. 80 at 9-10.
[37] Rec. Doc. 80 at 10.
[38] Rec. Doc. 80 at 10.
[39] Rec. Doc. 80 at 10.

| P15 | Hotard Letter of Support | | Defendants do not object. |

**Defendants' Exhibits**

| Ex. | Description | Plaintiff's Obj. to Admissibility | Plaintiff's Further Briefing on Objections |
|---|---|---|---|
| D1 | Minutes (Official Proceedings) St. John the Baptist Parish Council, Tuesday November 28, 2023 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | The meeting agenda is already a joint exhibit (J2). It is unclear what additional information from the minutes would be relevant to the case.<br><br>In the absence of any additional relevant information, this exhibit is misleading, cumulative, and potentially confusing. For instance, the exhibit specifically states that "Joy Banner … commented on" Agenda Item J which is hearsay because it speaks to the truth of the matter asserted (whether Plaintiff was allowed to comment) but the author of the minutes has not been identified. The majority of the exhibit is simply irrelevant. |
| D2 | Roberts Rules of Order, 12th Edition | *Id.* | Defendants have already admitted that Robert's Rules of Order do not include an "on-topic" rule.[40]<br><br>Therefore, this exhibit has no relevance to any issue in the case. It would therefore be misleading and a waste of time. Defendants have also refused to identify excerpts that they believe to be relevant and offer this as the entire 800+ page book which poses an undue burden on Plaintiff. |
| D3 | *Louisiana Board of Ethics v. Daryl G. Purpera, in His Official Capacity as Legislative Auditor for the Louisiana Auditor's Office*, 321 So.3d. 401 | *Id.* | That case dealt with the appeal of a judgment that denied the Louisiana Legislative Auditor "access to statutorily privileged and confidential documents prepared and/or used by the Louisiana Board of Ethics."[41]<br><br>The case addressed the conflict between R.S. 42:1141.4(K) (which protects certain Ethics Board documents or records) and R.S. 24:513 |

---

[40] Rec. Doc. 48-4 at RFA 26 ("Robert's Rules of Order does not include an 'on topic' rule. . . . Admitted.");
[41] Louisiana Board of Ethics, supra, 321 So. 3d at 402.

| | | | |
|---|---|---|---|
| | | | (which enables the Auditors to conduct audits).<br><br>The case does not apply to the fact pattern here, and so any use of it would be misleading and potentially confusing of the issues. Furthermore, jurors are the finders of fact, not the deciders of questions of law. |
| D4 | Louisiana Attorney General Opinion 01-367 (Ops. La. Atty. Gen. Jan. 23, 2002) | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). Hearsay and violation of Order in Limine (Rec. Doc. 53) | This exhibit is a legal opinion by a person, Andrew Benton, not identified as an expert in this case. Nor is Mr. Benton identified as a witness by any party.<br><br>Thus, introducing his out-of-court opinion into evidence would be violate rules of hearsay and rules for the designation of experts.<br><br>It is furthermore irrelevant: there is no indication that any Defendant was aware of this opinion on November 28, 2023.<br><br>But even if they were, and even if they relied on this opinion, then it should still be excluded because this Court already excluded any evidence relating to an advice of counsel defense.[42] |
| D5 | Louisiana Attorney General Opinion 01-394 (Ops. La. Atty. Gen. Nov. 8, 2001) | *Id.* | This exhibit is a legal opinion by a person, Barbara Rutledge, not identified as an expert in this case. Nor is Ms. Rutledge identified as a witness by any party.<br><br>Thus, introducing her out-of-court opinion into evidence would be violate rules of hearsay and rules for the designation of experts.<br><br>It is furthermore irrelevant: there is no indication that any Defendant was aware of this opinion on November 28, 2023.<br><br>But even if they were, and even if they relied |

---

[42] Rec. Doc. 53.

| | | | |
|---|---|---|---|
| | | | on this opinion, then it should still be excluded because this Court already excluded any evidence relating to an advice of counsel defense.[43] |
| D6 | Louisiana Attorney General Opinion 04-0107 (Ops. La. Atty. Gen. Apr. 27, 2004) | *Id.* | This exhibit is a legal opinion by a person, Charles Braud, not identified as an expert in this case. Nor is Mr. Braud identified as a witness by any party.<br><br>Thus, introducing his out-of-court opinion into evidence would be violate rules of hearsay and rules for the designation of experts.<br><br>It is furthermore irrelevant: there is no indication that any Defendant was aware of this opinion on November 28, 2023.<br><br>But even if they were, and even if they relied on this opinion, then it should still be excluded because this Court already excluded any evidence relating to an advice of counsel defense.[44] |
| D7 | Official Proceedings of St. John the Baptist Parish Council State of Louisiana, Taken at its First Meeting of its Second Term, Held on Monday, January 11, 1988 | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). | These minutes indicate that the Parish adopted Robert's Rules of Order for meetings.<br><br>But Defendants have already admitted that Robert's Rules of Order do not include an "on-topic" rule.[45]<br><br>Therefore, this exhibit has no relevance to any issue in the case. It would therefore be misleading and a waste of time. |
| D8 | November 7, 2023 Letter from Louisiana Board of Ethics (Carolyn Landry) to Jaclyn Hotard | Relevance (Fed. R. Evid. 402). Misleading; undue prejudice; confusion of issues; waste of time (Fed. R. Evid. 403). Hearsay and violation of Order in | This exhibit is a letter from the Ethics Board to Jaclyn Hotard marked "confidential."<br><br>Defendants appear to intend to use this to argue that everyone had to keep that information confidential, including Plaintiff.<br><br>But that is incorrect. The marking of the |

