```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3   ****************************************************************
     JOY BANNER                               CIVIL ACTION
 4                                            NO. 23-7296
     VERSUS                                   SECTION "G"
 5                                            JANUARY 29, 2025
     MICHAEL WRIGHT, ET AL
 6   ****************************************************************

 7

 8                    TRANSCRIPT OF JURY TRIAL DAY 3
           BEFORE THE HONORABLE CHIEF NANNETTE JOLIVETTE BROWN
 9                    UNITED STATES DISTRICT JUDGE

10

11   APPEARANCES:

12   FOR JOY BANNER:               William B. Most, Esq.
                                   David J. Lanser, Esq.
13                                 MOST & ASSOCIATES
                                   201 St. Charles Avenue
14                                 Suite 2500
                                   New Orleans, LA 70170
15

16

17   FOR DEFENDANTS:               Ike Spears, Esq.
                                   Joyce Sallah, Esq.
18                                 SPEARS & SPEARS
                                   909 Poydras Street
19                                 Suite 1825
                                   New Orleans, LA 70112
20

21

22   Official Court Reporter:      Alexis A. Vice, RPR, CRR
                                   500 Poydras Street, HB-275
23                                 New Orleans, LA  70130
                                   Alexis_Vice@laed.uscourts.gov
24

25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.


                          OFFICIAL TRANSCRIPT
```

1                              **INDEX**

2                                                          PAGE

3

4

5    Closing Argument by Mr. Most                        410

6    Closing Argument by Mr. Spears                      420

7    Rebuttal Closing Argument by Mr. Most               431

8    Jury Charge                                         433

9    Jury Verdict                                        448

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          OFFICIAL TRANSCRIPT

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                    (JANUARY 29, 2025)

 3                    (JURY TRIAL DAY 3)

 4

 5              (The Court was called to order.)

 6         THE COURT: Is there anything preliminary, or we can

 7  bring in the jury?

 8         MR. SPEARS: Nothing I'm aware of, Your Honor.

 9         THE COURT: I am aware that Juror No. 10 thinks he

10  might have gotten food poisoning, but he wants to stay.  So

11  we'll have a trash can for him.  He wants to finish.

12         All right, you can go ahead and bring in the jury.

13         MR. MOST: I'll reserve two minutes for rebuttal.

14         MR. SPEARS: The total is 20, Judge?

15         THE COURT: Yes.

16              (The jury was escorted into the courtroom.)

17         THE COURT: All right, everybody have a seat.

18         Ladies and gentlemen, we will now have closing

19  argument.

20         MR. MOST: All right.  Good morning, ladies and

21  gentlemen of the jury.  You have now listened to all the

22  evidence.  You've heard all the witnesses.  You've seen all the

23  exhibits.  You will have heard the arguments of counsel in a

24  few minutes, and now it's time for you to take the reigns

25  because we've been making arguments and showing you evidence,
```

OFFICIAL TRANSCRIPT

1  but you are the decision-makers, and today is the day when you

2  do that.

3         And the way you'll make those decisions is the judge

4  is going to give you what's called a verdict form which is a

5  piece of paper with a series of questions on it.  And you'll

6  fill out the questions and answer them as you determine things.

7  In this closing argument, I'll go through that form to sort of

8  explain the questions as I understand them and suggest the

9  answers that we think would be appropriate.

10        So the first question is about First Amendment

11 freedom of speech.  And the question will be:  Do you find by a

12 preponderance of the evidence, and the judge will explain to

13 you that doesn't mean beyond a reasonable doubt.  It just means

14 more likely than not, more than 50 percent.  So do you think

15 it's more likely than not that one or more Defendants

16 restricted Plaintiff's speech based on her viewpoint?

17        And when you're thinking through a viewpoint

18 restriction, think about the fact that Joy Banner was treated

19 differently than anyone else.  She was the only person who was

20 threatened with arrest, and she was also the only one to raise

21 the issue of Hotard's family business interests.  And so that

22 can be a possible explanation for why she was treated

23 differently because of the words she was saying and the

24 viewpoint she was expressing.

25        In fact, you heard Hotard and Wright admit, both of

OFFICIAL TRANSCRIPT

1  them, that they couldn't recall any other time that any chair

2  of the council had ever done this before in a combined 30-plus

3  years of government service between the two of them.

4          And you've heard Defendants' explanations for their

5  conduct, and I'm sure Mr. Spears will explain it further.  One

6  of their arguments is that Banner was off topic.  But

7  Dr. Banner was speaking on topic.  The agenda item was about

8  should we pay for private lawyers for these ethics issues, and

9  Dr. Banner was presenting an argument for no, we shouldn't.

10  Taxpayer money should not be spent on that.  And so she was

11  directly on topic.

12          Even if she was off topic, though, it wouldn't

13  matter.  You heard Chairman Wright admit they never adopted an

14  on-topic rule.  So to the extent that they were silencing her

15  for being off topic, they were punishing her for a violation of

16  a rule that does not exist.

17          And then they also argued at different times that

18  maybe she couldn't talk about ethics complaints.  But it's a

19  stipulated fact, that means agreed upon between the parties,

20  that in 2014 a federal judge in this courthouse determined that

21  the don't-talk-about-ethics-complaint law was invalid.

22          And I think it's also significant they have not

23  always even kept their story straight.  Sometimes they said she

24  was off topic; that's why we silenced and threatened her.

25  Sometimes they said it was about confidentiality.  They weren't

OFFICIAL TRANSCRIPT

