UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOY BANNER, Ph.D.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 23-7296** |
| **ST. JOHN THE BAPTIST PARISH, et al.** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Plaintiff Joy Banner, Ph.D.'s ("Plaintiff") Motion for New Trial.[1] In this litigation, Plaintiff brought claims against Defendants St. John the Baptist Parish, Jaclyn Hotard, and Michael Wright (collectively "Defendants") for allegedly violating her First Amendment Right to Freedom of Speech at a Parish Council meeting. From January 27, 2025 through January 29, 2025, a jury trial was held in this matter, and judgment was rendered in favor of Defendants.[2] Plaintiff now moves for a new trial, arguing that defense counsel's alleged misconduct during trial affected the jury's verdict. Having considered the motion, the memoranda in support, and in opposition, the record, and the applicable law, for the reasons that follow, the Court denies the motion.

## I. Background

On November 28, 2023, Plaintiff was interrupted while attempting to speak during the public comment portion of a St. John the Baptist Council meeting.[3] On the Council's agenda was Agenda Item J which read:

---

[1] Rec. Doc. 157.

[2] Rec. Doc. 154.

[3] Rec. Doc. 7.

> J) Jaclyn Hotard – Authorization to retain Legal Service with the Law Firm, R. Gray Sexton, as Special Counsel, to perform services related to Ethics Laws subject to the restrictions imposed by the State of Louisiana regarding Ethics Procedures and at the rate in accordance with the Attorney General Guidelines per statute.[4]

Plaintiff had previously filed the ethics charge regarding Parish President Jaclyn Hotard ("Hotard").[5]

During the Council meeting, Plaintiff approached the lectern and identified the two agenda items she intended to speak on "Executive Session items, The Descendants Project vs. St. John the Baptist Parish and St. John the Baptist Parish Council, and then also Agenda Item J, which is the authorization to obtain legal service with a law firm R. Gray Sexton as special counsel."[6] Plaintiff was allowed to speak for five seconds before she was interrupted by Defendant Hotard and then by Defendant Chairman Michael Wright.[7] Plaintiff then attempted to address the ethics violation on Hotard, and she was again interrupted.[8]

Plaintiff was told that her comments must be limited to agenda items.[9] Plaintiff asserted "she was on topic—the Board of Ethics was investigating Jaclyn Hotard, and Item J on the agenda was placed on the agenda by Hotard and called for authorization for outside legal counsel for Ms. Hotard for the ethics investigation."[10] Plaintiff told the Council, "we as taxpayers should not be asked to pay for her lawyer."[11] "Your Parish President, our Parish President is currently under

---

[4] *Id.* at 5.

[5] *Id.*

[6] *Id.* at 6.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.*

[10] *Id.*

[11] *Id.*

investigation for a Board of Ethics charge. How is that not relevant, because she signed off on an application for re-zoning of her mother-in-law's land and so now[,] we as tax payers are going to have to pay. . . ."[12]

Defendants Hotard and Wright argued that Plaintiff's comments were off topic.[13] Wright then recited Louisiana Revised Statute § 42:1141.4(L)(1) which provides:

> It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars or imprisonment for not more than one year, or both, for any member of the Board of Ethics, its executive secretary, other employee, or any other person, other than the person who is subject to the investigation or complaint, to make public the testimony taken at a private investigation or private hearing of the Board of Ethics or to make any public statement or give out any information concerning a private investigation or private hearing of the Board of Ethics without the written request of the public servant or other person investigated.[14]

Plaintiff was told by Wright to "stop this comment" and that Plaintiff was "in violation of state law."[15] Plaintiff refers to this statement by Wright as a "threat."[16] Louisiana Revised Statute § 42:1141.4(L)(1), which was recited by Wright, was ruled unconstitutional by a district judge nearly a decade earlier.[17]

On December 14, 2023, Plaintiff filed a Complaint against Defendants.[18] On January 4, 2024, Plaintiff filed an Amended Complaint alleging the following claims for relief: (1) violations of Plaintiff's First Amendment right to freedom of speech by way of viewpoint discrimination and

---

[12] *Id.* at 8.

