Case: 25-30381 Document: 70-2 Page: 1 Date Filed: 11/24/2026

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 16, 2026

Thomas B. Plunkett, III
Clerk

No. 25-30381

Joy Banner, *Doctor of Philosophy*,

*Plaintiff—Appellant*,

*versus*

Michael Wright, *in his individual and official capacities*;
St. John the Baptist Parish;
Jaclyn Hotard, *in her individual and official capacities*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-7296

Before Smith and Higginson, *Circuit Judges*.*

Per Curiam:

Joy Banner sued St. John the Baptist Parish and two of its officers for alleged violations of her rights at a public meeting. A jury returned a verdict against her on all counts. The district court denied her motion for a new trial. We vacate and remand for a new trial.

* Judge Wiener was a member of the original panel but did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

I.

The parish regularly elects a suite of officers, including a Parish President and a nine-member Council. On November 28, 2023, the Council convened a meeting led by Parish President Jaclyn Hotard. At some point during the meeting, Banner stepped to the lectern and declared her intent to comment on Agenda Item J, which concerned an "Authorization to retain Legal Service with the Law Firm, R. Gray Sexton, as Special Counsel, to perform services related to Ethics Laws subject to the restrictions imposed by the State of Louisiana regarding Ethics Procedures and at the rate in accordance with the Attorney General Guidelines per statute."

It is unsurprising that Banner wished to speak on that subject. Not too long before the meeting, she had filed an ethics complaint against Hotard, alleging that Hotard had impermissibly participated in an industrial zoning decision that would directly benefit the financial interests of her immediate family. At the time, that was the only ethical complaint pending against the Parish or any of its officers.

Banner's remarks at the meeting, however, were short-lived. After just five seconds, Banner was interrupted, first by Hotard and then by Council Chairman Michael Wright. Banner was instructed that her planned diatribe about the pending ethics complaint was off-topic, and she was ordered to limit the scope of her statements to approved agenda items. Wright then recited La. Rev. Stat. § 42:1141.4(L)(1), which provides:

> It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars or imprisonment for not more than one year, or both, for any member of the Board of Ethics, its executive secretary, other employee, or any other person, other than the person who is subject to the investigation or complaint, to make public the testimony taken at a private investigation or private hearing of the Board of Ethics or to make any public statement or give out any information concerning a pri-

> vate investigation or private hearing of the Board of Ethics without the written request of the public servant or other person investigated.

Wright further told Banner to "stop this comment" and that she was "in violation of state law." Banner understood the statement as a threat and ended her comment without using the materials she had brought to the lectern or fully discussing her concerns.

As it turns out, though, Section 42:1141.4(L)(1) had been ruled unconstitutional nearly a decade earlier. *See King v. Caldwell ex rel. La.*, 21 F. Supp. 3d 651, 656 (E.D. La. 2014). This statute was properly included in the Unconstitutional Statutes Biennial Report to the Legislature, and the piece of paper from which Wright read during the meeting was, in fact, marked "unconstitutional" at the top.

After discovering the statute's invalidity, Banner sued Hotard, Wright, and the Parish under 42 U.S.C. § 1983 for First Amendment discrimination and retaliation against protected speech. Banner also brought state law claims under Louisiana's Constitution and Open Meetings Law.

## II.

The jury unanimously found in favor of defendants on all counts. During the trial, however, counsel for defendants, as the district court acknowledged, "repeatedly crossed the bounds of proper advocacy." Counsel ignored the district court's directives and potentially prejudiced the verdict on dozens of occasions. The district court catalogued this misfeasance as follows:

> (1) Defense counsel questioned Michael Wright about an "email and a phone call from District Attorney Keith Green," despite the exclusion of an advice of counsel defense. Plaintiff's counsel objected; the Court sustained the objection.

(2) Defense counsel questioned witnesses on their understanding of the law, despite the Court's instruction not to do so. Plaintiff's counsel objected; the Court overruled the objection.

(3) Defense counsel asked witness Guillot about her "legal position" despite the Court's instruction not to do so. Plaintiff's counsel objected; the Court sustained the objection.

(4) Defense counsel asked witness Guillot about who the "statute applies to" despite the Court's instruction not to ask legal questions. Plaintiff's counsel objected; the Court sustained the objection.