---

[43] Rec. Doc. 53.
[44] Rec. Doc. 53.
[45] Rec. Doc. 48-4 at RFA 26 ("Robert's Rules of Order does not include an 'on topic' rule. . . . Admitted.");

| | | Limine (Rec. Doc. 53). | document means that "the Board of Ethics may not be able to talk about it," but it does *not* mean that it prohibits "some third party like the person who filed the complaint from talking about it."[46]<br><br>Thus, Defendants seek to use this exhibit for an explicitly misleading purpose. |
|---|---|---|---|
| D9 | February 2, 2024 Letter from Louisiana Board of Ethics (Shannon McLean) to Jaclyn Hotard | *Id.* | *Id.* |
| D10 | Louisiana Board of Ethics Notice of Confidentiality | *Id.* | *Id.* |
| D11 | E-mail exchange between Jaclyn Hotard and Louisiana Board of Ethics, November 17, 2023-November 27, 2023 | *Id.* | This exhibit is email correspondence between the Ethics Board to Jaclyn Hotard that refers to a "confidential investigation."<br><br>Defendants appear to intend to use this to argue that everyone had to keep that investigation confidential, including Plaintiff.<br><br>But that is incorrect. A lawyer from the Board of Ethics testified:<br><br>Q. Okay, and Ms. Allen refers to a confidential investigation, correct?<br>A. Yes.<br>Q. That means that members and employees of the Board of Ethics are restricted from speaking about an investigation, correct?<br>A. Correct.<br>Q. It doesn't mean that some third party |

---

[46] See Deposition of Mallory Guillot, attorney for the Board of Ethics, at 15:13-16:2

Q.    Okay, and do you see that I'm looking at Page 24 of "Exhibit ZO." You see that this is a letter from the Board of Ethics to Ms. Hotard?
A.    Yes.
Q.    And this is also -- there's the word, "Confidential" on it?
A.    Yes.
Q.    And again, that "Confidential" means that the Board of Ethics may not be able to talk about it, but it does -- it's not prohibiting some third party like the person who filed the complaint from talking about it, agreed?
A.    Yes.

| | | | like the person who filed the ethics complaint is prohibited from speaking about it, agreed?<br>A. Correct.[47]<br><br>Thus, Defendants seek to use this exhibit for an explicitly misleading purpose. |
|---|---|---|---|
| D12 | September 10, 2024 Letter from Louisiana Board of Ethics (Mallory Guillot) to Jaclyn Hotard | *Id.* | *Id.* |
| D13 | Social Media Postings (Facebook, Instagram, X-formerly known as Twitter) of Joyceia Banner | Relevance (Fed. R. Evid. 402).<br><br>Not produced in discovery; produced to Plaintiff for the first time on December 23, 2024. | These are three social media posts by Joy Banner. In one, she discusses how Defendant Hotard is being investigated by the Board of Ethics.<br><br>In the other two, she posts articles about Defendants' threats, without comment.<br><br>It is unclear how these posts are relevant to any claim or defense. And in any case, they were produced only a few weeks before trial, long after discovery closed. They were not identified in initial or supplemental disclosures, nor identified in interrogatory or RFP responses. They should be excluded because Defendants completely failed to follow the Federal Rules of Civil Procedure's requirements for disclosure of evidence. |

### D.    Briefing on Jury Instructions and Jury Interrogatories

Regarding Plaintiff's proposed jury instructions, Plaintiff used the jury instructions from *Howard v. J&B Hauling, LLC*, 22-cv-993-NJB-MBN (Oct. 23, 2024) for format. Most instructions were drawn from the Fifth Circuit Pattern Jury Instructions.

Two First Amendment jury charges were drafted based on this Court's ruling on the Motion to Dismiss.[48] An Open Meetings Law jury charge was drafted based on the text of the statute and

---

[47] Mallory Guillot Dep. at 14:12-23.
[48] Rec. Doc. 25.

caselaw. And a jury charge about the Parish's *Monell* liability was drafted by taking a pattern jury instruction and modifying it for Plaintiff's "action of parish policymakers themselves" *Monell* theory.