```
 1   even consistent within their own testimony.
 2            And some things are confidential.  But we've learned,
 3   we learned from the Board of Ethics employee, that confidential
 4   doesn't mean that the person who filed an ethics complaint
 5   can't talk about it.
 6            And we know that Parish President Hotard, she
 7   silences viewpoints when she disagrees with them.  We saw this
 8   in her text messages.  She said -- when the newspaper published
 9   something she didn't like, she instructed her director of
10   communications to cancel all advertising with the newspaper.
11   So it's a pattern.  It's a pattern of when viewpoints are
12   expressed in St. John the Baptist Parish that the people in
13   power don't like, they use their official powers to shut that
14   speech down.  When it's the newspaper, they cancel advertising.
15   When it's someone making public comment, they gavel and quiet,
16   say, "Stop this comment," and then threaten them with a
17   criminal statute.
18            And so we would suggest that when it comes to this
19   question, you say "Yes" for Michael Wright, "Yes" for Jaclyn
20   Hotard.  And because you heard the testimony that they took
21   these actions in their official role as decision-makers for the
22   parish, we suggest that the parish itself is liable as well.
23   And you'll hear instructions from the judge about this.
24            So the second question is also about free speech.
25   This is a little different.  It's not so much about restricting
```

OFFICIAL TRANSCRIPT

1  a particular viewpoint.  It's a question about motivation.
2  Were the Defendants engaged in retaliation for what Dr. Banner
3  was saying?  And this comes down to what was the motivation
4  behind the actions that the Defendants took, and sometimes that
5  can be hard to tell.

6       But here, we have Jaclyn Hotard's private messages
7  with her mother-in-law where she said exactly how she feels.
8  She disclosed what was in her heart.  She said, "I hate these
9  people."  She called Dr. Banner a bitch.  She said even that
10  she wanted to choke Joy Banner.  And note that this is
11  October 16th.  This is 12 days before the meeting that we're
12  talking about.

13       Also, that day, Jaclyn Hotard said, "I'm still
14  steaming pissed.  I'm mad.  I told her ass anything, but to let
15  them say I violated the ethics code."  This is a clear
16  statement that she did not want people to say that she violated
17  the ethics code.  She said, "Anything, but to let them say I
18  violated the ethics code."  This is just 12 days before that
19  meeting.  So this is sort of a preview of her intention to
20  silence speech that she disagreed with or anyone who talked
21  about her violation of the ethics code.

22       And so I think a question in this case is:  Why did
23  Hotard care so much?  What caused her to get so worked up, so
24  triggered that she literally wanted to choke Joy Banner?
25  Because that is an extreme reaction.  And I think we learned,

OFFICIAL TRANSCRIPT

1    perhaps, what the answer was which is that there were secrets.

2          It was a secret that Jaclyn Hotard's own husband

3    would financially benefit from Hotard rezoning the land.  At

4    the time, Dr. Banner knew about the mother-in-law connection,

5    but nobody knew that Jaclyn Hotard's own husband was involved

6    as well.  The public didn't know that.  And you heard Darla

7    Gaudet, the mother-in-law, testify that was a secret.

8          The other secret was that Jaclyn Hotard withheld from

9    the council itself that the ethics lawyer she was sponsoring an

10   agenda item to pay for were going to be for Hotard herself.

11   And it is vitally important in a democracy for decision-makers

12   to know what they're voting on.  You heard Chairman Wright say

13   that.  You heard Tonia Schnyder say that.  When you're on the

14   council, you have to know what you're voting for before you

15   vote.  But Jaclyn Hotard did not disclose the key facts.

16         And that's why she took action to silence Dr. Banner

17   because Dr. Banner was saying the truth that no one on the

18   council knew that this agenda item was going to pay for Jaclyn

19   Hotard's lawyers herself.  And that's why it's not just okay

20   that Dr. Banner made a public comment.  It was really vital to

21   inform the council about what they were voting on before they

22   took action.  A council needs to know what it's voting on, and

23   so Dr. Banner's comment was vital.  So that's Jaclyn Hotard.

24         Let's talk about Michael Wright and in terms of

25   retaliation.  We saw that he gaveled Joy Banner quiet,

OFFICIAL TRANSCRIPT

1  literally silenced her.  And then he read to her from this
2  statute that has threats of a fine up to $2,000 and
3  imprisonment for up to a year.  And we also saw that this same
4  piece of paper had the word "unconstitutional" at the top.

5        And remember what his explanation was.  He explained
6  that he read this part, the top line, and then his testimony
7  was that he did not read the very next line.  And I think it's
8  up to you to decide how credible that is.  And he certainly
9  admitted that he did not disclose to anyone in the room that
10  when he was reading from this piece of paper, it had the word
11  "unconstitutional" at the top.

12        So when it comes to retaliation, we suggest that you
13  say "Yes" for Wright, "Yes" for Hotard, and because they were
14  acting in their role as parish decision-makers, "Yes" for the
15  parish.

16        So the next question is about money.  Because as a
17  jury, you're not able to fire anyone.  You're not able to
18  warn -- you're not able to, like, issue a statement.  What you
19  can do is award money.  And so this is a tough question.  I'm
20  not going to sugarcoat it.  This, I think, is a difficult
21  question without a right answer because they did not break
22  Dr. Banner's bones.  They did not shoot her.  They did not put
23  her in prison, but they did change her.

24        When someone in power threatens you with imprisonment
25  and it's not an empty threat because there's an armed guard in

OFFICIAL TRANSCRIPT

1  the room, that has an effect.  And so when you evaluate what's
2  an appropriate amount of compensatory damages, that means
3  compensation, I think the questions to ask are:  What did it
4  feel like in the moment for Joy to be threatened with
5  imprisonment?
6          Think back to the testimony of her mother who
7  testified about the changes in her daughter that she has
8  witnessed since this.  And also, remember that when you feel
9  something, it's not just in your head.  It's in your body as
10 well.  And so Dr. Banner has found that when she's gone to
11 meetings subsequently, when she's just sitting in a chair, she
12 had so much anxiety that her heart rate went above 120 beats
13 per minute as a sitting heart rate.
14         And so when it comes to compensatory damages, how
15 much compensation for what she went through, we suggest an
16 appropriate number would be 100,000 for each of the Defendants.
17 And then you'll do a total of what you add up which we suggest
18 300,000 because of what happened to her in the past, what she
19 went through, and also how it's going to affect her going
20 forward into the future.  So that's the money that compensates
21 her for what she went through.
22         You have the option as a jury to also award, if you
23 decide to, punitive damages.  This is Question 4.  And punitive
24 damages are different.  Compensatory damages are what's fair
25 compensation for what she went through.  Punitive damages, the

OFFICIAL TRANSCRIPT

1 judge will explain to you, serve to punish a defendant for

2 malicious or reckless conduct, and by doing so, deter others

3 from engaging in similar conduct in the future.

4           And this is where you, as a jury, get to send a

5 message.  You get to send a message that censorship is

6 un-American.  You get to send a message that the people who

7 fought for our freedoms fought for the freedom to think as you

8 will and speak as you think.  That is the First Amendment.  You

9 might agree with Joy Banner.  You might disagree with her.  But

10 this case doesn't turn on whether you agree with her or not.

11 This case is about whether we are going to protect her

12 constitutional rights which begin in the Bill of Rights with

13 freedom of speech, freedom of religion, right to bear arms, and

14 so on.

15           So tell government officials, send them a message.

16 Censorship is un-American.  The next time a government official

17 in America decides that they're going to threaten someone for

18 telling the truth about public corruption, they should think

19 twice, and you, as the jury, have the power to send that

20 message.  And we suggest that the way to send that message is

21 to award 1 million in punitive damages per Defendant so that

22 everyone knows this is unacceptable, and if it happens again,

23 there will be consequences.  So those are the constitutional

24 claims.

25           The next couple of questions are about the Open

OFFICIAL TRANSCRIPT

1  Meetings Law, and remember that you'll hear from the judge that

2  the Open Meetings Law requires public bodies to allow public

3  comment period.  And our contention is they did not allow a

4  true public comment period because when someone tried to give

5  public comment, they interrupted her over and over and over

6  again, gaveled her quiet, and then threatened her with

7  imprisonment.  That's not true public comment.

8         Defendants have argued that they complied with other

9  parts of the Open Meetings Law, and they probably did.  They

10  posted the agenda 24 hours earlier.  They allowed people into

11  the room.  They recorded the meeting.  That's all undisputed.