[13] *Id.* at 6–7.

[14] *Id.* at 8–9 (citing Louisiana Revised Statute § 42:1141.4(L)(1)).

[15] *Id.* at 16.

[16] *Id.* at 12.

[17] *Id.* at 10–11.

[18] Rec. Doc. 1.

threats of prosecution; (2) violations of rights of freedom of speech and petition guaranteed by Louisiana's Constitution; and (3) violations of Louisiana's Open Meetings Law.[19]

The Court conducted a jury trial in this matter from January 27, 2025 to January 29, 2025. The jury found in favor of Defendants,[20] and the Court entered judgment on the verdict. After the jury verdict was read, the courtroom deputy polled the jury. Each of the jurors confirmed that the verdict was accurately delivered. The Court then excused the jury.

On February 18, 2025, Plaintiff filed the instant motion.[21] On February 25, 2025, Defendants filed an opposition to the motion.[22] On February 26, 2025, Plaintiff filed a reply memorandum in further support of the motion.[23]

## II. Parties' Arguments

### A.   *Plaintiff's Argument in Support of the Motion*

Plaintiff requests a new trial pursuant to Federal Rule of Civil Procedure 59.[24] First, Plaintiff argues this Court should grant a new trial because of the cumulative nature of Defendants' counsel's misconduct at trial, including repeated violations of the Court's evidentiary rulings.[25] Plaintiff contends defense counsel engaged in persistent misconduct in front of the jury.[26] Plaintiff points out that during opening argument, the Court sustained repeated objections that defense

---

[19] Rec. Doc. 7.

[20] Rec. Doc. 151.

[21] Rec. Doc. 157.

[22] Rec. Doc. 162.

[23] Rec. Doc. 163.

[24] Rec. Doc. 157.

[25] Rec. Doc. 157-1 at 3.

[26] *Id.* at 4.

counsel was falsely arguing the law.[27] Plaintiff states defense counsel argued that Louisiana Revised Statute § 42:1141.1(L)(1) "was the law" and that Plaintiff had acted "contrary to this confidentiality statute," despite the parties' stipulation that the law was deemed invalid nine years ago.[28] Plaintiff avers the confidentiality statute became the main thrust of Defendants' closing argument.[29] Plaintiff points out that defense counsel was instructed not to testify at least twelve separate times.[30] Plaintiff states defense counsel repeatedly ignored instructions from the Court to move on during examination of witnesses.[31] Plaintiff avers defense counsel engaged in conduct that the Court stated was "abusive" and a "mockery" of the matter when he pulled out a timer and asked Plaintiff to recite the speech she intended to say at the underlying council meeting.[32]

Plaintiff argues defense counsel engaged in repeated violations of the Court's evidentiary rulings.[33] Plaintiff points out that defense counsel attempted to present an advice of counsel defense, despite this defense being excluded by the Court.[34] While the Court sustained Plaintiff's objection and excluded any further questioning on the topic, Plaintiff contends that the jury had already heard about an email and phone call from the District Attorney.[35] Plaintiff also points out that defense counsel made several attempts to question non-lawyers about the law, despite

---

[27] *Id.*

[28] *Id.* at 4.

[29] *Id.* at 5.

[30] *Id.*

[31] *Id.* at 5–6.

[32] *Id.* at 6.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 8.

instructions from the Court not to do so.[36] While the Court issued guidance to the jury about the underlying ethics complaint, stating that the dismissal of the ethics complaint was not material, Plaintiff states defense counsel continued to repeatedly question multiple witnesses about the dismissal of the complaint and also raised the issue in closing arguments.[37] Plaintiff states defense counsel disregarded clear instructions from the Court not to question certain witnesses about the meaning of "confidential."[38]

Plaintiff argues defense counsel's misconduct was persistent, and she provides a chart summarizing all evidentiary violations committed by defense counsel during the trial.[39] Plaintiff points to Fifth Circuit authority upholding the grant of a new trial when counsel violated a motion in limine, resulting in the elicitation of a single piece of barred testimony, even after the court gave immediate curative instruction.[40] Plaintiff explains that the Court expressed concern during the trial, stating that "I'm not sure if my instruction corrected that."[41]

Next, Plaintiff argues the Court should grant a new trial because the great weight of the evidence favored Plaintiff.[42] Plaintiff points out testimony in which Defendants Jaclyn Hotard and Michael Wright admitted they acted to silence Plaintiff based on the content of her speech.[43] While witnesses spoke of an on-topic rule, Plaintiff points out that testimony revealed no such rule was

---

[36] *Id.*

[37] *Id.* at 9.