(5) Defense counsel asked witness Guillot what she "would advise" a person, despite the Court's instruction not to ask legal questions. The Court, *sua sponte*, interjected and stopped the line of questioning.

(6) Defense counsel asked witness Landeche whether St. John the Baptist Parish's actions were "in compliance with the Open Meetings Law" despite the Court's instruction not to ask legal questions. Plaintiff's counsel objected; the Court overruled the objection.

(7) Defense counsel asked witness Landeche about what the Open Meetings Law "requires" and whether St. John the Baptist Parish "complied" with the law despite the Court's instruction not to ask legal questions.

(8) Defense counsel asked Michael Wright whether Ms. Perrilloux was "violating any constitutionality statute," despite instructions from the Court not to ask lay witnesses legal questions. Plaintiff's counsel objected; the Court sustained the objection.

(9) Defense counsel questioned witness Guillot about the dismissal of the underlying ethics complaint despite the Court's ruling that said dismissal was "not a material fact in this case." The Court, *sua sponte*, interjected and stopped the line of questioning.

(10) Defense counsel questioned witnesses about the dismissal of the underlying ethics complaint despite the Court's ruling that said dismissal was immaterial.

(11) Defense counsel referenced the dismissal of the underlying ethics complaint in closing argument despite the Court's ruling that said dismissal was immaterial.

(12) Defense counsel questioned witness Sexton about his understanding of the meaning of "confidential" despite the Court's ruling not to do so. The Court, *sua sponte*, interjected and stopped the line of questioning.

(13) Defense counsel described Plaintiff's public comment as "inappropriate" despite the Court's instruction not to use the word as it would suggest the comment was unlawful.

(14) Defense counsel questioned witness Landry about the internal operations of the Board of Ethics despite being instructed not to do so.

(15) Defense counsel questioned witness Guillot about the internal operations of the Board of Ethics despite being instructed not to do so.

(16) Defense counsel questioned witnesses about "prominent supporters" of the underlying industrial project despite instructions not to do so.

(17) Defense counsel stated in opening argument that Louisiana Revised Statute § 42:1141.4(L)(1) "is the law" even though the statute was ruled unconstitutional nine years prior. Plaintiff's counsel objected. The Court sustained the objection.

(18) Defense counsel stated in opening argument that Plaintiff's actions were "contrary to the statute" even though the statute was ruled unconstitutional. Plaintiff's counsel objected. The objection was sustained, and the jury was instructed to disregard the statement.

(19) Defense counsel asked a non-expert witness about the

"reasons why it's important to tell the public to stick to agenda items only." The Court directed defense counsel not to ask this question of a non-expert. Defense counsel continued, asking next "why it's important to keep people on time."

(20) Defense counsel stated, "everyone, except for you, seems to say that the only property, the only tracts of land that were in this new zoning application, the one that you wrote the ethics company about, was the property belonging to Greenfield," to which the Court pointed out was "like testimony."

(21) Defense counsel stated, "First of all, Jaclyn Hotard is not the secretary of the parish counsel," to which the Court interjected instructing defense counsel to stop testifying.

(22) Defense counsel stated, "First and foremost, the Open Meetings Law requires that the agenda . . . ." The Court instructed defense counsel to stop testifying.

(23) Defense counsel stated, "You also saw that a couple other people—and if you don't recall, I can show you a video of the meeting . . . ." The Court instructed defense counsel to ask a question and stop testifying.

(24) Defense counsel attempted to provide Ms. Gaudet's answer to a deposition question, to which the Court instructed defense counsel to ask a question and stop reading the deposition.

(25) Defense counsel attempted to provide testimony about Ms. Gaudet's deposition, to which the Court instructed, "You can't refer to her deposition. You have to ask her a question because you're not impeaching her."

(26) Defense counsel asked a witness, "The meetings, to be compliant with the Louisiana [O]pen [M]eetings [L]aw, must have some time period in which the public can discuss items that the council is going to vote on. Was that always done?" Plaintiff's counsel objected, and the objection was overruled.

(27) Defense counsel began to "testify" about what "we con-

cluded" in Ms. Gulliot's deposition. Plaintiff's counsel objected, and the objection was sustained.

(28) Defense counsel talked about what letters were or were not stamped "confidential[,]" to which the Court advised that defense counsel was testifying again.

(29) Defense counsel stated that Mr. Wright's "testimony is [he] did not notice or read the particular note." The Court instructed defense counsel that he cannot testify for the witness.