Regarding Plaintiff's verdict form, the proposed form is straightforward. It asks four questions about liability and two about damages. The liability questions relate to (1) Plaintiff's First Amendment retaliation theory, (2) Plaintiff's Viewpoint Discrimination theory, and (3) Plaintiff's Open Meetings Law claim. The two damages questions relate to compensatory damages and punitive damages.[49] The Open Meetings Law question is placed at the end of the form (after damages) because damages are not among the remedies for an Open Meetings Law violation.[50] The final question (about whether Defendants knowingly and willfully participated in a meeting conducted in violation of the Open Meetings Law) is asked so that the Court will know whether to assess the civil penalty of R.S. 42:28.

**E.    Information About Witnesses**

In reviewing this Court's directives, Plaintiff's counsel noticed that they omitted from the PTO the expected testimony for each will-call witness. Plaintiff now provides that information here for her witnesses:

    a.  **Joy Banner.** Dr. Banner is the plaintiff in this case, and will testify as to how she reasonably perceived Defendants' actions to be threats, how she did not finish what she intended to say because of those threats, and how she experienced ongoing distress following the threats.

    b.  **Michael Wright.** Mr. Wright is a defendant in the case, and will testify as to why he gaveled Dr. Banner quiet and read to her from a criminal statute during public comment, something he has never done before.

---

[49] Punitive damages are available for a Section 1983 claim. *See Fetty v. La. State Bd. of Private Sec. Examiners,* 611 F. Supp. 3d 230, 2020 U.S. Dist. LEXIS 17808, 2020 WL 520026, at *14 (M.D. La. Jan. 31, 2020) (under §1983, punitive damages may be awarded "when the defendant's individual conduct 'is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights.'") (quoting *Bouchereau v. Gautreaux*, No. 14-805, 2015 U.S. Dist. LEXIS 121225, 2015 WL 5321285, at *13 (M.D. La. Sept. 11, 2015) (*quoting Williams v. Kaufman Cty*., 352 F.3d 994, 1015 (5th Cir. 2003) (citation omitted)).
[50] R.S. 42:26.

c. **Jaclyn Hotard**. Ms. Hotard is a defendant in the case, and will testify as to why she interrupted Dr. Banner and directed Wright to "stop this comment." She will testify as to her knowledge of her husband and mother-in-law's ownership of an LLC that owned land running directly through the grain elevator project, which is relevant to her motivation in trying to stop Dr. Banner from speaking on that topic.

d. **Jo Banner**. Ms. Banner is the twin sister of Plaintiff, and will testify about how she perceived Hotard and Wright's statements (which is relevant to whether they were "reasonably understood" to be a coercive threat), how she did not speak due to the threats, and about her observations of the manifestations of Dr. Banner's distress.

e. **Kim Mathieu.** Mr. Mathieu was a member of the public present at the meeting, and will testify about how he perceived Hotard and Wright's statements (which is relevant to whether they were "reasonably understood" to be a coercive threat) and how he did not speak due to the threats.

f. **Tonia Schnyder**. Ms. Schnyder was a member of the Parish council present at the meeting, and will testify about how she perceived Hotard and Wright's statements (which is relevant to whether they were "reasonably understood" to be a coercive threat), and about Defendants' history of silencing speech.

g. **Darla Gaudet.** Ms. Gaudet is the mother-in-law of Defendant Hotard. Her LLC (co-owned by a trust benefitting Hotard's husband) owned land running directly through the area of a $800 million project Hotard was promoting in her role as Parish President. Ms. Gaudet will testify about that, along with her extensive text messages with Hotard about Joy Banner.

h. **Mallory Guillot.** Ms. Guillot is an attorney for the Ethics Board. She was originally listed as a witness by Defendants. She will be called to testify to rebut Defendants' false suggestion that the word "confidential" on Ethics Board correspondence means that no one could discuss the subject of the investigation.

i. **William Banner.** Mr. Banner is the father of Plaintiff, and will testify about how he perceived Hotard and Wright's statements (which is relevant to whether they were "reasonably understood" to be a coercive threat), how he did not speak due to the threats, and about his observations of the manifestations of Dr. Banner's distress. Plaintiff will call either William or Harriet Banner, but not both.

j. **Harriett Banner**. Ms. Banner is the mother of Plaintiff, and will testify about how she perceived Hotard and Wright's statements (which is relevant to whether they were "reasonably understood" to be a coercive threat), how he did not speak due to the threats, and about her observations of the manifestations of Dr. Banner's distress. Plaintiff will call either William or Harriet Banner, but not both.

Respectfully submitted,

/s/ *William Most*
Dave Lanser (La. Bar No. 37764)
William Most (La. Bar No. 36914)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 533-4521
F: (504) 414-6400
Email: david.lanser@gmail.com
         williammost@gmail.com

*Attorneys for Plaintiff Joy Banner, Ph.D*