12  They complied with those things.  But you don't get credit for

13  the laws you didn't violate.  We're not here about whether they

14  allowed recording.  We're here about whether they allowed

15  public comment.

16         So we suggest that for the Open Meetings Law

17  question, you say "Yes" to Michael Wright, "Yes" to Jaclyn

18  Hotard, and because they were doing it as decision-makers for

19  the parish, the parish as well.

20         Then the almost final question is whether these two

21  individual Defendants knowingly and willfully participated in

22  the meeting conducted in violation of the Open Meetings Law,

23  and we suggest that the evidence you've seen from the text

24  messages, to the "unconstitutional" on the piece of paper,

25  suggest that they knowingly and willfully participated.  "Yes"

OFFICIAL TRANSCRIPT

1  to both of them.

2          And then for this, there's a limit on how much you

3  can award.  It's up to $500 per violation per Defendant.  So we

4  suggest you put in 500 for each.  And then that will be it.

5  The foreperson, who you decide, will sign and date it, and that

6  will be it.

7          And I really think this is so important because not

8  every country in the world has juries of the community for

9  civil trials.  Only a few countries in the world do.  And you,

10 as a jury, represent the community, and you get to decide that

11 free speech is a cornerstone of our society.  It's one of the

12 things -- free speech is one of the things that makes us

13 different from other countries.

14         We have the First Amendment.  But unless the First

15 Amendment is enforced and there's consequences for violating

16 it, then it's just words on a piece of paper.  Rights become

17 rights when we enforce them.  Rights are protected when we

18 enforce them.  And today, you are an integral part of that

19 process.

20         And we thank you for your time all the way through

21 this, and we know that you will take this seriously, and we

22 appreciate your consideration.  Thank you.

23         **MR. SPEARS:** Your Honor, may it please the Court,

24 members of the jury.  On behalf of Parish President Jaclyn

25 Hotard, Councilman Michael Wright, the Parish of St. John the

OFFICIAL TRANSCRIPT

1  Baptist, our legal team, and myself, I want to thank you for
2  your time, for your attention, and for the seriousness that you
3  have given to this litigation.

4          I told you at the start of this trial that Michael
5  Wright and Jaclyn Hotard are dedicated public officials.  They
6  have served the people of St. John the Baptist Parish
7  exceptionally well with integrity, with honesty, and without
8  scandal for a combined 30 years.  They've worked extremely hard
9  to earn the trust of the people they serve which is why they've
10 been elected, re-elected, and re-elected again.

11         In my opening statement, I reminded you that the
12 First Amendment right to freedom of speech is not without
13 limits.  It's not without restrictions.  We live in a society
14 that has laws and rules which deem certain things to be
15 privileged and confidential.

16         I reminded you that we know what some of those things
17 are from our own basic personal lives.  We know that our
18 banking and financial records, they're confidential.  Your
19 medical records and your health status, that's confidential.
20 We know that just because I or someone working in an office
21 where you may actually be a client or a patient has access to
22 your health and medical records or someone working in your bank
23 or financial institution has access to your Social Security
24 number and your financial records, their First Amendment right
25 does not allow them to publicly disclose this information.

OFFICIAL TRANSCRIPT

 1          After our closing arguments, Judge Brown is going to

 2    instruct you on the law of First Amendment that you must

 3    follow.  She's going to tell you in one of her instructions the

 4    following.  "In terms of First Amendment" -- and I'll -- let me

 5    put it on the screen; so I can read it.  And I apologize.

 6          One of her instructions that she's going to give you

 7    is going to read as follows, "In terms of First Amendment

 8    analysis, a city or parish council meeting is a limited public

 9    forum.  Such a forum -- in such a forum," excuse me, "a

10    government may apply reasonable time, place, and matter

11    restrictions."  Keep in mind, in a limited government forum,

12    you can place time and manner restrictions to speech.

13          "So long as these restrictions, No. 1, do not

14    discriminate against speech on the basis of viewpoint, and

15    No. 2 is reasonable in light of the purpose served by the

16    forum.  Viewpoint discrimination exists when the specific

17    motivating ideology, opinion, or perspective of the speaker is

18    the rationale for the restriction.  If Defendants engaged in

19    coercive threats aimed at punishing or suppressing disfavored

20    speech, then they violated the First Amendment."

21          Well, you saw the video.  The video is in evidence.

22    I'm going to ask you to look at it again and maybe again.

23    There were multiple people who opposed the agenda item.  At

24    least one person was very vocal and very hostile toward

25    President Hotard and Chairman Wright.  No one was arrested.  No

OFFICIAL TRANSCRIPT

1  one was shut down unless they were off topic or unless they

2  were speaking about something that was privileged and

3  confidential.

4         Now let's take a moment to go through the testimony

5  that you heard from the various witnesses.  I'll start with the

6  Plaintiff Joy Banner.  And again, watch the videotape and

7  determine if she got to say everything she wanted to say.

8  Because when I questioned her, I asked her specifically what is

9  it that you came to say that you didn't get to say.  And her

10 response was, "I didn't get to pass out my pamphlets and

11 display my poster."

12        So everything she wanted to say about Jaclyn Hotard

13 being under an ethics investigation, about Jaclyn Hotard's

14 mother benefiting from a land deal, about Jaclyn Hotard signing

15 a zoning permit that changed her mother-in-law's land from

16 residential to industrial, she said all of that and a whole lot

17 more in the five-plus minutes that she spoke; even though the

18 time limit is three.  Please ask for permission to review the

19 videotape.

20        What else did we learn from Joy Banner?  That she

21 posted the confidential letter on her Facebook page in an

22 effort to embarrass President Hotard.  And she says, although

23 she has a Ph.D., she doesn't understand what "confidential"

24 means.

25        Now understand and think about what Attorney Most is

OFFICIAL TRANSCRIPT

1  telling you.  He's saying that confidential that's stamped on
2  all of that mail sent out by the Board of Ethics only applies
3  to the employees of the Board.  Well, if I'm working at the
4  Board and I know everything I do is confidential, why do I have
5  to stamp "confidential" and stamp confidentiality statutes on
6  letters I'm sending to other people?  Think about common sense.
7        If I'm sending you a letter stamped "confidential,"
8  it has to mean something.  So Joy Banner knew she was violating
9  the spirit of the ethics laws by posting the complaint she made
10 against Jaclyn Hotard on her Facebook page.
11        What else did she put on the Facebook page?  She
12 said, "Come to the meeting tomorrow because Hotard has a
13 personal attorney, but has a resolution on tomorrow's agenda to
14 make residents pay for her representation."  Well, you heard
15 the testimony of R. Gray Sexton.  He and his law firm were the
16 lawyers being hired.  He said he's never represented Jaclyn
17 Hotard personally.  That was a misstatement.  That was untrue.
18 But she posted it on her public Facebook page that Gray Sexton
19 was Hotard's personal lawyer and she was trying to get the
20 parish to pay for her personal attorney.
21        She admitted -- and this is important, because part
22 of what you're going to learn is there's a culture of
23 disruption at these meetings.  And she admitted that even after
24 the meeting she's suing about, which happened November 28 of
25 2023, she came, presented, and spoke at, at least, two other

OFFICIAL TRANSCRIPT

 1  parish council meetings, and she had to be removed from a

 2  planning commission meeting because she was disruptive.  But

 3  again, she wants us to reward this conduct with $2 million

 4  plus, I think it was $2,300,000.  She wants to be rewarded for

 5  being a disruptive citizen.

 6          The judge is going to tell you that although you may

 7  feel sorry and sympathize with Ms. Banner, she's going to read

 8  a jury instruction that says that you cannot.  "Do not let

 9  bias, prejudice, or sympathy play any role in your

10  deliberations.  A government entity and all other persons are

11  equal before the law and must be treated as equals in the court

12  of justice."

13          So you may feel sorry for her.  You may even agree

14  with some of the things that she advocates, but sympathy should

15  play no role in awarding her money.  And if you conclude that

16  Jaclyn Hotard and Michael Wright did not violate her rights,

17  then the appropriate award is zero.  The appropriate award is

18  zero.

19          We heard from Joy Banner's mother, Harriet Banner,

20  who simply said that her daughter was distraught.  Again,

21  you'll see the video.  You'll see that after she spoke, she

22  remained in the chambers.  After she spoke, she came to comfort

23  Shondrell Perrilloux and removed her from the podium.  And

24  you'll see the expression on her face as she walks to and from

25  the podium.

OFFICIAL TRANSCRIPT