[38] *Id.* at 10.

[39] *Id.* at 11.

[40] *Id.* at 15.

[41] *Id.* at 16.

[42] *Id.*

[43] *Id.* at 18.

voted on and did not exist.[44] Plaintiff argues that because the Open Meetings Law is judged by an objective standard, Plaintiff contends this is enough to grant a new trial.[45] Plaintiff also argues she proved her burden of showing she was silenced based on the content of her speech.[46] Plaintiff contends there was abundant evidence of the subjective intent required for Plaintiff's First Amendment Retaliation claim based on Wright's actions of reading aloud a statute which had the word "unconstitutional" on the top.[47] Plaintiff avers testimony at trial revealed that Hotard's family would benefit financially from the underlying rezoning application, which Hotard signed off on.[48] Plaintiff asserts the evidence was overwhelmingly in her favor.[49] Plaintiff contends, given the cumulative weight of defense counsel's evidentiary violations, it cannot be said with fair assurance that the jury's verdict was not tainted, and a new trial should be granted.[50]

### B. *Defendants' Argument in Opposition to the Motion*

In opposition, Defendants argue that the verdict was supported by the evidence.[51] Defendants offer three primary arguments in opposition of the Motion for New Trial: (1) none of Plaintiff's allegations rise to the level of prejudicial misconduct necessary to warrant a new trial; (2) Plaintiff has not shown that the jury did not follow the Court's instructions; and (3) the verdict

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at 19.

[47] *Id.*

[48] *Id.* at 20.

[49] *Id.* at 21.

[50] *Id.* at 22.

[51] Rec. Doc. 162.

was reached based on the properly admitted evidence.[52] First, Defendants state Plaintiff has failed to assert any grounds for disturbing the jury's unanimous verdict, and all of defense counsel's actions were within the bounds of legitimate advocacy.[53] Second, Defendants argue the Court gave proper instructions, which Plaintiff did not object to during trial.[54] Defendants allege that the Court redirected defense counsel and instructed the jury to disregard any possible misconduct.[55] And third, Defendants argue that the jury came to the conclusion that Plaintiff did have the adequate opportunity to make a public comment, thus making the unanimous verdict proper.[56] For example, Defendants rely on the media interviews of Juror Cam Owen and how he details the jury believed Plaintiff was fully able to make her points, despite interruption from parish officials.[57]

Defendants also submitted a point-by-point response to each alleged instance of misconduct and evidentiary violation in rebuttal to the issues raised by Plaintiff.[58] Defendants aver defense counsel's actions were within the bounds of legitimate advocacy, and there was no violation of the evidentiary rulings.[59] Defendants contend the Court gave the jury proper instructions regarding counsels' statements not being evidence, and Plaintiff has failed to show anything that rises to the level of prejudice that would warrant a new trial and/or defeat the

---

[52] *Id.*

[53] *Id.* at 2–3.

[54] *Id.* at 3–4.

[55] *Id.* at 3.

[56] *Id.* at 4.

[57] *Id.* at 4–5.

[58] Rec. Doc. 162-1.