(30) Defense counsel stated that "I saw you cleared the chamber on the video." Plaintiff's counsel objected, and the objection was sustained.

(31) Defense counsel stated that the facts were "falsely alleged by Ms. Banner." Plaintiff's counsel objected, and the objection was sustained. The jury was instructed to disregard the statement.

(32) Defense counsel stated that Ms. Hotard's reelection "seems like an incredible vote of confidence." Plaintiff's counsel objected, and the objection was sustained. The jury was instructed to disregard the statement.

(33) During cross examination of Ms. Banner, defense counsel pulled out a timer and said, "I'm going to use this timer, and give us your speech right now, the exact same speech you came prepared to say that you said you were stopped from saying by Micheal [*sic*] Wright. Are you ready?" Plaintiff's counsel objected, and the objection was sustained. Defense counsel was admonished for "making a mockery" of the matter.

(34) Defense counsel stated to Ms. Banner that, "At least twice in recent history you have sought to do what Michael and Jaclyn has [*sic*] done which is put your name on the ballot to be elected, and you've been soundly not voted by the people in your community who know you best?" Plaintiff's counsel objected, and the objection was sustained. Defense counsel was instructed by the Court to move on.

> (35) Defense counsel asked Ms. Banner, "Did you run for office in 2014?" Plaintiff's counsel objected, and the objection was sustained.
>
> (36) Defense counsel asked witnesses about other lawsuits filed by Plaintiff's non-profit organization. Plaintiff's counsel objected, and the objection was overruled.
>
> (37) Defense counsel stated that the judge "know[s] I'm slow," prompting a curative instruction to the jury.
>
> (38) Defense counsel continued after an overruled objection, in a way that could "influence what the witness would say."

After the trial, one of the jurors voluntarily gave a statement to a local news station, which made the following report:

> Cam Owen, one of the jurors, said that deliberations heavily relied on a video recording of the disputed public meeting. He said that Banner was able to communicate her points to the officials, even as the St. John leadership interrupted her. "They did try to stop her, but she actually did say what she had to say," Owen said. "We didn't vote no because the defense gave a good case. We voted no because the facts weren't there for the claims that the plaintiffs have."

On that account, Banner moved for leave to interview the jurors after the judgment was entered but before any motions attacking the judgment were made. The district court denied that motion.

In light of the foregoing evidence, Banner timely moved for a new trial under Federal Rule of Civil Procedure 59, alleging that the cumulative impact of defendants' counsel's misconduct prejudiced her and that the great weight of the evidence at trial favored her. The district court declined to order a new trial, noting that objections during trial were timely sustained and curative instructions given. The court held that Banner "has not shown that the misconduct was not cured by the Court's instructions." On this point, the court cited to the lone juror's media interview as proof that any misconduct "did

not substantially influence the jury, and the jury's verdict was reasonably supported by the evidence." The court also observed that Banner did not move for mistrial at any time before verdict and determined that that fact weighed heavily against entertaining Banner's Rule 59 motion for a new trial. Banner appealed.

III.

Review of an order denying a motion for new trial is for abuse of discretion. *United States v. Pratt*, 807 F.3d 641, 645 (5th Cir. 2015). Questions of law are reviewed *de novo*, and findings of fact are upheld unless clearly erroneous. *Id.*

IV.

To begin, Banner's failure to move for mistrial does not foreclose her post-verdict motion for a new trial, as defendants seem to intimate it does. It is true that failure to move for mistrial even after curative instructions are issued does weigh against granting a new trial.[1] But no authority supports the notion that failure to move for mistrial imposes a categorical bar against the success of a Rule 59 motion.

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). No prerequisites are spelled out, and "any reason" easily covers a situation like the one presented here, where the full weight of misconduct

---

[1] *See United States v. Diaz-Carreon*, 915 F.2d 951, 959 (5th Cir. 1990) ("[T]he failure of defense counsel to seek a mistrial suggests that any lingering prejudice from the improper comments was minimal."); *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 782 (5th Cir. 1983) ("[Movant's] failure to move for a mistrial is also significant.").

cannot be appreciated adequately until after the close of trial.[2] Moreover, Rule 59 expressly permits "the court, on its own, [to] order a new trial for any reason that would justify granting one on a party's motion." Fed. R. Civ. P. 59(d). If the federal rules anticipate *sua sponte* awards of a new trial where counsel has not moved in this direction at all, it naturally follows that the rules aren't intended to condemn a party who is merely slow on the draw.