```
 1            Harriet Banner reminded us that nobody told her that
 2   she could not speak.  Nobody threatened her with arrest, and
 3   she saw other people speak after her daughter spoke.  So she
 4   had an opportunity to speak if she wanted to because other
 5   people spoke, at least three.
 6            Next, we heard from Tonia Schnyder who was the former
 7   council lady, council member, who apparently had some axe to
 8   grind because both Michael Wright and Jaclyn Hotard did not
 9   support her when she ran for re-election.  In fact, they
10   supported her opponent, and her opponent won.
11            But even in the midst of her testimony, she indicated
12   several things.  No. 1, she follows Joy Banner in those posts,
13   and she reposts or re-tweets, or whatever the proper term is,
14   these posts from time to time.  She indicated that in all of
15   the meetings that she attended -- and this is important because
16   she was at the November 28th meeting.  In all of the meetings
17   that she attended as a member of the council, the Louisiana
18   Open Meetings Law was followed.  All of the meetings she
19   attended and she was at the November 28 meeting, the Louisiana
20   Open Meetings Law was followed.
21            Then we heard from Jaclyn Hotard's mother-in-law,
22   Darla Gaudet.  She said several things that are noteworthy.
23   One, she said that she, her husband, her brother inherited a
24   business from her father when he died long before her son
25   married Jaclyn Hotard, long before Greenfield came to St. John.
```

OFFICIAL TRANSCRIPT

1    She and her family were successful in business long before her
2    son married Jaclyn Hotard, long before Greenfield came to town.
3            Her tracts of land and the Greenfield tracts of land
4    had been zoned industrial going back to 1990.  But because of
5    litigation brought by Joy Banner and others, the judge
6    determined that a step was missed somewhere in that zoning
7    process in 1990, and everybody's land that they had invested in
8    as industrial was reverted back to residential, including,
9    Ms. Gaudet's land.
10           She also told us that her son, Jaclyn Hotard's
11   husband, has a one-third of 25 percent beneficiary interest.
12   That's 8.3 percent beneficiary interest in a trust that owns
13   part of the land, and he only gets to see any of that when she
14   dies.  That was part of the estate planning, when she dies.
15   It's his separate property because he had it long before he and
16   Jaclyn started dating, long before they got married.
17           It's important to note that when the council decided
18   to rezone the Greenfield land to try to keep this important
19   economic development project on track, they didn't include
20   anybody else's land.  There were lots of properties around
21   Greenfield that lost their industrial status, but the only
22   property that the permit that Joy Banner complained about in
23   her ethics complaint that was being rezoned was property for
24   Greenfield in an effort to keep the grain elevator project on
25   track.  All of the other properties until this day are still

OFFICIAL TRANSCRIPT

1  zoned residential.

2         Would she benefit if Greenfield became a reality?
3  Probably so.  But was that the motivation for Jaclyn Hotard,
4  Michael Wright, the governor, lieutenant governor, and dozens
5  of other people supporting the Greenfield project?  Probably
6  not.  It was the tax revenue.  It was the good-paying jobs.  It
7  was the opportunity to bring something meaningful to that
8  portion of St. John the Baptist Parish.

9         We then heard from Jackie Landeche.  She is the
10 secretary to the council, 17 years as secretary and 2 years
11 acting secretary.  What did she tell us?  She tells us that the
12 council has adopted a three-minute rule.  She tells us that the
13 council has adopted Robert's Rules of Order.  She tells us that
14 the Council follows an on-topic rule, and it's on the agenda.
15 It's on the agenda, and it's on the bulletin board as people
16 are speaking.  Most importantly, she tells us that it's her job
17 to make sure that the council meetings follow the Louisiana
18 Open Meetings Law.

19        So what does she do?  She posts the notices more than
20 24 hours in advance.  She provides the agenda more than
21 24 hours in advance.  She makes sure that the meeting is held
22 in an open place open to the public.  She makes sure that
23 there's a recording of the meetings.  She makes sure that
24 before the council votes, there is a public comment period, and
25 she makes sure that minutes are taken of the meeting.  Those

OFFICIAL TRANSCRIPT

1  are the steps required to have a legal meeting, a legal public
2  meeting under Louisiana Open Meetings Law.  None of those steps
3  were violated.

4          We then heard from Carolyn Landry.  Carolyn Landry,
5  as you recall, wrote the first letter to Jaclyn Hotard.  She is
6  from the Board of Ethics.  And in her letter to Jaclyn Hotard
7  dated, I can't see the date, November 7th, it indicates that
8  it is confidential.  In the body of the letter, it indicates
9  it's a private investigation.  So if the Board of Ethics is
10 sending out mail stamped "confidential" and telling the person
11 who is the subject of the complaint that this is a private
12 investigation, they certainly don't expect that someone would
13 get ahold of this letter and post it on Facebook.

14         The other thing Carolyn Landry taught us is that all
15 of the mail going out that she's aware of is also stamped
16 "confidential."

17         Then we heard from Mallory Guillot.  Mallory Guillot
18 sent the final letter.  That's the letter of September 10, 2020
19 (sic).  That letter too is stamped "confidential."  That letter
20 says that the Board of Ethics considered a confidential
21 investigation and that the matter was closed and no violation
22 of the Code of Governmental Ethics was found.  These things are
23 important.  These things are extremely important.  Again,
24 confidential letter.

25         All of the correspondence sent out by Mallory Guillot

OFFICIAL TRANSCRIPT

1   is stamped "confidential."  But Mr. Most says that

2   "confidential" doesn't apply to anybody except for the

3   employees at the Ethics Board.  Just use your common sense and

4   think of why that defies logic.  If it only applies to me, I

5   don't have to stamp it on all of the mail that I send out to

6   people I correspond with.

7          We heard from R. Gray Sexton and his counterpart

8   Alesia Ardoin who we stipulated would testify identical to him.

9   He said he's hired by St. John and other parishes to handle

10  ethics matters.  This is the type of work that he performs.

11  That he has never personally represented Jaclyn Hotard.  That

12  because he was her attorney, he got copies of all of the mail

13  involved in her ethics investigation.  And each and every piece

14  of mail that he got was stamped "confidential," and some of it

15  also had the specific confidentiality statute on it.

16         Finally, we heard from Michael Wright and Jaclyn

17  Hotard.  Let's start with Councilman Wright, nine years on the

18  council without scandal.  Part of his job is to maintain order

19  and decorum.  You saw that meeting.  The meeting got so out of

20  hand he had to take a recess, but that's part of his job, to

21  maintain order and decorum.

22         You saw at least one of the speakers personally