[59] *Id.*

presumption that the jury followed the Court's instructions.[60] Defendants maintain that "one juror has already stated over and over again to several media outlets and/or reporters that the jury verdict was based on their review of the actual evidence (i.e. the video of the parish council meeting), and not on anything defense counsel may or may not have said."[61]

C.     *Plaintiff's Argument in Further Support of the Motion*

In further support of the motion, Plaintiff argues Defendants fail to cite legal authority showing the alleged misconduct is insufficient to justify a new trial, and the post-trial juror interview suggests the jury misunderstood or misapplied the Court's instructions.[62] Plaintiff states defense counsel's defiance of the Court's evidentiary rulings cannot be considered "legitimate advocacy."[63] Plaintiff avers the interviews of the jurors show that the jury misapplied the jury instructions.[64] Plaintiff submits that the observation by juror Cam Owen that Plaintiff "did actually say what she had to say" is different than the ultimate question of whether what happened "would chill a person of ordinary firmness."[65] Plaintiff contends Defendants offer nothing to give fair assurance that the jury was not swayed by the misconduct at trial, and a new trial should be granted.[66]

---

[60] *Id.*

[61] *Id.*

[62] Rec. Doc. 163.

[63] *Id.* at 1–2.

[64] *Id.* at 2.

[65] *Id.* at 3.

[66] *Id.*

## III. Legal Standard

Federal Rule of Civil Procedure 59 governs motions for a new trial brought within twenty-eight days after the entry of judgment.[67] Rule 59(a)(1) provides:

> The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

"The trial court's power to grant a new trial [under Rule 59(a)(1)] on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has . . . long been regarded as an integral part of trial by jury."[68] "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."[69] The Fifth Circuit has instructed that district courts should "respect the jury's collective wisdom and must not simply substitute its opinion for the jury's," but "if the trial judge is not satisfied with the verdict of a jury, [s]he has the right—and indeed the duty—to set the verdict aside and order a new trial."[70]

## IV. Analysis

Plaintiff moves for a new trial pursuant to Federal Rule of Civil Procedure 59. Plaintiff asserts defense counsel engaged in repeated and prejudicial misconduct during trial, which Plaintiff argues denied her a fair trial and improperly influenced the jury's verdict. Plaintiff further argues the great weight of the evidence was in Plaintiff's favor. In opposition, Defendants argue

---

[67] Fed. R. Civ. P. 59.

[68] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

[69] *Id.*

[70] *Id.* (internal quotations omitted).

the conduct does not warrant a new trial, and Plaintiff has not overcome the presumption that the jury followed the Court's instructions.

When, as here, the district court is faced with a motion for a mistrial based on the submission of prejudicial information to the jury, the district court must decide whether the error is harmless by assessing whether "the error did not influence the jury, or had but very slight effect."[71] In determining whether to grant a new trial, the Fifth Circuit has instructed district courts to ask whether they can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error."[72] Any party requesting a new trial as a result of opposing counsel's conduct generally must establish that (1) the conduct constitutes misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to during trial, and (4) the misconduct was not cured by the court's instructions to the jury.[73]

Plaintiff cites 38 instances of alleged misconduct on the part of defense counsel, which are summarized here:

(1) Defense counsel questioned Michael Wright about an "email and a phone call from District Attorney Keith Green," despite the exclusion of an advice of counsel defense. Plaintiff's counsel objected; the Court sustained the objection.

(2) Defense counsel questioned witnesses on their understanding of the law, despite the Court's instruction not to do so. Plaintiff's counsel objected; the Court overruled the

---

[71] *O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1308 (5th Cir.1977) (quoting *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

[72] *Hollybrook Cottonseed Proc., LLC. V. Am. Guarantee & Liability Ins. Co.,* 772 F.3d 1031, 1034 (5th Cir. 2014).

[73] 58 Am. Jur. 2d New Trial § 94.

objection.

(3) Defense counsel asked witness Guillot about her "legal position" despite the Court's instruction not to do so. Plaintiff's counsel objected; the Court sustained the objection.

(4) Defense counsel asked witness Guillot about who the "statute applies to" despite the Court's instruction not to ask legal questions. Plaintiff's counsel objected; the Court sustained the objection.

(5) Defense counsel asked witness Guillot what she "would advise" a person, despite the Court's instruction not to ask legal questions. The Court, *sua sponte,* interjected and stopped the line of questioning.