Nor are Banner's hands in any way unclean. "[A] defendant cannot learn of . . . misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." *United States v. Jones*, 597 F.2d 485, 488 n.3 (5th Cir. 1979). But that is not what happened.

Banner timely objected to all of defendants' egregious behavior at trial and fully availed herself of curative instructions when offered by the district court. Under the circumstances, requiring Banner to have moved for a mistrial notwithstanding any curative instructions—to preserve her right to a post-judgment motion for a new trial—would inherently defeat the intended purpose of those instructions and thereby undermine fundamental aspects of trial procedure.[3]

Therefore, Banner's failure to move for mistrial does not forfeit her claim to a new trial under Rule 59.

---

[2] *See Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 316 n.2 (5th Cir. 2024) (per curiam) (recognizing that a new trial may be granted notwithstanding any failure to move for mistrial where "substantial justice" so requires).

[3] *Cf. United States v. Brown*, 108 F.3d 863, 867 (8th Cir. 1997) (holding that failure to move for mistrial did not defeat post-verdict motion for new trial because "when [a party] agree[s] to have the court give limiting instructions to the jury, [that party] justifiably presume[s] that the jury would follow the court's instructions to disregard the extrinsic evidence").

V.

The district court abused its discretion when it rested its denial of Banner's Rule 59 motion on statements made to the press by the juror. Federal Rule of Evidence 606(b)(1) broadly forbids the receipt of "evidence of a juror's statement" when it concerns "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Fed. R. Evid. 606(b)(1). That rule is subject to just three enumerated exceptions, none of which are relevant here. *See* Fed. R. Evid. 606(b)(2). Rule 606 applies to Rule 59 motions. *See Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998).

The juror statement at issue here falls squarely within Rule 606's ambit. Relying on evidence barred by Rule 606 to rule on a motion for new trial is unacceptable and is antithetical to the proper exercise of a district court's discretion in evaluating the integrity of a trial.[4]

At bottom, "a motion for new trial may not be based on inadmissible evidence."[5] The order denying Banner's motion for a new trial is fatally flawed, so it cannot stand.[6]

---

[4] *See Williams v. Collins*, 16 F.3d 626, 636 (5th Cir. 1994) ("The post-verdict inquiry of jury members, as live witnesses or by affidavit, is inappropriate . . . [so] [t]he district court did not abuse its discretion in disallowing this requested testimony."); *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990) ("The juror's testimony, therefore, was incompetent to impeach the verdict rendered against [the defendant]."); *Lee v. Cockrell*, 44 F. App'x 653 (5th Cir. 2002) (endorsing district court's decision to refuse to consider two juror affidavits directly forbidden by Rule 606).

[5] *United States v. Anderson*, 755 F.3d 782, 800 (5th Cir. 2014) (quoting *United States v. Wall*, 389 F.3d 457, 470–71 (5th Cir. 2004)).

[6] It is not clear whether Banner preserved her objection to the district court's use of evidence barred by Rule 606 to deny her Rule 59 motion. If not, our review on this point would be for plain error. Under that standard, we may reverse only if (1) there is an error

VI.

Beyond this, we must consider whether defendants' conduct was so thoroughly prejudicial that it requires a new trial. A motion for new trial based on submission of prejudicial evidence must be evaluated for harmless error by assessing whether "the error did not influence the jury, or had but very slight effect."[7] "To warrant a new trial[,] the defense counsel's misconduct in the form of improper questioning must be so pronounced and persistent that it permeates the entire proceeding."[8]

There is no set threshold at which prejudicial evidence becomes sufficiently pernicious as to impugn a verdict. On one hand, the mere fact that defense counsel is badly behaved at some point during trial does not necessarily undermine confidence in the verdict.[9] On the other hand, even a single

---

not "affirmatively waived"; (2) the error is "clear or obvious"; (3) the error "affected the appellant's substantive rights"; and (4) in our discretion, failure to correct the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Even if we were to find that Banner failed to preserve her objection, we would hold that the district court committed plain error. Banner did not affirmatively waive her objection, and the district court's error was clear and obvious from the face of Rule 606 and our precedent. Moreover, the district court's error affected Banner's substantial rights because the inadmissible evidence was the only basis for the district court's conclusion that defense counsel's misconduct "did not materially affect the outcome of the trial." This error is so egregious—and so fundamentally affects the fairness of the proceedings below—that we must use our discretion to correct it.