23  attack and insult him.  But that's part of his job.  He says he

24  has to have thick skin.  He reminded us that not only do we

25  have an on-topic rule; although there's no formal adoption

OFFICIAL TRANSCRIPT

1  according to Mr. Most.  If you don't keep people on topic, they
2  can come up and talk about any and everything, and the meetings
3  could run all night.  There's a three-minute rule, and there's
4  adoption of Robert's Rules of Order.

5         **DEPUTY CLERK:** One minute, Counsel.

6         **MR. SPEARS:** One minute?  Oh, Lord.

7         Judge, can I ask for five?

8         **THE COURT:** (Shakes head.)

9         **MR. SPEARS:** At the conclusion of this case, you will
10  be asked to return a verdict, and I'm telling you the only
11  responsible verdict is a verdict in favor of Michael Wright,
12  Jaclyn Hotard, and the Parish of St. John.

13         If you want to send a message, send a message that
14  we're going to end these frivolous lawsuits.  That's the
15  message you should send, lawsuits from people looking for media
16  attention and for bigger social media followings so that they
17  can be social media influencers.

18         I thank you for your time and your attention, and I
19  hope after careful deliberations, you award a verdict in favor
20  of Michael, Jaclyn, and the Parish of St. John.

21         **THE COURT:** Thank you.

22         **MR. MOST:** Mr. Spears is right, some things are
23  confidential, like your health records.  But you know what's
24  not one of the things that is confidential that you can't talk
25  about?  When public officials have secret financial interests

OFFICIAL TRANSCRIPT

1  in what they're voting on, that's not one of them.  You don't

2  have to take my word for it.  We heard from an employee of the

3  Board of Ethics herself, Ms. Guillot.  She said, "When we stamp

4  confidential on things, it means we keep it confidential.  It

5  does not mean that other people, like the person who filed the

6  complaint, have to keep it secret."

7         And that's a critical pillar of American democracy is

8  that you have a right to criticize the government.  You have a

9  right to say what you think, and you have a right to say, "I

10  think what they're doing is wrong."

11         And that's one reason why, you know, you'll hear from

12  the judge, it's a stipulated fact, that the law that said you

13  can't talk about ethics complaints was declared

14  unconstitutional more than a decade ago.

15         You know, we also heard Mr. Spears say there were

16  disruptive people in the meeting, and he's right.  Yeah, the

17  person who spoke after Ms. Banner was a lot more disruptive.

18  She was insulting.  She was loud.  She was disruptive to the

19  meeting.  But no one threatened her with arrest, right.  That

20  only happened to Joy Banner.

21         And so the question for motivation is what was

22  different between the two of them.  Why was Dr. Banner

23  threatened and not Ms. Perrilloux?  It's because Dr. Banner was

24  talking about the personal potential corruption of parish

25  officials.  That's what they wanted to silence.  That's what

OFFICIAL TRANSCRIPT

1  they needed to threaten to keep someone from talking about.

2          And they may not have had scandals, public scandals

3  in the past, but that could be this is just the first time they

4  got caught.  Thank you.

5          **THE COURT:** All right, thank you.

6          Ladies and gentlemen of the jury, I'll now instruct

7  you on the law.  You must follow the law as I instruct you

8  whether you agree with it or not.

9          We'll also publish it here; so you can follow along.

10         Members of the jury, it is my duty and responsibility

11 to instruct you on the law you are to apply in this case.  The

12 law contained in these instructions is the only law you may

13 follow.  It is your duty to follow what I instruct you the law

14 is, regardless of any opinion you might have as to what the law

15 ought to be.

16         If I have given you the impression during the trial

17 that I favor either party, you must disregard that impression.

18 If I have given you any impression during the trial that I have

19 an opinion about the facts of this case, you must disregard

20 that impression.

21         You are the sole judges of the facts of this case.

22 Other than my instructions to you on the law, you should

23 disregard anything I may have said or done during the trial in

24 arriving at your verdict because it was not my intention.

25         You should consider all the instructions about the

OFFICIAL TRANSCRIPT

1  law as a whole and regard each instruction in light of the

2  others, without isolating a particular statement or paragraph.

3  So consider all of these as a whole.  Read them together.

4          The testimony of the witnesses and other exhibits

5  introduced by the parties constitute the evidence.  The

6  statements of counsel are not evidence.  They are only

7  argument.  It is important for you to distinguish between the

8  arguments of counsel and the evidence on which those arguments

9  rest.  What the lawyers say or do is not evidence.  You may,

10 however, consider their arguments in light of the evidence that

11 has been admitted and determine whether the evidence admitted

12 in this trial supports the arguments.

13         You must determine the facts from all the testimony

14 that you have heard and the other evidence submitted.  You are

15 the judges of the facts; but in finding those facts, you must

16 apply the law as I instruct you.

17         You are required by law to decide this case in a

18 fair, impartial, and unbiased manner, based entirely on the law

19 and on the evidence presented to you in this courtroom.  You

20 may not be influenced by passion, prejudice, or sympathy you

21 might have for the Plaintiff or the Defendants in arriving at

22 your verdict.

23         Plaintiff Joy Banner has the burden of proving her

24 case by a preponderance of the evidence.  To establish by a

25 preponderance of the evidence means to prove something is more

OFFICIAL TRANSCRIPT

1   likely so than not so.  If you find Plaintiff has failed to
2   prove any element of her claim by a preponderance of the
3   evidence, then she may not recover on that claim.

4          The fact that a person brought a lawsuit and is in
5   court seeking damages creates no inference that the person is
6   entitled to a judgment.  Anyone may make a claim and file a
7   lawsuit.  The act of making a claim in a lawsuit by itself does
8   not in any way tend to establish that claim and is not
9   evidence.

10         The evidence you are to consider consists of the
11  testimony of the witnesses, the documents and other exhibits
12  admitted into evidence, and any fair inferences and reasonable
13  conclusions you can draw from the facts and circumstances that
14  have been proved.

15         Generally speaking, there are two types of evidence.
16  One is direct evidence, such as, testimony of eyewitnesses.
17  The other is indirect or circumstantial evidence.
18  Circumstantial evidence is evidence that proves a fact from
19  which you can logically conclude another fact exists.  As a
20  general rule, the law makes no distinction between direct and
21  circumstantial evidence, but simply requires that you find the
22  facts from a preponderance of all the evidence, both direct and
23  circumstantial.