(6) Defense counsel asked witness Landeche whether St. John the Baptist Parish's actions were "in compliance with the Open Meetings Law" despite the Court's instruction not to ask legal questions. Plaintiff's counsel objected; the Court overruled the objection.

(7) Defense counsel asked witness Landeche about what the Open Meetings Law "requires" and whether St. John the Baptist Parish "complied" with the law despite the Court's instruction not to ask legal questions.

(8) Defense counsel asked Michael Wright whether Ms. Perrilloux was "violating any constitutionality statute," despite instructions from the Court not to ask lay witnesses legal questions. Plaintiff's counsel objected; the Court sustained the objection.

(9) Defense counsel questioned witness Guillot about the dismissal of the underlying ethics complaint despite the Court's ruling that said dismissal was "not a material fact in this case." The Court, *sua sponte,* interjected and stopped the line of questioning.

(10) Defense counsel questioned witnesses about the dismissal of the underlying ethics complaint despite the Court's ruling that said dismissal was immaterial.

(11)   Defense counsel referenced the dismissal of the underlying ethics complaint in closing argument despite the Court's ruling that said dismissal was immaterial.

(12)   Defense counsel questioned witness Sexton about his understanding of the meaning of "confidential" despite the Court's ruling not to do so. The Court, *sua sponte,* interjected and stopped the line of questioning.

(13)   Defense counsel described Plaintiff's public comment as "inappropriate" despite the Court's instruction not to use the word as it would suggest the comment was unlawful.

(14)   Defense counsel questioned witness Landry about the internal operations of the Board of Ethics despite being instructed not to do so.

(15)   Defense counsel questioned witness Guillot about the internal operations of the Board of Ethics despite being instructed not to do so.

(16)   Defense counsel questioned witnesses about "prominent supporters" of the underlying industrial project despite instructions not to do so.

(17)   Defense counsel stated in opening argument that Louisiana Revised Statute § 42:1141.4(L)(1) "is the law" even though the statute was ruled unconstitutional nine years prior. Plaintiff's counsel objected. The Court sustained the objection.

(18)   Defense counsel stated in opening argument that Plaintiff's actions were "contrary to the statute" even though the statute was ruled unconstitutional. Plaintiff's counsel objected. The objection was sustained, and the jury was instructed to disregard the statement.

(19)   Defense counsel asked a non-expert witness about the "reasons why it's important to tell the public to stick to agenda items only." The Court directed defense counsel not

to ask this question of a non-expert. Defense counsel continued, asking next "why it's important to keep people on time."

(20) Defense counsel stated, "everyone, except for you, seems to say that the only property, the only tracts of land that were in this new zoning application, the one that you wrote the ethics company about, was the property belonging to Greenfield," to which the Court pointed out was "like testimony."

(21) Defense counsel stated, "First of all, Jaclyn Hotard is not the secretary of the parish counsel," to which the Court interjected instructing defense counsel to stop testifying.

(22) Defense counsel stated, "First and foremost, the Open Meetings Law requires that the agenda…" The Court instructed defense counsel to stop testifying.

(23) Defense counsel stated, "You also saw that a couple other people – and if you don't recall, I can show you a video of the meeting…" The Court instructed defense counsel to ask a question and stop testifying.

(24) Defense counsel attempted to provide Ms. Gaudet's answer to a deposition question, to which the Court instructed defense counsel to ask a question and stop reading the deposition.

(25) Defense counsel attempted to provide testimony about Ms. Gaudet's deposition, to which the Court instructed, "You can't refer to her deposition. You have to ask her a question because you're not impeaching her."

(26) Defense counsel asked a witness, "The meetings, to be compliant with the Louisiana open meetings law, must have some time period in which the public can discuss items that the council is going to vote on. Was that always done?" Plaintiff's counsel objected, and the objection was overruled.

(27)   Defense counsel began to "testify" about what "we concluded" in Ms. Gulliot's deposition. Plaintiff's counsel objected, and the objection was sustained.

(28)   Defense counsel talked about what letters were or were not stamped "confidential", to which the Court advised that defense counsel was testifying again.