[7] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1304 (5th Cir. 1977) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

[8] *Winter v. Brenner Tank, Inc.*, 926 F.2d 468 (5th Cir. 1991); *see also Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585–86 (5th Cir. 1985) ("To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury.").

[9] *See Winter*, 926 F.2d at 473 (affirming denial of new trial where defense counsel questioned plaintiff about a prior criminal conviction despite explicit instructions to refrain

instance of misconduct can warrant a new trial.[10]

The critical inquiry is whether the events at trial "unquestionably tarnish the badge of evenhandedness and fairness that normally marks our system of justice." *Bufford v. Rowan Cos.*, 994 F.2d 155, 158 (5th Cir. 1993) (quoting *Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983)). "Our system of trial by jury presupposes that the jurors be accorded a virtual vacuum wherein they are exposed only to those matters which the presiding judge deems proper for their consideration," so when counsel's misdeeds unduly pierce that vacuum, the need for a new trial becomes inescapable. *United States v. Harry Barfield Co.*, 359 F.2d 120, 124 (5th Cir. 1966).

The record tells a sordid story. Throughout trial, defendants impermissibly questioned witnesses on their knowledge of the law, insinuated that the confidentiality statute read aloud by Wright was somehow enforceable despite its rank unconstitutionality, attempted to justify defendants' actions by appealing to the dismissal of Banner's ethics complaint despite the district court's establishing the complaint's immateriality, wrongly entered testimony directly through counsel (as opposed to through witnesses on the stand), and improperly impeached Banner on account of her failed campaigns for public office in the parish. Defendants did all of these things repeatedly, seemingly undeterred by multiple *sua sponte* interjections from the district court and over a dozen sustained objections. Regardless of how frequently

---

from doing so); *Hacker v. Cain*, 759 F. App'x 212, 219 (5th Cir. 2018) (affirming denial of new trial even assuming that defendants violated three separate orders *in limine*).

[10] *See Hollybrook Cottonseed Processing, L.L.C. v. Am. Guar. & Liab. Ins. Co.*, 772 F.3d 1031, 1034 (5th Cir. 2014) (affirming award of new trial on account of one piece of improper testimony about a settlement offer); *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 747 (5th Cir. 1988) (reversing denial of new trial "[g]iven the prejudicial nature of [each of two excerpts from appellate briefs admitted at trial] under the circumstances of this case, and its substantial potential to engender confusion among the jurors").

and aggressively the court declared these prejudicial subjects to be out of bounds, defendants petulantly persisted in tainting the jury with their barrage of ill-conceived statements. The district court was spot-on when it denounced defendants for "making a mockery" of the case.

On these facts, not even the district court's curative instructions can salvage the verdict. To put it bluntly, "you can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good." *O'Rear*, 554 F.2d at 1309.

The sheer volume of misconduct in which defendants engaged at every stage of trial casts a pall over the jury's deliberations. After all, if defendants utterly failed to take any of the district court's corrections and countermands to heart, how can we have confidence that the members of the jury did any better?[11] "There must be a line drawn in any trial where, after repeated exposure of a jury to prejudicial information, a judge realizes that cautionary instructions will have little, if any, effect in eliminating the prejudicial harm." *Id.* Whatever the precise location of that line, defendants have indubitably crossed it. Therefore, Banner's motion for a new trial must be granted.[12]

* * * * *

For the foregoing reasons, we VACATE the judgment and

---

[11] If there are any colorable explanations for how the jury might not have been unduly prejudiced by defendants' tactics, defendants' briefing does not help us identify them. Instead, defendants' brief offers little besides a summary of the record, rote recitations of legal standards, and conclusory statements claiming victory. Therefore, we must consider whatever counterarguments defendants might militate in their favor on this point to have been waived.

[12] Because Banner is entitled to a new trial on account of defendants' prejudicial misconduct, we do not reach Banner's alternative argument that she is entitled to a new trial because her claims are favored by the great weight of the evidence.

REMAND for a new trial. Beyond what we have specifically directed, we place no limitations on what matters the district court may address, nor do we suggest what decisions should be made.