24         You alone are to determine the questions of
25  credibility or truthfulness of the witnesses.  In weighing the

OFFICIAL TRANSCRIPT

1  testimony of the witnesses, you may consider the witness's
2  manner and demeanor on the witness stand, any feelings or
3  interest in the case, or any prejudice or bias about the case
4  that he or she may have, and the consistency or inconsistency
5  of his or her testimony considered in light of the
6  circumstances.

7          Has the witness been contradicted by other credible
8  evidence?  Has the witness made statements at other times and
9  places contrary to those made here on the witness stand?  You
10  must give the testimony of each witness the credibility that
11  you think it deserves.

12          Even though a witness may be a party to the action
13  and, therefore, interested in its outcome, the testimony may be
14  accepted if it is not contradicted by direct evidence or by any
15  inference that may be drawn from the evidence if you believe
16  the testimony.

17          You are not to decide this case by counting the
18  number of witnesses who have testified on the opposing sides.
19  Witness testimony is weighed.  Witnesses are not counted.  The
20  test is not the relative number of witnesses, but the relative
21  convincing force of the evidence.  The testimony of a single
22  witness is sufficient to prove any fact, even if a greater
23  number of witnesses testified to the contrary, if after
24  considering all the other evidence you believe that witness.

25          In determining the weight to give to the testimony of

OFFICIAL TRANSCRIPT

1  a witness, consider whether there was evidence that at some
2  other time the witness said or did something or failed to say
3  or do something that was different from the testimony given at
4  the trial.

5         A simple mistake by a witness does not necessarily
6  mean that the witness did not tell the truth as he or she
7  remembers it.  People may forget some things or remember other
8  things inaccurately.  If a witness made a misstatement,
9  consider whether that misstatement was an intentional falsehood
10 or simply an innocent mistake.  The significance of that may
11 depend on whether it has to do with an important fact or with
12 only an unimportant detail.

13        Do not let bias, prejudice, or sympathy play any part
14 in your deliberations.  A government entity and all persons,
15 all persons are equal before the law and must be treated as
16 equals in a court of justice.

17        A stipulation -- and I read some stipulations to you
18 at the beginning of the trial, and you will get those
19 stipulations when you retire to deliberate.  A stipulation is
20 an agreement.  When there is no dispute about certain facts,
21 the attorneys may agree or stipulate to those facts.  You must
22 accept a stipulated fact as evidence and treat that fact as
23 having been proven here in court.

24        The First Amendment of the United States Constitution
25 protects the right to freedom of speech.  Freedom of speech is

OFFICIAL TRANSCRIPT

1    guaranteed by the First Amendment and is a fundamental
2    constitutional right.
3            In terms of First Amendment analysis, a city or
4    parish council meeting is a limited public forum.  In such a
5    forum, a government may apply reasonable time, place, and
6    manner restrictions to speech so long as the restriction, one,
7    does not discriminate against speech on the basis of viewpoint;
8    and two, is reasonable in light of the purpose served by the
9    forum.  Viewpoint discrimination exists when the specific
10   motivating ideology or the opinion or perspective of the
11   speaker is the rationale for the restriction.  If Defendants
12   engaged in coercive threats aimed at punishing or suppressing
13   disfavored speech, then they have violated the First Amendment.
14           Plaintiff claims that Defendants retaliated against
15   Plaintiff for exercising her First Amendment free speech during
16   public comment at a November 28, 2023 parish council meeting.
17           To recover damages for this alleged constitutional
18   violation, Plaintiff must prove by a preponderance of the
19   evidence that:
20           One, Plaintiff was engaged in a constitutionally
21   protected activity;
22           Two, Defendants' actions caused Plaintiff to suffer
23   an injury that would chill a person of ordinary firmness from
24   continuing to engage in that activity;
25           And three, Defendants' adverse actions were

                         OFFICIAL TRANSCRIPT

1  substantially motivated against Plaintiff's exercise of

2  constitutionally protected conduct.

3          Under the First Amendment, a citizen has the right to

4  free speech.  Therefore, the first element is established.

5          Plaintiff must demonstrate that the Defendants'

6  improper motivation was the but-for cause of the adverse

7  action.  This means that Plaintiff must demonstrate that any

8  non-retaliatory motivations were, in fact, insufficient to

9  provoke the adverse consequences.

10          A government official's words that are reasonably

11  understood to be a coercive threat can be the kind of action

12  that violates the First Amendment.  To determine if an

13  official's words can be reasonably understood to be a coercive

14  threat, you may look at factors, including, word choice and

15  tone, the existence of regulatory authority, whether the speech

16  was perceived as a threat, and perhaps most important, whether

17  the speech refers to adverse consequences.  A realistic threat

18  of arrest is enough to chill First Amendment rights.

19          In addition to her claims against parish officials,

20  Plaintiff Joy Banner is suing the St. John the Baptist Parish

21  itself.  A parish is not liable for a constitutional violation

22  of its employees unless the violation was caused by a parish

23  policy or custom or the action of parish policymakers

24  themselves violated a constitutional right.

25          The St. John the Baptist Council is a public body

OFFICIAL TRANSCRIPT

1  subject to the Louisiana Open Meetings Law, and the meeting at
2  issue in this litigation was a public meeting.  The Open
3  Meetings law requires public bodies to allow a public comment
4  period at any point in the meeting prior to action on an agenda
5  item upon which a vote is to be taken.  Further, any member of
6  a public body who knowingly and willingly participates in a
7  meeting conducted in violation of this chapter shall be subject
8  to a civil penalty.

9        To recover compensatory damages for mental and
10 emotional distress, Plaintiff Joy Banner must prove that she
11 has suffered a specific, discernible injury with credible
12 evidence.  Hurt feelings, anger, and frustrations are part of
13 life and are not the types of harm that could support a mental
14 anguish award.

15       Evidence of mental anguish need not be corroborated
16 by doctors, psychologists, or other witnesses.  But Plaintiff
17 Joy Banner must support her claims with competent evidence of
18 the nature, extent, and duration of the harm.  Damages for
19 mental or emotional distress must be based on the evidence at
20 trial.  They may not be based on speculation or sympathy.

21       If you find that the Defendants are liable for
22 Plaintiff's injuries, you must award Plaintiff the compensatory
23 damages she has proved.

24       You may in addition award punitive damages if you