(29)   Defense counsel stated that Mr. Wright's "testimony is [he] did not notice or read the particular note." The Court instructed defense counsel that he cannot testify for the witness.

(30)   Defense counsel stated that "I saw you cleared the chamber on the video." Plaintiff's counsel objected, and the objection was sustained.

(31)   Defense counsel stated that the facts were "falsely alleged by Ms. Banner." Plaintiff's counsel objected, and the objection was sustained. The jury was instructed to disregard the statement.

(32)   Defense counsel stated that Ms. Hotard's reelection "seems like an incredible vote of confidence." Plaintiff's counsel objected, and the objection was sustained. The jury was instructed to disregard the statement.

(33)   During cross examination of Ms. Banner, defense counsel pulled out a timer and said, "I'm going to use this timer, and give us your speech right now, the exact same speech you came prepared to say that you said you were stopped from saying by Micheal Wright. Are you ready?" Plaintiff's counsel objected, and the objection was sustained. Defense counsel was admonished for "making a mockery" of the matter.

(34)   Defense counsel stated to Ms. Banner that, "At least twice in recent history you have sought to do what Michael and Jaclyn has done which is put your name on the ballot to be elected, and you've been soundly not voted by the people in your

community who know you best?" Plaintiff's counsel objected, and the objection was sustained. Defense counsel was instructed by the Court to move on.

(35) Defense counsel asked Ms. Banner, "Did you run for office in 2014?" Plaintiff's counsel objected, and the objection was sustained.

(36) Defense counsel asked witnesses about other lawsuits filed by Plaintiff's non-profit organization. Plaintiff's counsel objected, and the objection was overruled.

(37) Defense counsel stated that the judge "know[s] I'm slow," prompting a curative instruction to the jury.

(38) Defense counsel continued after an overruled objection, in a way that could "influence what the witness would say."[74]

While the Court acknowledges that defense counsel repeatedly crossed the bounds of proper advocacy, the record reflects that Plaintiff's objections were timely sustained and, where appropriate, the jury was instructed to disregard improper statements. Further, the Court's jury instructions provided, "The statements of counsel are not evidence…" and "What the lawyers say or do is not evidence." Plaintiff has not shown that the misconduct was not cured by the Court's instructions. Importantly, Plaintiff did not move for a mistrial nor request additional curative instructions beyond those provided. Moreover, even assuming that defense counsel's conduct was improper, the Court finds that any such misconduct did not materially affect the outcome of the trial. Cam Owen, one of the jurors, conducted a public interview with a local news station following the trial:

> Cam Owen, one of the jurors, said that deliberations heavily relied on a video recording of the disputed public meeting. He said that Banner was able to communicate her points to the officials, even as the St. John leadership interrupted her. "They did try to stop her, but she actually did say what she had to say," Owen

---

[74] Rec. Doc. 157-1 at 11–15.

said. "We didn't vote no because the defense gave a good case. We voted no because the facts weren't there for the claims that the plaintiffs have."[75]

Based on Cam Owen's statements, the Court concludes that defense counsel's misconduct did not substantially influence the jury, and the jury's verdict was reasonably supported by the evidence. Plaintiff has failed to demonstrate that the alleged misconduct substantially influenced the jury's decision or undermined the integrity of the trial.[76] For these reasons the Court must deny Plaintiff's motion.

### V. Conclusion

For the foregoing reasons, the Court finds that the jury's verdict was reasonably supported by the evidence, and Plaintiff has failed to demonstrate that the alleged misconduct substantially influenced the jury's decision.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for New Trial[77] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 26th day of June, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[75] Jose Abugov, *Jury Decides in Favor of St. John President in Free Speech Trial Sparked by Grain Elevator Plan,* Nola.com (Jan. 29, 2025), https://www.nola.com/news/environment/cancer-alley-joy-banner-st-john-louisiana-grain-greenfield/article_5ae9cc60-de5f-11ef-a8ba-e790db110d5d.html.

[76] *See Westbrook v. Gen. Tire & Rubber Co.,* 754 F.2d 1233, 1242 (5th Cir. 1985).

[77] Rec. Doc. 157.