25 find that Defendants Jaclyn Hotard or Michael Wright acted with

OFFICIAL TRANSCRIPT

1  malice or with reckless indifference to the rights of others.

2  One acts with malice when one purposefully or knowingly

3  violates another's rights or safety.  One acts with reckless

4  indifference to the rights of others when one's conduct, under

5  the circumstances, manifests a complete lack of concern for the

6  rights or safety of another.

7       Plaintiff has the burden of proving that punitive

8  damages should be awarded by a preponderance of the evidence.

9       The purpose of punitive damages is to punish and

10  deter, not to compensate.  Punitive damages serve to punish a

11  defendant for malice or reckless conduct, and by doing so, to

12  deter others from engaging in similar conduct in the future.

13  You are not required to award punitive damages.  If you do

14  decide to award punitive damages, you must use sound reason in

15  setting the amount.

16       Your award of punitive damages must not reflect bias,

17  prejudice, or sympathy toward any party.  It should be presumed

18  that Plaintiff has been made whole by compensatory damages; so

19  punitive damages should be awarded only if Defendant Jaclyn

20  Hotard or Michael Wright's misconduct is so reprehensible as to

21  warrant the imposition of further sanctions to achieve

22  punishment or deterrence.

23       If you decide to award punitive damages, the

24  following factors should guide you in fixing the proper amount:

25       One, the reprehensibility of Defendant Jaclyn Hotard

OFFICIAL TRANSCRIPT

1  or Michael Wright's conduct, including, but not limited to

2  whether there was deceit, cover-up, insult, intended or

3  reckless injury, and whether Jaclyn Hotard or Michael Wright's

4  conduct was motivated by a desire to augment profit;

5          The ratio between the punitive damages you are

6  considering awarding and the amount of harm that was suffered

7  by the victim or with which the victim was threatened;

8          The possible criminal and civil sanctions for

9  comparable conduct.

10          You may consider the financial resources of

11  Defendants in fixing the amount of punitive damages.  You may

12  impose punitive damages against one or more of the Defendants

13  and not others.  You may also award different amounts against

14  Defendants.

15          As you have heard, it is a stipulated fact that on

16  November 28, 2023, city council -- as you have heard, it is a

17  stipulated fact that at the November 28, 2023 council meeting,

18  Chairman Wright read aloud Louisiana Revised Statute Section

19  42:1141.4(L)(1).  It is also a stipulated fact that a federal

20  judge determined that the Louisiana Revised Statute Section

21  42:1141.4(L)(1) is invalid, both as applied to the plaintiffs

22  in that case and on its face in part.

23          In 2014, a federal judge found this law was

24  unconstitutional in two ways.  First, the judge found that the

25  law was unconstitutional as applied to the plaintiffs who had

OFFICIAL TRANSCRIPT

1  spoken publicly about a complaint they made to the Board of
2  Ethics.  Second, the judge found that the law was
3  unconstitutional on its face in part.

4         The federal judge determined that the Louisiana
5  Revised Statute Section 42:1141.4(L)(1) was invalid insofar as
6  the statute makes it a crime for any other person besides the
7  subject of an ethics investigation to make any public statement
8  or give out any information concerning a private investigation
9  or private hearing of the Board of Ethics absent the subject of
10 the investigation's written request.

11        Federal courts do not strike down laws when ruling
12 them unconstitutional.  Instead, courts hold them
13 unenforceable -- I mean, I'm sorry.  Instead, courts hold laws
14 unenforceable.  Many laws that are plainly unconstitutional
15 remain on the books.

16        It is now your duty to deliberate and to consult with
17 one another in an effort to reach a verdict.  Each of you must
18 decide this case for yourself, but only after an impartial
19 consideration of the evidence with your fellow jurors.  During
20 your deliberations, do not hesitate to reexamine your own
21 opinions and change your mind if you are convinced that you
22 were wrong.  But do not give up on your honest beliefs because
23 the other jurors think differently or just to finish the case.

24        Remember, at all times, you are the judges of the
25 facts.

OFFICIAL TRANSCRIPT

1      You have been allowed to take notes during this

2 trial.  Any notes that you took during this trial are only aids

3 to memory.  If your memory differs from your notes, you should

4 rely on your memory and not your notes.  The notes are not

5 evidence.  If you did not take notes, rely on your independent

6 recollection of the evidence and do not be unduly influenced by

7 the notes of other jurors.  Notes are not entitled to greater

8 weight than the recollection or impression of each juror about

9 the testimony.

10     When you get into the jury room to deliberate, you

11 may take with you a copy of this charge, I'm going to give you

12 a copy of this document, the exhibits that were produced here

13 in trial that I have admitted into evidence, and your notes,

14 and you will get a copy of the stipulated facts.  You must

15 select a jury foreperson to guide you in your deliberations and

16 to speak for you here in the courtroom.

17     Your verdict must be unanimous.  After you have

18 reached a unanimous verdict, your jury foreperson must fill out

19 the answers to the written questions on the verdict form which

20 we're going to go over as well and sign and date it.

21     After you have concluded your service and I have

22 discharged the jury, you are not required to talk with anyone

23 about the case.

24     If you need to communicate with me during

25 deliberations, the jury foreperson should write the inquiry and

OFFICIAL TRANSCRIPT

1    give it to the Court Security Officer.  After consulting with

2    the attorneys, I will respond either in writing or by meeting

3    with you here in the courtroom.

4            Keep in mind, however, you must never disclose to

5    anyone, not even me, your numerical division on any question if

6    that should arise.

7            Now before you leave, let's go over the verdict form

8    very quickly.

9            You've just seen this in closing, but I'll just go

10   over it and read it with you.  The First Amendment, freedom of

11   speech.  Question No. 1, Do you find by a preponderance of

12   evidence that one or more Defendants restricted Plaintiff's

13   speech based on her viewpoint?  Circle yes or no as to each

14   Defendant.  And we've listed each of the named Defendants here

15   in this lawsuit, Michael Wright, Jaclyn Hotard, St. John the

16   Baptist Parish.

17           No. 2, Do you find by a preponderance of the evidence

18   that one or more Defendants engaged in First Amendment

19   retaliation?  Circle yes or no as to each Defendant.  Again, we

20   list Michael Wright, Jaclyn Hotard, St. John the Baptist

21   Parish.  You are to circle one or the other.  Yes or no, when I

22   say one or the other.

23           Damages, if you circled "Yes" for any of the

24   questions above, if you answered "Yes" to 1 or 2, continue on

25   with this question.  If you circled "No" for all the questions

OFFICIAL TRANSCRIPT

```
 1   above, then you move to Question 5.

 2            So if you answered "Yes" to one of the other ones, 1

 3   or 2, what sum of money, if paid now in cash, would fairly and

 4   reasonably compensate Plaintiff for the harm caused by any of

 5   the Defendants below?  And you have the individual Defendants

 6   listed again, and then we have a final line for the total

 7   amount you would agree upon.

 8            No. 4, Do you find that Plaintiff is entitled to an

 9   award of punitive damages against any of the individual

10   Defendants?  If "Yes," then you fill in the amount next to each

11   individual Defendant you find liable for punitive damages, and

12   then move on to Question 5.

13            If "No," if you don't, then you just move on to

14   Question 5.  And again, we list here Michael Wright and Jaclyn

15   Hotard.

16            Open Meetings Law, that's the next claim.  No. 5, Do

17   you find by a preponderance of the evidence that one or more

18   Defendants violated the Open Meetings Law?  Circle yes or no as

19   to each one that you believe may have or have not violated, yes

20   or no.  Michael Wright, Jaclyn Hotard, and St. John the Baptist

21   Parish.

22            And No. 6, If you have answered "Yes" as to Michael

23   Wright or Jaclyn Hotard in Question 5, continue with this

24   question.  If you did not, proceed to the end and sign the

25   form.  Do you find by a preponderance of the evidence that
```

OFFICIAL TRANSCRIPT

1  either individual Defendant Wright or Hotard knowingly and

2  willfully participated in a meeting conducted in violation of

3  the Open Meetings Law?  Michael Wright or Jaclyn Hotard.

4  Again, you circle either yes or no.

5          If "Yes," put a number for a civil penalty next to

6  each applicable defendant, up to $500 per violation.  If "No,"

7  proceed to the end and sign the form.  Again, we have each of

8  their names and a line next to their name.

9          And then the foreperson should sign and date this.

10  And again, your verdict must be unanimous.

11          With that, you can now retire to the jury room.  Take

12  your time.  Ms. Palmer will give you a list of restaurants.  If

13  you're staying through lunch, we will provide lunch.  But the

14  earlier we get it, then we can make sure you have it in a

15  timely fashion.  So thank you again.

16          **DEPUTY CLERK:** All rise.

17          (The jury exited the courtroom to deliberate.)

18          **THE COURT:** I ask the attorneys to give your cell

19  phone number to my case manager in case the jury comes back

20  with a question.  I never resolve it on my own.  I will always

21  call you back to the courtroom.  I will read the question to

22  you.  I'll get your comments and your feelings on how I should

23  respond.  We'll try to get a consensus on what's appropriate if

24  that's necessary.  We'll have the court reporter here, and then

25  I will answer the question.  I'll read to you exactly what I'm

OFFICIAL TRANSCRIPT

1  going to tell the jury the answer is, and then we'll send it

2  back.

3           All right, so stay close to the courthouse if you

4  can.  All right, thank you.

5               (A recess was taken while the jury deliberated.)

6           **DEPUTY CLERK:** All rise.

7           **THE COURT:** All right, I understand that we have a

8  verdict.  So we're going to bring the jury in now.

9               (The jury was escorted into the courtroom.)

10          **THE COURT:** Y'all can have a seat.

11          Ladies and gentlemen of the jury, I understand that

12  you have a verdict.  Will the foreperson please hand the

13  verdict to my case manager?  Okay.

14          **DEPUTY CLERK:** The United States District Court,

15  Eastern District of Louisiana, *Joy Banner versus St. John the*

16  *Baptist Parish, et al*, Civil Action No. 23-7296, Section G.

17  This is the jury verdict form.

18          Question No. 1, Do you find by a preponderance of the

19  evidence that one or more Defendants restricted Plaintiff's

20  speech based on her viewpoint?  Circle yes or no as to each

21  Defendant.

22          Answer:  For Michael Wright, No.

23          For Jaclyn Hotard, No.

24          For St. John the Baptist Parish, No.

25          Question No. 2, Do you find by a preponderance of the

OFFICIAL TRANSCRIPT

1  evidence that one or more Defendants engaged in First Amendment
2  retaliation?  Circle yes or no as to each Defendant.
3              Answer:  For Michael Wright, No.
4              Jaclyn Hotard, No.
5              St. John the Baptist Parish, No.
6              Moving on to Question No. 5, Do you find by a
7  preponderance of the evidence that one or more Defendants
8  violated the Open Meetings Law?  Circle yes or no as to each
9  Defendant.
10             Answer:  For Michael Wright, No.
11             Jaclyn Hotard, No.
12             St. John the Baptist Parish, No.
13             Signed today, January 29, 2025 by the jury
14  foreperson.
15          **THE COURT:** All right.  Would anybody like to poll the
16  jury?  Would you like me to poll the jury?
17          **MR. MOST:** Yes, please, Your Honor.
18          **THE COURT:** Juror No. 1, is this your verdict?
19          **JUROR 1:** Yes.
20          **THE COURT:** Juror No. 2, is this your verdict?
21          **JUROR 2:** Yes.
22          **THE COURT:** Juror No. 3, is this your verdict?
23          **JUROR 3:** Yes.
24          **THE COURT:** Juror No. 4, is this your verdict?  That
25  would be you.

OFFICIAL TRANSCRIPT

1      **JUROR 4:** Yes.

2      **THE COURT:** Juror No. 5, is this your verdict?

3      **JUROR 5:** Yes.

4      **THE COURT:** Juror No. 6, is this your verdict?

5      **JUROR 6:** Yes.

6      **THE COURT:** Juror No. 7, is this your verdict?

7      **JUROR 7:** Yes.

8      **THE COURT:** Juror No. 8, is this your verdict?

9      **JUROR 8:** Yes.

10     **THE COURT:** Juror No. 9, is this your verdict?

11     **JUROR 9:** Yes.

12     **THE COURT:** All right, thank you.

13         I want to thank you for your service and your

14     patience through this process. I know it's not comfortable and

15     it's inconvenient to come here. I hope we have made your

16     services as comfortable as we could while you were here.

17         We do have certificates for you that I have signed,

18     and we have vouchers with them. So if you retire to the jury

19     room, I'll be there in a minute to hand those out to you. So

20     again, we want to thank you. You are now adjourned.

21         **DEPUTY CLERK:** All rise.

22             (The jury exited the courtroom.)

23     **THE COURT:** Any post-trial motions are due according

24     to the Federal Rules of Civil Procedure. I don't always

25     remember exactly what the dates are.

                        OFFICIAL TRANSCRIPT

1          But I want to thank you all --

2          **MR. SPEARS:** Thank you, Judge.

3          **THE COURT:** Okay, wait, I'm still talking.

4          **MR. SPEARS:** I'm sorry, Judge.  I thought you were

5    rushing to see the jurors.  I know that's important to you.

6          **THE COURT:** No, no.  I want to thank you all for doing

7    a really excellent job and staying late to get things done; so

8    we didn't have to hold the jury unnecessarily.  I thought the

9    trial went very efficiently timewise, and I know it puts a lot

10   of pressure on you guys, the time constraints and the fact that

11   we move on.  And I thought that you all did an excellent job.

12         And from time to time, we've had law students come.

13   I've seen them come in and out of the courtroom, and I think

14   that you all and your clients handled yourselves very

15   professionally.  And I'm very proud of the trial that was tried

16   here in this case.

17         And I will say, you know, always in a trial, there

18   are winners and losers.  But what I hope for this community and

19   the community of St. John the Baptist Parish is that you can

20   heal, you can mend, you can move forward.  And you know, this

21   is just only one part of the process.  So I wish you all the

22   best.

23         **MR. MOST:** Thank you.

24         **MR. SPEARS:** Judge, thank you very much.

25              (Whereupon this concludes the jury trial.)


                    OFFICIAL TRANSCRIPT

1                           **<u>CERTIFICATE</u>**

2

3

4        I, Alexis A. Vice, RPR, CRR, Official Court Reporter for

5   the United States District Court, Eastern District of

6   Louisiana, do hereby certify that the foregoing is a true and

7   correct transcript, to the best of my ability and

8   understanding, from the record of the proceedings in the

9   above-entitled and numbered matter.

10

11                                *<u>/s/Alexis A. Vice, RPR, CRR</u>*
                                  Alexis A. Vice, RPR, CRR
12                                Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

                         OFFICIAL TRANSCRIPT